UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
CASE NUMBER _____

GD DEAL HOLDINGS, LLC                                          PLAINTIFF

V.

SURINDER MULTANI;
ABBE PROPERTIES, LLC;
SAPPHIRE SUPPLY, LLC;
JGG INVESTMENTS, LLC;
ABBE CAPITAL AND LEASING, LLC;
ABBE MANAGEMENT GROUP, LLC;
FIFTH THIRD BANK;
CITIBANK;
VENDOR CAPITAL GROUP;
BABAJI PS, LLC;
CAPITAL ACCESS & INVESTMENTS, LLC;
PETROZONE PETROLEUM II, INC.;
G & S PORTAGE, INC.;
SAFANPREET MULTANI; AND
SURINDER MULTANI, IN HIS CAPACITY AS TRUSTEE
FOR GURPRIYA KAUR MULTANI IRREVOCABLE TRUST,
GURPAP SINGH MULTANI IRREVOCABLE TRUST, AND
JAPVI SINGH MULTANI IRREVOCABLE TRUST                          DEFENDANTS

```
FILED: MARCH 25, 2008
08CV1722          RCC
JUDGE GRADY
MAGISTRATE JUDGE BROWN
```

## COMPLAINT

The Plaintiff, GD Deal Holdings, LLC, by and through counsel, and for its cause of action

herein, states as follows:

## PARTIES

1.      The Plaintiff GD Deal Holdings, LLC ("GD Deal") is a Delaware limited liability

company with its principal place of business in Bowling Green, Kentucky.

2.      The Defendant, Surinder Multani, is a citizen and resident of the State of Illinois.

Surinder Multani ("Multani") is also known as Sam Multani.  Surinder Multani currently resides at

302 Midwest Club, Oak Brook, Illinois 60523.

3.    Safanpreet Multani is a citizen and resident of the State of Illinois.  Safanpreet Multani currently resides at 302 Midwest Club, Oak Brook, Illinois 60523.

4.    Upon information and belief, Surinder Multani and Safanpreet Multani are spouses that maintain 302 Midwest Club, Oak Brook, Illinois as a homestead.

5.    Abbe Properties, LLC, is an Illinois limited liability company with its principal office at 2015 South Arlington Heights Road, Suite 120, Arlington Heights, Illinois 60005.

6.    Sapphire Supply, LLC is an Illinois limited liability company with its principal office located at 2015 South Arlington Heights Road, Suite 120, Arlington Heights 60005.  Defendant Multani is the registered agent for Sapphire Supply, LLC.

7.    JGG Investments, LLC is an Illinois limited liability company with its principal office at 2015 South Arlington Heights Road, Suite 120, Arlington Heights 60005.

8.    Abbe Capital and Leasing, LLC is an Illinois limited liability company with its principal office at 2015 South Arlington Heights Road, Suite 120, Arlington Heights, Illinois 60005.

9.    Abbe Management Group, LLC, is an Illinois limited liability company with its principal office at 2015 South Arlington Heights Road, Suite 120, Arlington Heights, Illinois, 60005.

10.    The Defendants, Fifth Third Bank and Citibank, are natural banking associations doing business in the State of Illinois.

11.    The Defendant Vendor Capital Group is a division of Telerent Leasing Corp, a Delaware Corp., with its principal office at 4191 Fayetteville Rd., Raleigh, North Carolina 27603.

12.    Babaji PS, LLC is a Texas limited liability company with its principal office at 1718 Fry Road, Suite 415, Houston, Texas 77084.  The registered agent at that address is Narendra Bhalla.

13.    Capital Access & Investments, LLC is a Texas limited liability company with its principal office at 1718 Fry Road, Suite 415, Houston, Texas 77084. The registered agent at that address is Narendra Bhalla.

14.    Petrozone Petroleum, II, Inc. is a Texas corporation with its principal office at 1612 South Day Street, Brenham, Texas 77833. The registered agent at that address is Sandeeppreet Singh.

15.    G & S Portage, Inc. is an Indiana corporation with its principal office at 1856 Samuelson Road, Portage, Indiana 46368. The registered agent at that address is Ajai Agnihotri.

16.    The Defendant, Surinder Multani, is the Trustee of the Gurpriya Kaur Multani Irrevocable Trust, Gurpap Singh Multani Irrevocable Trust and Japvi Singh Multani Irrevocable Trust ("Trusts"), which were created by Safanpreet Multani as Settlor.

17.    Jurisdiction is proper under 28 USC § 1332 in that the amount in controversy, exclusive of interest and cost, exceeds $75,000.00 and that this matter is between citizens of different states.

18.    Venue for this action is proper under 28 USC § 1391 in that it involves real estate located in this district and the defendants located in this district.

## GENERAL ALLEGATIONS

19.    The Defendant, Surinder Multani, is indebted to the Plaintiff, GD Deal Holdings, for the sum of $10,048,295.12 as of May 11, 2007, with post-judgment interest accruing thereon at the rate of 4.9% until paid in full, pursuant to an Order and Judgment ("Judgment") entered by the Untied States District Court, Western District of Kentucky, Bowling Green Division in Case Number 1:05-CV-3R, on May 11, 2007, a copy which is attached to hereto as Exhibit A.

20.    The Judgment has been registered in this Court by filing on September 4, 2007 in Case Number 07-CV-04965 pursuant to 28 U.S.C. § 1963.

21.    Pursuant to the registration, GD Deal has filed a Memorandum of Judgment in the Cook County real property records, a copy of which is attached as Exhibit B, on October 9, 2007.

22.    The Defendant, Surinder Multani, owns real estate located in Cook County, Illinois located at 124 Bright Ridge Drive, Schaumburg, IL, 60194-3696, Parcel No. 07 23 102 021 0000 (the "Cook County Real Estate").

23.    The Defendant, Surinder Multani, owns personal property situated in both Cook County, Illinois and DuPage County, Illinois, as indicated by the financial statements prepared by Multani, copies of which are attached as Exhibit C. The value of the personal property exceeds the allowed exemptions under Illinois State Law.

24.    The Defendant, Surinder Multani, is a member, shareholder, sole member, or sole shareholder of Abbe Properties, LLC; Sapphire Supply, LLC; JGG Investments, LLC; Abbe Capital and Leasing, LLC; Abbe Management Group, LLC; Babaji PS, LLC; Capital Access & Investments, LLC; Petrozone Petroleum II, Inc.; and G & S Portage, Inc.

COUNT I: ORDER OF SALE OF REAL AND PERSONAL PROPERTY

25.    The Plaintiff adopts and incorporates by reference the allegations set forth in Paragraphs 1 through 24 as if fully set forth herein.

26.    The Judgment against Surinder Multani constitutes a lien on the property of Multani pursuant to 28 U.S.C. §1962.

27.    The Plaintiff, GD Deal, is entitled to an Order directing the United States Marshall to take control and possession of the Cook County Real Estate of Defendant Surinder Multani, and to subject such real estate to public auction and sale upon such terms and conditions as may be set by,

4

this Court, or required by statute including 28 U.S.C. § 2001, 735 ILL. COMP. STAT. 5/12-112, 735 ILL. COMP. STAT. 5/12-115, 735 ILL. COMP. STAT. 5/12-152, and FED. R. CIV. P. 69.

28.    The Plaintiff, GD Deal, is entitled to an Order directing the United States Marshall to take control and possession of the non-exempt personal property of Defendant Surinder Multani, and to subject such personal property to public auction and sale upon such terms and conditions as may be set by this Court, or required by statute including 28 U.S.C. § 2004, 735 ILL. COMP. STAT. 5/12-111, 735 ILL. COMP. STAT. 5/12-112, 735 ILL. COMP. STAT. 5/12-158, and FED. R. CIV. P. 69.

WHEREFORE, the Plaintiff, GD Deal Holdings, LLC, respectfully requests: 1) that the Court enter an Order directing the United States Marshall to take possession and control of the Defendant Surinder Multani's real estate and subject it to public auction; and 2) that the Court enter an Order directing the United States Marshall to take possession and control of the Defendant Surinder Multani's non-exempt personal property and subject it to public auction.

## COUNT II: REQUEST FOR CHARGING ORDER

29.    The Plaintiff adopts and incorporates by reference the allegations set forth in Paragraphs 1 through 28 inclusive as if fully set forth herein.

30.    Pursuant to 805 ILCS 180/30-20, the Plaintiff is entitled to a charging order as against Surinder Multani's interest in Abbe Properties, LLC; Sapphire Supply, LLC; JGG Investments, LLC; Abbe Capital and Leasing, LLC; Abbe Management Group, LLC; Babaji PS, LLC; Capital Access & Investments, LLC; Petrozone Petroleum II, Inc.; and G & S Portage, Inc. (collectively the "Multani Companies"), so that all distributable interests apply to satisfy the Judgment.

31.    The Plaintiff requests that a Receiver be appointed for the distributional interests due or to become due to Surinder Multani.

32.    The Plaintiff is further entitled to an order of foreclosure of its lien, directing that the interests of Surinder Multani in the Multani Companies be sold to satisfy the lien of GD Deal.

WHEREFORE, the Plaintiff, GD Deal Holdings, LLC, respectfully requests: 1) that the Court enter a charging Order as against the Defendant Surinder Multani's interests in the Multani Companies; 2) that the Court enter an Order appointing a Receiver for the distributable interests in the Multani Companies due or to become due to Surinder Multani; and 3) that the Court enter an Order of foreclosure directing the sale of the Defendant Surinder Multani's interests in the Multani Companies.

## COUNT III: ADVERSE CLAIMS

33.    The Plaintiff adopts and incorporates by reference the allegations set forth in Paragraphs 1 through 32, inclusive, as if fully set forth herein.

34.    The Defendant Fifth Third Bank is made a party hereto by reason of its open-end Mortgage dated June 24, 2004, recorded July 26, 2004, as against the real estate located at 24 Bright Ridge Road, Schaumburg, IL. The Defendant Fifth Third Bank should be required to enter its appearance herein and assert its interest in the real estate, if any.

35.    The Defendant Citibank is made a party hereto by reason of its Equity Source Account Mortgage dated July 22, 2004, and recorded August 9, 2004 as against the real estate located at 24 Bright Ridge Road, Schaumburg, IL. The Defendant Citibank should be required to enter its appearance herein and assert its interest in the real estate, if any.

36.    The Defendant Vendor Capital Group is made a party hereto by reason of its Memorandum of Judgment, recorded August 7, 2007, as against the real estate located at 24 Bright Ridge Road, Schaumburg, Il. The Defendant Vendor Capital Group should be required to enter its appearance herein and assert its interest in the real estate, if any.

37.    The Defendant Safanpreet Multani should be required to enter her appearance herein and to assert her interest in the real estate, if any.

WHEREFORE, the Plaintiff, GD Deal Holdings, LLC, respectfully requests that the Defendants referenced within Count III herein be required to come forth and assert whatever right, title and interest in and to the property described in this Complaint they have or may have or be forever barred.

## COUNT IV: FRAUDULENT CONVEYANCES

38.    The Plaintiff adopts and incorporates by reference the allegations set forth in Paragraphs 1 through 37, inclusive, as if fully set forth herein.

39.    On information and belief, the Plaintiff, GD Deal, alleges that the Defendant, Surinder Multani, has transferred to the Trusts assets for the purpose of shielding them from the claims of his creditors, including, but not limited to, his interest in ABBE Properties, LLC.

40.    On information and belief, the Plaintiff, GD Deal, alleges that the transfers from Surinder Multani to the Trusts were without consideration, and made with the intent to hinder, delay or defraud creditors, all in violation of Illinois law.

41.    The transfer should be set aside and held invalid, and the property and interest held subject to the claims of creditors, including the Plaintiff herein.

WHEREFORE, the Plaintiff, GD Deal Holdings, LLC, requests that the transfer described within this Count IV be set aside and held invalid, that GD Deal's judgment against Surinder Multani be declared a lien on the subject property prior to transfer, and that a Receiver be appointed for the purpose of applying such property to GD Deal's judgment.

7

WHEREFORE, The Plaintiff, GD Deal Holdings, LLC, request such orders of appropriate relief as requested herein, along with an award of attorney's fees, court costs and any and all other appropriate relief.

This _____ day of March, 2008.

Scott A. Bachert
William F. Codell
HARNED, BACHERT & DENTON, LLP
324 East Tenth Avenue
Post Office Box 1270
Bowling Green, Kentucky  42102-1270
Telephone:  (270) 782-3938
Facsimile:  (270 781-4737

AND

WILLIAMS MONTGOMERY & JOHN LTD.
20 North Wacker Drive, Suite 2100
Chicago, Illinois 60606-3094
Telephone: (312) 443-3200

THOMAS F. FALKENBERG

08CV1722
JUDGE GRADY
MAGISTRATE JUDGE BROWN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CASE NO.: 1:05-CV-3-R

G.D. DEAL HOLDINGS, INC., et. al.,                              PLAINTIFFS

v.

BAKER ENERGY, INC, et. al.,                                      DEFENDANTS

## ORDER

**IT IS SO ORDERED:**

The Plaintiff's Motion for Summary Judgment (Docket #77) is **GRANTED**. The Court finds that the Defendants owe the Plaintiff **$660,433.96** for failure to pay the Plaintiff rent on the real property from February 2005 through August 2005. The Court finds that the Defendants owe the Plaintiff **$7,766,428.97** in damages for an accelerated amount of rent due after the rejection of the real property lease agreement by the Defendants in August 2005. The Court finds that the Defendants owe the Plaintiff **$451,223.70** for failure to pay the Plaintiff rent on the personal property from February 2005 through August 2005. The Court finds that the Defendants owe the Plaintiff **$945,098.98** in damages for an accelerated amount of rent due after the rejection of the personal property lease agreement by the Defendants in August 2005. The Court finds that the Plaintiff is entitled to **$140,296.04** in attorney fees and costs. The Court finds that the Plaintiff is entitled to **$84,813.47** in miscellaneous costs associated with the Defendants' breach of the real property lease. Lastly, the Defendants' counterclaim against the Plaintiff for breach of the lease agreement fails as a matter of law.

Accordingly, the Plaintiff shall recover **$10,048,295.12** in damages from the Defendants for their breach and default of the real property and personal property leases.

Exhibit A

May 11, 2007

**Thomas B. Russell, Judge**
**United States District Court**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CASE NO.: 1:05-CV-3-R

G.D. DEAL HOLDINGS, INC., et. al.,                                    PLAINTIFFS

v.

BAKER ENERGY, INC, et. al.,                                           DEFENDANTS

## MEMORANDUM OPINION

This matter comes before the Court on the Plaintiff G.D. Deal Holdings, LLC's ("GD

Deal") Motion for Summary Judgment (Docket #77). Defendants Rohit Sharma ("Sharma") and

Surinder Multani ("Multani") have responded (Docket #83)[1], and the Plaintiff has replied to their

response (Docket #85). This matter is now ripe for adjudication. For the following reasons, the

Plaintiff's Motion for Summary Judgment is **GRANTED**.

## PROCEDURAL HISTORY

The Plaintiff initially filed this action against the Defendants in Warren County Circuit

Court. It was removed to this Court on January 10, 2005. On March 11, 2005, the Court ordered

that this matter be stayed through the duration of the bankruptcy concerning the Defendants,

though the Court retained jurisdiction. On March 6, 2006, the bankruptcy petition of Defendant

Baker Energy, Inc. was dismissed. On September 28, 2006, the Court removed the stay and

restored this matter to the active docket. The Plaintiff filed the instant motion in January 2007.

## FACTUAL BACKGROUND

This case arises from a dispute concerning real property and personal property leases

connected to thirty-eight (38) gasoline stations and convenience stores located throughout

---

[1]Defendant Baker Energy, Inc. has not responded to this motion.

western Kentucky and north-central Tennessee. In April 2001, the Plaintiff leased thirty-eight (38) gasoline stations and convenience stores ("properties") to Clark Retail Enterprises, Inc. ("CRE"). There were two (2) leases between GD Deal and CRE that dealt with real property, personal property and equipment at the thirty-eight (38) locations ("real property lease" and "personal property lease"). GD Deal was the owner of the real property on which the gasoline stations and convenience stores were located. GE Capital Franchise Finance Corporation ("GE Capital") was the mortgage lender of the properties. FFCA Acquisition Corporation ("FFCA") had a security interest on all of the equipment located at the properties. However, following a merger between GE Capital and FFCA, GE Capital held both the mortgage and security interests.

On October 15, 2002, CRE filed a voluntary petition in the United States Bankruptcy Court for the Northern District of Illinois requesting reorganization under Chapter 11. The Court in that matter granted CRE the authority to assign its leases on the properties to Baker Energy, Inc. ("Baker"), which was run by Sharma and Multani. Both Sharma, the President and an equity owner of Baker, and Multani, a director and shareholder of Baker, personally guaranteed payment of all liabilities under the leases on behalf of Baker to GD Deal. Pursuant to the Assumption Order and Assumption Agreement by the Bankruptcy Court on August 26, 2003, Baker became the holder of CRE's leasehold interests in the properties. This included the payment of rent to GD Deal under the terms of the leases.

After assuming the liabilities under the leases, the Plaintiff contends that Baker defaulted on several of its obligations. On January 5, 2005, GD Deal sent Baker a "notice of default and notice of termination upon failure to cure default" letter. On January 20, 2005, GD Deal sent

2

Baker another letter, this time informing Baker that it was terminating its lease with Baker regarding the properties. Four (4) days later on January 24, 2005, this Court issued an agreed preliminary injunction so that Crown Oil and Petroleum Supplies, Inc. ("Crown Oil"), who had been assigned some of Baker's interests as a tenant under the leases, could collect rent from the subtenants of the properties. However, on February 4, 2005, Crown Oil filed a voluntary petition of bankruptcy with the United States Bankruptcy Court for the Eastern District of Wisconsin seeking relief under Chapter 11. Eleven (11) days later, on February 15, 2005, Baker followed suit, filing a voluntary petition of bankruptcy with the United States Bankruptcy Court for the Western District of Tennessee seeking relief under Chapter 11. Both petitions were eventually dismissed. From February 2005 through August 2005, GD Deal was not able to act on and/or collect rent from the properties due to the bankruptcy proceedings.

In April 2005, GE Capital, as the holder of the mortgage and security interests, accelerated the amount of debt due and began the process of foreclosure of the properties. In August 2005, the Bankruptcy Court for the Western District of Tennessee held that Baker had rejected the leases between it and GD Deal. At that point, the Plaintiff attempted to collect rent from the subtenants of Baker who were operating the properties. However, in September 2005, GE Capital sent a stay collection letter to GD Deal, demanding that GD Deal cease its collection efforts from the properties. GE Capital then filed a claim in this Court, requesting foreclosure on the Kentucky properties. The Court held that the foreclosure actions asserted by GE Capital were not related to Baker's bankruptcy case to confer jurisdiction, and therefore, dismissed GE Capital's claim.

As a result, GE Capital pursued its foreclosure claims by filing actions in more than

3

twenty (20) separate circuit courts throughout the Commonwealth. The Kentucky courts appointed NRC Realty Advisors, LLC ("NRC Realty") to possess the property pending sale and act as the receiver over the properties. This precluded GD Deal from exercising any ownership over the properties. The majority of the properties have been foreclosed upon and sold. In this case, GD Deal seeks to recover all available remedies against Baker, Sharma and Multani, arguing that the Defendants breached the terms of the leases that covered the properties.

## STANDARD

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can establish that the "pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is "whether the party bearing the burden of proof has presented a jury question as to each element in the case." *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence. To support this position, he must present evidence on which the trier of fact could find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "[t]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary

4

judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Electronic Data Systems Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

Finally, while Kentucky state law is applicable to this case pursuant to *Erie Railroad v. Tomkins*, 304 U.S. 64 (1938), a federal court in a diversity action applies the standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476 (1991)." *Gafford v. General Electric Co.*, 997 F.2d 150, 165 (6th Cir. 1993).

## DISCUSSION

GD Deal claims damages against the Defendants for breaching both leases. Under the real property lease, GD Deal claims that it is owed damages for the Defendants' failure to pay rent for the time period prior to the date Baker rejected the lease and that GD Deal is owed damages connected to the sums that were to become due after Baker rejected the lease agreement, as stipulated by the lease.

Under the personal property lease, GD Deal claims that it is owed damages for the Defendants' failure to pay rent for the time period prior to the date Baker rejected the lease and that GD Deal is owed damages connected to the sums that were to become due after Baker rejected the lease agreement, as stipulated by the lease.

In addition, GD Deal contends that under the terms of the leases it is entitled to recover all court costs, attorney fees, associated legal expenses and miscellaneous costs under the terms of the real property lease. In total, GD Deal claims $10,048,295.12 in damages for Baker's alleged breach of the leases.

5

In their response, the Defendants argue GD Deal overcharged Baker in excess of $752,253.82. In addition, the Defendants assert that the January 24, 2005 agreed preliminary injunction is a novation, which discharges any obligations the Defendants may have had to the Plaintiff in relation to the leases. In its reply, the Plaintiff contends that Baker did not overpay its rent and that the agreed preliminary injunction did not constitute a novation.

The Court shall first address the defense raised by the Defendants in their response in determining whether the agreed preliminary injunction was a novation that discharged the Defendants from any liability to the Plaintiff. The Court shall then examine the arguments asserted by the Plaintiff in its motion to determine if GD Deal is entitled to damages due to the Defendants' alleged breach of the real property and personal property leases. In addition, the Court shall also address the claims by the Plaintiff for court costs, attorney fees and associated legal expenses incurred by GD Deal in connection with the alleged breach by Baker. Lastly, the Court shall address the cross claim filed against GD Deal by Baker contending that GD Deal overcharged the Defendants $752,253.82 in rent.

### 1. Agreed Preliminary Injunction as a Novation

In their response to the Plaintiff's motion for summary judgment, the Defendants contend that the January 24, 2005 agreed preliminary injunction ("injunction") between the parties and Crown Oil constituted a novation that discharged the Defendants from any debt owed to the Plaintiff. As noted *supra*, when the Bankruptcy Court permitted CRE to assign its interest and liabilities in the properties to Baker, Sharma and Multani personally guaranteed Baker's debt. However, the Defendants argue that because the injunction is a novation it supercedes any previous agreements reached by the parties concerning debt under the leases. In addition,

6

Defendants Sharma and Multani contend that because they did not sign the January 24, 2005 injunction they have no continuing obligation under the leases. In its reply, the Plaintiff contends that: 1) the agreed preliminary injunction entered by the Court was not a novation; 2) the Defendants are judicially estopped from claiming the lease agreements were extinguished by an alleged novation; and 3) the Defendants waived the defense of discharge by novation in the personal guaranty agreement.

Kentucky courts define a novation as "the substitution of a new obligation for an old one, with intent to extinguish the old one, or the substitution of a new debtor for an old one, with the intent to release the latter, or the substitution of a new creditor, with the intent to transfer the rights of the old one to him." *Truscon Steel Co. v. Thirlwell Elec. Co.*, 265 Ky. 414, 416-17 (1936); *see also In re Cantrill Const. Co.*, 418 F.2d 705, 707 (6th Cir. 1989); *M.A. Walker Co., Inc. v. PBK Bank, Inc.*, 95 S.W.3d 70, 75 (Ky. Ct. App. 2002). "Intent is the essential element" in proving the existence of a novation, and "[t]he burden of proving a novation [is] on the [party seeking to enforce it]." *In re Cantrill Const. Co.* at 707; *see also Clark v. Thompson*, 219 S.W.2d 22, 29 (Ky. 1949)(quoting *North Western Mut. Life Ins. Co. v. Eddleman*, 247 Ky. 116, 56 S.W.2d 561 (Ky. Ct. App. 1932)("'[w]hether a novation has been accomplished or not depends upon the intention of the parties. This intent is the controlling element in determining the question, and unless the transaction was intended to extinguish the old obligation by substituting the new one therefor, a novation is not effected.'").

In the instant matter, there was no intent by the Plaintiff in the injunction to extinguish the obligations of the Defendants under the leases. The Defendants have not pointed to any specific language from the injunction that demonstrates that GD Deal sought to release the

Defendants from their obligations.  On the contrary, the injunction states, in pertinent part:

> IT IS FURTHER ORDERED as agreed that nothing herein shall be construed or interpreted as a release of any claims defenses by any party, *or as a release of the obligations of any guarantor*.  Further, nothing herein shall be construed or interpreted as a consent or acceptance by GD Deal or Girkin Development to the assignment by Baker Energy to Crown, or a waiver of any defaults under the lease agreements, or a release of Baker Energy's liability under the lease agreements except for subsequent lease payments, which come due while this Order is in place. (emphasis added).

This section of the injunction leaves no doubt that GD Deal did not intend to release the Defendants from their obligations.  The Defendants have not met their burden in proving that the Plaintiff intended to release them from their obligations.  Accordingly, the January 24, 2005 Agreed Preliminary Injunction did not serve as a novation of the leases, and therefore, the Defendants obligations to the Plaintiff continued after the injunction was issued.

Further, the Court also concurs with the argument asserted by the Plaintiff that the Defendants are judicially estopped from claiming that their obligations under the leases were extinguished by a novation.  The doctrine of judicial estoppel is "'an equitable doctrine invoked by the court at its discretion.' *See New Hampshire v. Maine*, 532 U.S. 742, 750, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001)." *Lewis v. Weyerhaeuser Co.*, 141 Fed. Appx. 420, 423 (6th Cir. 2005). The doctrine "'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.' *New Hampshire*, 532 U.S. at 749, 121 S.Ct. 1808." *Id.* at 424. "Judicial estoppel 'preserve[s] the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship.' *Browning v. Levy*, 283 F.3d 761, 776 (6th Cir.2002) (quotation omitted). This court has previously described judicial estoppel as a rule against 'playing fast and loose with the courts,' 'blowing hot and cold as the occasion demands,' or 'hav[ing] [one's] cake and eat[ing] it too.'

8

*Reynolds v. Comm'r*, 861 F.2d 469, 472 (6th Cir.1988) (citations omitted) (alteration in original)." *Id.*

Essentially, judicial estoppel bars a party from "'(1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position either as a preliminary matter or as part of a final disposition.' *Browning*, 283 F.3d at 775 (internal quotation omitted)." *Id.*

During Baker's bankruptcy proceeding, which was after the injunction was signed by the parties, the Defendants acknowledged through their Motion to Extend Time Period to Assume of Reject Unexpired Leases of Non-Residential Real Property that the leases were not extinguished. In that motion, which was filed after January 24, 2005, Baker stated that it is "the lessee under certain leases of non-residential real which consist primarily of service stations/convenience stores located in Kentucky." To now argue that the injunction served as a novation after acknowledging that it was a lessee under the agreement is an example of what the doctrine of judicial estoppel seeks to preclude; "preventing a party from abusing the judicial process through cynical gamesmanship." *Browning* at 776. Accordingly, the Defendants are judicially estopped from arguing that the January 24, 2005 injunction was a novation.[2]

### 2. Damages under the Real Property Lease

The Plaintiff claims two (2) sets of damages against the Defendants under the real property lease: 1) failure to pay rent for the time period prior to the date Baker rejected the lease

---

[2]The Plaintiff also asserts that the Defendants waived the defense of discharge by novation because they signed personal guarantee statements. The Plaintiff acknowledges that Kentucky has not addressed this specific issue, and has instead cited cases from Georgia and Pennsylvania. This Court has not found any Kentucky or Sixth Circuit case law on point. Nonetheless, as the Court has determined that the January 24, 2005 Agreed Preliminary Injunction was not a novation and that the Defendants are judicially estopped from arguing that the injunction was a novation, the Court does not need to address this argument of first impression at this juncture.

9

agreement and 2) sums that would become due after Baker rejected the lease agreement. In their response, the Defendants did not address these arguments nor the figures submitted by the Plaintiff. The Court shall address each claim under the real property lease separately.

### i) Failure to Pay Rent

The Plaintiff contends that from February 2005 through August 2005, the Defendants owe the Plaintiff rent on the real property. While the Plaintiff does acknowledge that it did receive some rent during that time ($521,929.56) from Crown Oil on behalf of the Defendants, it claims that the Defendants fell short by a total of $660,433.96.

The rent per month for the real property was $153,887.00. There was a seven (7) month period where the Plaintiff claims it was not paid, for a total of $1,077,209.00 ($153,887.00 x 7). Subtracting the amount paid by the Defendants from the seven (7) month figure and the remaining amount becomes $555,279.44. The Plaintiff reaches the figure of $660,433.96 by contending that the Defendants owed interest on the rent for late payment, as stated in Section 6.5 of the lease. The lease states that "[a]ny delinquent payment by Tenant (that is, any payment not made by the date when and after all applicable notice and cure periods provided in this Lease) shall, in addition to any other remedy of Landlord, bear interest at the Default Rate, such interest to be computed commencing on the date such payment was due through and including the date of the payment." The Plaintiff submits that the default interest rate was 12% per annum, and that through January 18, 2007, the total amount due comes to $660,433.96.

As noted *supra*, the Defendants have not challenged the figure reached by the Plaintiff nor have they addressed this argument. Accordingly, the Court finds that the Defendants owe the Plaintiff $660,433.96 for failure to pay the Plaintiff rent on the real property from February

10

2005 through August 2005.

### ii) Sums Due After Baker's Rejection of the Real Property Lease Agreement

GD Deal also contends that it has the right to accelerate the payment of rent on the lease and recover from the Defendants all monies that were to become due after Baker rejected the lease agreement. The Plaintiff argues that under Section 28.2.5 of the lease, damages for this amount are calculated by adding up the total accelerated amount of rent payments with a discount factor of 12%, and then subtracting that amount from the present value of the fair market rental values of the real estate at issue. The Plaintiff notes that the present value of the fair market rental values for real estate is also discounted at 12%. As noted *supra*, the Defendants have not challenged this argument in their response.

The Plaintiff asserts that because the original term of the lease was twenty (20) years and three (3) months and that the lease was rejected in August 2005, there are 191 months of rent payments that remain unpaid. Discounting the total amount of rent by the discount factor of 12% over 191 months, the Plaintiff submitted a total discounted accelerated amount of $7,766,428.97.

However, the Plaintiff contends that under the next step of calculating the damages under Section 28.2.5, subtracting the present value of the fair market rental values for real estate for the future duration of the lease, cannot take place because the Plaintiff cannot properly subtract the fair market rental value since GD Deal has lost its interest in the properties after the foreclosures, and therefore, to the Plaintiff the properties cannot have any future fair market rental value.

The Plaintiff also argues that Section 28.2.5 essentially requires the Plaintiff to mitigate damages under the assumption that under a new lease the landlord would apply any new rent received to the satisfaction of the prior liability of the tenant, in this case Baker. However, the

11

Plaintiff notes that it could not mitigate damages in this situation because GE Capital would not permit GD Deal to act upon the property during the bankruptcy and foreclosure actions.

Lastly, the Plaintiff contends that language Section 28.2.5 that requires subtraction from total damages is a liquidated damages provision, and that the Court should not apply that provision in this matter because the provision was designed to mirror a general landlord mitigation clause, which was not feasible for the Plaintiff under the circumstances. As such, the Plaintiff requests to recover the sum of $7,766,428.97, which represents damages for the accelerated amount of rent due at the time of the rejection, discounted at 12% over the applicable time frame, less the subtraction of any future fair market rental value.

In determining the amount of damages the Plaintiff may recover for the default on the lease agreement by the Defendants, the Court must determine whether the Plaintiff has a right to receive accelerated damages under the lease agreement. If it has that right, the Court must then determine whether the provision that requires the Plaintiff to subtract any future fair market rental value is a liquidated damages provision that should not be enforced by the Court, and/or if an alternative measure of damages is more appropriate under the circumstances.

Section 28.2.5 of the lease agreement allows for the Plaintiff to accelerate and recover from the Defendant, stating in pertinent part that "all Rent and other monetary sums due and owing and scheduled to become and owing under this Lease both before *and after* the date of such breach *for the entire* original scheduled Term." (emphasis added). As such, the lease does permit the Plaintiff recover accelerated damages under the lease agreement due to the default by the Defendants.

Determining whether a clause is a liquidated damages provision is matter of law. *Fidelity*

12

& Deposit Co. of Maryland v. Jones, 75 S.W.2d 1057, 1060 (Ky. Ct. App. 1934). The Sixth

Circuit Court of Appeals defines "liquidated damages" as "a definite sum or amount, which has

been determined by agreement of the parties or by litigation." *Jewett, Bigelow & Brooks v.*

*Detroit Edison Co.*, 274 F. 30, 32 (6th Cir. 1921). In addition, Courts have held that a liquidated

damages provision must not be greatly disproportionate to the injury suffered, in that the amount

stated must bear some relation to the actual injury rather than serving as a penalty. *Smith v.*

*Ward*, 256 S.W.2d 385, 387 (Ky. 1953); *Robert F. Simmons and Associates v. Urban Renewal*

*and Community Development Agency of Louisville*, 497 S.W.2d 705, 706 (Ky. 1973); *Mattingly*

*Bridge Co. v. Holloway & Son Construction Co.*, 694 S.W.2d 702, 706 (Ky.1985); *Man O War*

*Restaurants, Inc. v. Martin,* 932 S.W.2d 366, 369 (Ky. 1996). Further, the actual damages must

be difficult to ascertain. *Id.* If the stated amount is substantially higher than the actual injury

suffered, the provision will be declared a penalty and not enforceable. *Coca-Cola Bottling Works*

*(Thomas) Inc. v. Hazard Coca-Cola Bottling Works, Inc.*, 450 S.W.2d 515, 518 (Ky. 1970);

*Martin,* 932 S.W.2d at 368. Lastly, a party should not recover damages in excess of those set out

in a valid liquidated damages provision. *Coca-Cola*, 450 S.W.2d at 519; *see also Island Creek*

*Corp. v. Anker Energy Corp.*, 968 F.2d 1215 (6th Cir. 1992).

        In the instant matter, while Section 28.2.5 does entitle the Plaintiff to recover accelerated

damages, the section does not contain and/or constitute a liquidated damages provision. First,

the section does not specify a set amount of damages that was determined by the parties.

Second, assuming that the Plaintiff still retained possession of the properties in question, the

actual damages would not be difficult to ascertain, indicating that the parties did not intend the

section to qualify as a liquidated damages provision. Here, the reason why the actual damages

13

are difficult to configure is not because the actual damages are abstract, but instead it is because the Plaintiff is not in possession of the property, and therefore, it cannot determine the future fair market rental value of the properties. Further, even assuming that the section was a liquidated damages provision, the Plaintiff would not be able to recover the amount requested because GD Deal has not subtracted the future fair market rental value, and therefore, the Plaintiff would recover an excess of damages in contrast to those set out in Section 28.2.5. *See Coca-Cola* at 519.

As mentioned *supra*, the Plaintiff also contends that the provision within Section 28.2.5 that requires the subtraction of the fair market rental value mirrors a general obligation of landlord to mitigate damages upon default by a tenant. The Plaintiff correctly points out that where a tenant abandons lease and the possibility to minimize damages is foreclosed, the landlord is under no obligation to mitigate his/her damages. *Abraham v. Gheens*, 205 Ky. 289, 265 S.W. 778 (Ky. Ct. App. 1924); *Ideal Furniture Co. v. Mazer*, 234 Ky. 665, 28 S.W.2d 974 (Ky. Ct. App. 1930); *Jordon v. Nickell*, 253 S.W.2d 237, 238-39 (Ky. 1952); *Fields v. Mullins*, 320 S.W.2d 133 (Ky. 1959); *Illinois Basin Oil Ass'n v. Lynn*, 425 S.W.2d 555, 560 (Ky. 1968). In *Lynn*, the Kentucky Court of Appeals held that when a lessor was foreclosed from taking any steps to mitigate its damages, the trial court was correct in rejecting the mitigation instruction and holding that the lessor did not have a duty to mitigate under the circumstances because he had been foreclosed from doing so. *Lynn* at 560.

Here, similar to *Lynn*, the Plaintiff did not have a duty to mitigate its damages under the circumstances because as soon as the Defendants rejected the lease, GE Capital precluded the Plaintiff from taking any action and/or collecting any rent from the properties. Eventually, the

14

properties were foreclosed, relinquishing any interest GD Deal had over the properties and

foreclosing the Plaintiff from mitigating its damages after the Defendants defaulted on the lease.

Accordingly, the Plaintiff had no duty to mitigate its damages under the circumstances because it

was foreclosed from taking any steps to do so. As such, the Court now must determine if the

provision requiring the subtraction of the fair market rental value within Section 28.2.5 mirrors a

mitigation clause; if that provision does mirror and/or constitute a mitigation clause, then the

Plaintiff may recover accelerated damages without having to subtract the fair market rental value

because the Plaintiff had no duty to mitigate its damages under the circumstances.

 The provision in question within Section 28.2.5 states:

> there shall be subtracted from such accelerated amounts present value of the fair
> market rental values of the Properties for the period from the date of acceleration
> until the date of the remainder of the Term (excluding all unexercised Renewal
> Periods) using the same discount factor (net of costs reasonably incurred by Landlord
> *to mitigate* its damages hereunder). (emphasis added).

Within the provision the last parenthetical section defines "the same discount factor" as the "net

of costs reasonably incurred by [the] Landlord to mitigate its damages hereunder." This implies

that the provision in question constitutes a mitigation clause, and therefore, the Plaintiff does

need to subtract the fair market rental values from the properties because the Plaintiff was

foreclosed from having the opportunity to mitigate damages after the Defendants rejected the

leases.

 Other jurisdictions have consistently held that a subtraction of the fair market rental value

and/or fair market value from a property corresponds with a duty to mitigate on behalf of the

landlord following a default by the tenant. *See Lu v. Grewal*, 30 Cal. Rptr.3d 623, 627-28 (Cal.

App. 2d 2005)(holding that when a tenant breaches a contract "the correct measure for

15

mitigation credit is the property's fair market rental value."); *Harrison Riverside Ltd.*

*Partnership v. Eagle Affiliates, Inc.*, 707 A.2d 490, 493 (N.J. Super. App. Div.1998); *American*

*Nat. Bank and Trust Co. of Chicago v. Hoyne Industries, Inc.*, 1990 WL 114486, *3 (N.D. Ill.

July 31,1990); *Kauder v. Thompson*,1986 WL 5424, *5 (Ohio Ct. App. 1986); *see also Snell v.*

*Salem Ave. Assoc.*, 111 Ohio App.3d 23, 37-39 (Ohio Ct. App. 1996); *Hill v. Metropolitan Dist.*

*Com'n*, 787 N.E.2d 526, 535 (Mass. 2003); *Ly v. Nystrom*, 615 N.W.2d 302, 307 (Minn. 2000);

*National Life Ins. Co. v. Conagra, Inc.*,1994 WL 924300, *5 (W.D. N.C. October 21, 1994).

Accordingly, the Court finds that the Defendants owe the Plaintiff $7,766,428.97 in

damages for an accelerated amount of rent due after the rejection of the real property lease

agreement by the Defendants in August 2005.

### 3. Damages under the Personal Property (Equipment) Lease

Similar to the real property lease, the Plaintiff claims two (2) sets of damages against the

Defendants under the personal property lease: 1) failure to pay rent for the time period prior to

the date Baker rejected the lease agreement and 2) sums that would become due after Baker

rejected the lease agreement.  In their response, the Defendants did not address these arguments

nor the figures submitted by the Plaintiff.  The Court shall address each claim under the personal

property lease separately.

### i) Failure to Pay Rent

The Plaintiff contends that from February 2005 through August 2005, the Defendants

owe the Plaintiff rent on the personal property.  During that time, the Plaintiff submits that

during that seven (7) month period the rent per month on the personal property was $54,822.00.

The Plaintiff states that it received $9,710.62 from the Baker to apply to the rent owed under the

personal property lease. In addition, similar to the real property lease, all delinquent payments accumulate interest at a default rate of 12% per annum. As of January 18, 2007, the Plaintiff claims $451,223.70 in damages for the failure of the Defendants to pay rent on the personal property lease from February 2005 through August 2005.

As noted *supra*, the Defendants have not challenged the figure reached by the Plaintiff nor have they addressed this argument. Accordingly, the Court finds that the Defendants owe the Plaintiff $451,223.70 for failure to pay the Plaintiff rent on the personal property from February 2005 through August 2005.

### ii) Sums Due After Baker's Rejection of the Personal Property Lease Agreement

GD Deal also contends that it has the right to accelerate and recover from the Defendants all rent monies that were to become due after Baker rejected the personal property lease agreement. Similar to the real property argument analyzed *supra*, the Plaintiff put forth the same arguments as to why it should recover damages from the Defendants for the accelerated amount of rent payments. Section 22.2.5 in the personal property lease contains the exact same language as Section 28.2.25 of the real property lease. Using the same steps and formulas in figuring the rent amount owed under the real property lease, the Plaintiff submits a claim of $945,098.98 in damages for an accelerated amount of rent due after the rejection of the leases by the Defendants.

As noted *supra*, the Defendants have not challenged the figure reached by the Plaintiff nor have they addressed this argument. Accordingly, the Court finds that the Defendants owe the Plaintiff $945,098.98 in damages for an accelerated amount of rent due after the rejection of the personal property lease agreement by the Defendants in August 2005.

### 4. Court Costs, Attorney Fees and Associated Legal Expenses

17

Both the real property lease and the personal property lease, under Section 28.2.6 and Section 22.2.6, respectively, provide for the recovery of legal expenses to the Plaintiff, regardless of whether or not legal proceedings are actually commenced, so long as the Plaintiff is the prevailing party. As of January 18, 2007, the Plaintiff claims legal fees, including court costs, attorney fees and associated legal expenses, in the amount of $140,296.04. This includes representing the Plaintiff in: bankruptcy cases in Tennessee and Wisconsin; a case before the Western District of Tennessee; foreclosure cases in over twenty (20) circuit courts through out the Commonwealth; and two (2) appearances before this Court, including the instant matter. In Kentucky, a party may recover legal expenses if a contract expressly provides for such fees. *Kentucky State Bank v. AG Services, Inc.*, 663 S.W.2d 754, 755 (Ky. Ct. App. 1984); *Batson v. Clark*, 980 S.W.2d 566, 577 (Ky. Ct. App.1998); *see also McNutt v. State Farm Mutual Automobile Insurance Company*, 369 F.Supp. 381, 385-86 (W.D.Ky.1973), *aff'd*, 494 F.2d 1282 (6th Cir.1974).

The Defendants have not challenged the figures reached by the Plaintiff nor have they addressed this argument. Accordingly, the Court finds that the Plaintiff is entitled to $140,296.04 in attorney fees and costs.

The Plaintiff also seeks the recovery of "miscellaneous expenses" it incurred in dealing with the properties because of the default by the Defendants. GD Deal seeks to recover costs it incurred, including: paying taxes on the properties ($7,147.43); securing compliance with applicable environmental statutes and EPA regulations ($38,224.36); insurance ($23,494.02); and repairs ($15,947.66), for a total of $84,813.47 in miscellaneous expenses. Fred Higgins, the President of GD Deal, has documented these costs and expenses in an affidavit. While the

18

Plaintiff does not state how and/or when the default by the Defendants caused the Plaintiff to incur these expenses, it does provide the relevant sections within the real property lease that justify the recovery of these expenses regardless of how and when the costs took place.

Section 7.1 mandates that the landlord (GD Deal) has a net lease with the tenant (Baker) "free of expenses or charges with respect to the Properties, except as provided in this Lease. Tenant shall pay, subject to terms of this Lease, as Additional Rent and discharge before they become delinquent, *all items of expenses*, arising during and pertaining to the Term, from the *operation, maintenance, repair, use or occupancy of the Properties.*" (emphasis added).

Section 7.2.1 states, in pertinent part, that the "[t]enant shall pay and discharge, before delinquency, all Impositions. Tenant shall pay all interest and penalties assessed by any Government on account of late payment of any imposition." Under the "definitions" section on page 6, the real property lease defines "impositions" as "all taxes, special and general assessments, water rents, rates and charges, commercial rent taxes, all charges for utility telecommunication services, all sales, gross receipts and other taxes, duties or imposts...levies fees and other impositions and charges of every nature and kind."

Section 11.1.2 requires that the tenant keep the properties "free and clear of all environmental liens, whether due to any act or omission of Tenant or any other person." Section 14.1, entitled "Indemnification by Tenant," is a "catch-all" provision that requires the tenant to indemnify the landlord "from and against any and all losses." Lastly, Section 15.1-15.5 mandates the tenant to maintain insurance on the properties.

The Defendants have not challenged the figure reached by the Plaintiff nor have they addressed this argument. Accordingly, the Court finds that the Plaintiff is entitled to $84,813.47

19

in miscellaneous costs associated with the Defendants' breach of the real property lease.

### 5. Overpayment of Rent Owed to the Plaintiff - Counterclaim of Baker

In Baker's answer to the Plaintiff's complaint (Docket #3), Baker asserted that the Plaintiff breached its lease agreement with Baker by overcharging the Defendant $752,253.82 in rent. In their response to the Plaintiff's motion for summary judgment (Docket #83), Defendants Sharma and Multani also state that as of January 2005, GD Deal had overcharged Baker in excess of $752,253.82. Though the Defendants do not elaborate on this issue except to state that the overcharge caused the Defendants "severe financial distress," the Plaintiff devotes a substantial part of its twenty-six (26) page reply (Docket #85) to this matter. The Plaintiff offers a detailed history of the transactions between CRE, the entity who entered into the original lease agreement with GD Deal, and Girkin Development LLC ("Girkin"), who worked with GD Deal on leasing the properties in 2001 and is a co-Plaintiff in this matter. The Plaintiff offers a thorough explanation both addressing and disproving the allegation of the overcharge, countering the argument put forth by the Defendants in their answer to the complaint and response to the motion for summary judgment, respectively.

Baker has not responded to the Plaintiff's motion for summary judgment. Further, none of the Defendants have provided any evidence to support the claim that the Plaintiff overcharged Baker in excess of $752,253.82. Under FRCP 56, the Supreme Court has held that a party must present more than a mere scintilla of evidence in order for the claim to survive a motion for summary judgment. *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986). At this juncture, the Defendants have not met their burden in sustaining their counterclaim against the Plaintiff because the Defendants have not provided any evidence or arguments to support their assertion.

20

Accordingly, the Court finds that the Defendants' counterclaim that the Plaintiff overcharged them rent fails as a matter of law.

### CONCLUSION

For the foregoing reasons, the Plaintiff's Motion for Summary Judgment is **GRANTED**. The Court finds that the Defendants owe the Plaintiff **$660,433.96** for failure to pay the Plaintiff rent on the real property from February 2005 through August 2005. The Court finds that the Defendants owe the Plaintiff **$7,766,428.97** in damages for an accelerated amount of rent due after the rejection of the real property lease agreement by the Defendants in August 2005. The Court finds that the Defendants owe the Plaintiff **$451,223.70** for failure to pay the Plaintiff rent on the personal property from February 2005 through August 2005. The Court finds that the Defendants owe the Plaintiff **$945,098.98** in damages for an accelerated amount of rent due after the rejection of the personal property lease agreement by the Defendants in August 2005. The Court finds that the Plaintiff is entitled to **$140,296.04** in attorney fees and costs. The Court finds that the Plaintiff is entitled to **$84,813.47** in miscellaneous costs associated with the Defendants' breach of the real property lease. Lastly, the Defendants' counterclaim against the Plaintiff for breach of the lease agreement fails as a matter of law.

Accordingly, the Plaintiff shall recover **$10,048,295.12** in damages from the Defendants for their breach and default of the real property and personal property leases.

An appropriate order shall issue.

May 11, 2007

*Thomas B. Russell*

**Thomas B. Russell, Judge**
**United States District Court**

21

3315     (Rev. 6/11/02) CCG 0015
Memorandum of Judgment

Doc#: 0728260163 Fee: $28.00
Eugene "Gene" Moore
Cook County Recorder of Deeds
Date: 10/08/2007 04:22 PM Pg: 1 of 3

IN THE CIRCUIT COURT OF
COOK COUNTY, ILLINOIS

G.D. DEAL HOLDINGS, INC. et al.

v.

BAKER ENERGY, INC., et al.

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT
OF ILLINOIS

Recorder's Stamp

No. ___07 CV 04965___

and U.S.D.C., Western District of KY, Bowling Green Division, Court No.: 1:05-CV-3-R

## MEMORANDUM OF JUDGMENT

On ___May 11___, ___2007___, judgment was entered in     court

in favor of the plaintiff ___G.D. Deal Holdings, Inc., (see attached judgment order entered in Bowling Green___

___Division, Western District of KY)___

and against defendant ___Surinder Multani___

whose address is ___124 Bright Ridge Drive, Schaumburg, IL 60194-3696, Parcel No. 07 23 102 021 0000___

in the amount of $ ___10,048,295.12___.

Atty. No.: ___04933___
Name: ___Michael Ripani, Williams Montgomery & John___
Atty. for: ___Plaintiff___
Address: ___20 North Wacker Drive___
City/State/Zip: ___Chicago, IL 60606___
Telephone: ___312-443-3206___

Judge                          Judge's No.

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILL

Exhibit B

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CASE NO.: 1:05-CV-3-R

G.D. DEAL HOLDINGS, INC., et. al.,                                    PLAINTIFFS

v.

BAKER ENERGY, INC, et. al.,                                          DEFENDANTS

## ORDER

**IT IS SO ORDERED:**

The Plaintiff's Motion for Summary Judgment (Docket #77) is **GRANTED**. The Court finds that the Defendants owe the Plaintiff **$660,433.96** for failure to pay the Plaintiff rent on the real property from February 2005 through August 2005. The Court finds that the Defendants owe the Plaintiff **$7,766,428.97** in damages for an accelerated amount of rent due after the rejection of the real property lease agreement by the Defendants in August 2005. The Court finds that the Defendants owe the Plaintiff **$451,223.70** for failure to pay the Plaintiff rent on the personal property from February 2005 through August 2005. The Court finds that the Defendants owe the Plaintiff **$945,098.98** in damages for an accelerated amount of rent due after the rejection of the personal property lease agreement by the Defendants in August 2005. The Court finds that the Plaintiff is entitled to **$140,296.04** in attorney fees and costs. The Court finds that the Plaintiff is entitled to **$84,813.47** in miscellaneous costs associated with the Defendants' breach of the real property lease. Lastly, the Defendants' counterclaim against the Plaintiff for breach of the lease agreement fails as a matter of law.

Accordingly, the Plaintiff shall recover **$10,048,295.12** in damages from the Defendants for their breach and default of the real property and personal property leases.

May 11, 2007

*Thomas B. Russell*

**Thomas B. Russell, Judge**
**United States District Court**

# HARNED, BACHERT & DENTON, LLP

ATTORNEYS AT LAW
324 EAST 10TH AVENUE
P. O. BOX 1270
BOWLING GREEN, KY 42102-1270

NORMAN E. HARNED
SCOTT A. BACHERT
JOY D. DENTON
STEPHANIE MCGEHEE-SHACKLETTE
W. GREG HARVEY
WILLIAM F. CODELL

Telephone:
(270) 782-3938
Facsimile:
(270) 781-4737

Codell@hbd-law.com
August 30, 2007

Michael W. Dobbins
Clerk of US District Court
Everett McKinley Dirksen Building
219 South Dearborn Street
Chicago, IL 60604

RE:     Registration of District Court Judgment of Another District

Dear Mr. Dobbins:

You are hereby requested to register promptly in your district pursuant to Title 28, Section 1963 of the United States Code a judgment rendered and entered in Civil Action Number 1:05-CV-3-R, by the United States District Court for the Western District of Kentucky, Bowling Green Division, on May 11, 2007, in favor of GD Deal Holdings, LLC and Girkin Development, LLC (on whose behalf the registration is requested) and against Baker Energy, Inc., Rohit Sharma, and Surinder Multani. The judgment is for the recovery of money, as more fully shown by the enclosed certified copy of the judgment. The United States District Court for the Western District of Kentucky has found good cause to register the judgment in other districts pending appeal as shown by the enclosed certified copy of the order allowing registration of the judgment. Additionally enclosed, please find a check in the amount of $39.00 to cover the filing fee for the registration of the judgment.

You are requested to notify the undersigned, attorney for GD Deal Holdings, LLC and Girkin Development, LLC, at the address set out above as soon as the registration is effected in order that enforcement of the judgment in your district may be expedited. Thank you for your attention to this matter.

Very truly yours,

**07CV4965**
**JUDGE KENNELLY**
**MAG. JUDGE VALDEZ**

HARNED, BACHERT & DENTON, LLP

William F. Codell

enclosure

01/16/2006  18:01  18474138032                    OFFICEMAX

FAX 630-940-1744

# Personal Financial Statement



**MIDWEST** ™
*Community Bank*

YOU MAY APPLY FOR A CREDIT EXTENSION OR FINANCIAL ACCOMMODATION INDIVIDUALLY OR JOINTLY WITH A CO-APPLICANT. THIS STATEMENT AND ANY APPLICABLE SUPPORTING SCHEDULES MAY BE COMPLETED JOINTLY BY BOTH MARRIED AND UNMARRIED CO-APPLICANTS IF THEIR ASSETS AND LIABILITIES ARE SUFFICIENTLY JOINED SO THAT THE STATEMENT CAN BE MEANINGFULLY AND FAIRLY PRESENTED ON A COMBINED BASIS; OTHERWISE SEPARATE STATEMENTS AND SCHEDULES ARE REQUIRED.

**APPLICANT**

NAME  SARANPREET KAUR MULTANI          SOCIAL SECURITY #

ADDRESS  24 BRIGHT RIDGE DR, SCHAUMBURG IL 60194

TELEPHONE NUMBER                          DATE OF BIRTH

PRESENT EMPLOYER  ABBG MANAGEMENT GROUP PLC   POSITION  V

ADDRESS  1450 E AMERICAN LANE, SUITE 1400 IL 60173  SCHAUMBURG


**CO-APPLICANT**

NAME  SURINDER PS MULTANI          SOCIAL SECURITY #

ADDRESS  SAME

TELEPHONE NUMBER                          DATE OF BIRTH

PRESENT EMPLOYER  ABBG MANAGEMENT GROUP LLC   POSITION  CEO

ADDRESS  1450 E AMERICAN LANE, SUITE 1400 IL 60173  SCHAUMBURG

Exhibit C

06/16/2006 18:01 18474138032 OFFICEMAX PAGE 02

ATTACHED

DATE OF VALUATION _____

* Round all amounts to the nearest $100
* Attach separate sheet if you need more space to complete detail schedule

| ASSETS | AMOUNT | | LIABILITIES | AMOUNT | |
|---|---|---|---|---|---|
| Cash in this Bank | | | Notes Payable Banks (Schedule 7) | | |
| Cash in Other Banks (Detail) | | | Notes Payable Others (Schedule 7) | | |
| | | | Installment Contracts Payable (Schedule 7) | | |
| | | | Due Dept. Stores, Credit Cards & Others | | |
| Due from Friends, Relatives & Others (Schedule 1) | | | Income Taxes Payable | | |
| Mortgage & Contracts for Deed Owned (Schedule 2) | | | | | |
| Securities Owned (Schedule 3) | | | Other Taxes Payable | | |
| Cash Surrender Value of Life Insurance (Schedule 4) | | | | | |
| Homestead (Schedule 5) | | | Loans on Life Insurance (Schedule 4) | | |
| Other Real Estate Owned (Schedule 5) | | | | | |
| Automobiles | | | Mortgage on Homestead (Schedule 5) | | |
| | | | Mortgage or Liens on Other Real Estate Owned (Schedule 5) | | |
| Personal Property | | | Other Liabilities (Detail) | | |
| Other Assets (Detail) | | | | | |
| | | | TOTAL LIABILITIES | | |
| | | | Net Worth (Total Assets Less Total Liabilities) | | |
| TOTAL | | | TOTAL | | |

| ANNUAL INCOME | APPLICANT | CO-APPLICANT | CONTINGENT LIABILITIES | | |
|---|---|---|---|---|---|
| Salary | | | As Endorser | | |
| Commissions | | | As Guarantor | | |
| Dividends | | | Lawsuits | | |
| Interest | | | For Taxes | | |
| Rentals | | | Other (Detail) | | |
| Alimony, child support or maintenance (you need not show this unless you wish us to consider it). | | | | | |
| Other | | | ☐ Check here if "None" | | |
| TOTAL INCOME | | | TOTAL CONTINGENT LIABILITIES | | |

### SCHEDULE 1 DUE FROM FRIENDS, RELATIVES & OTHERS

| Name of Debtor | Owed To | Collateral | How Payable | Maturity Date | Unpaid Balance |
|---|---|---|---|---|---|
| | | | $ per | | |
| | | | $ per | | |
| | | | $ per | | |
| | | | | TOTAL | |

### SCHEDULE 2 MORTGAGE AND CONTRACTS FOR DEED OWNED

| Name of Debtor | Type of Property | 1st or 2nd Lien | Owed To | How Payable | Unpaid Balance |
|---|---|---|---|---|---|
| | | | | $ per | |
| | | | | $ per | |
| | | | | $ per | |
| | | | | $ per | |
| | | | | TOTAL | |

ATTACHED

## SCHEDULE 3 SECURITIES OWNED

| No. Shares or Bond Amount | Description | In Whose Name(s) Registered | Cost | Present Market Value | L - listed U - unlisted |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | TOTAL | | |

## SCHEDULE 4 LIFE INSURANCE

| Insured | Insurance Company | Beneficiary | Face Value of Policy | Cash Value | Loans |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | TOTAL | | |

## SCHEDULE 5 REAL ESTATE

| Address and Type of Property | Title in Name(s) of | Monthly Income | Cost Year Acquired | Present Market Value | Amount of Insurance |
|---|---|---|---|---|---|
| Homestead | | | $ Year | | |
| | | | $ Year | | |
| | | | $ Year | | |
| | | | $ Year | | |
| | | | $ Year | | |

## SCHEDULE 6 MORTGAGES OR LIENS ON REAL ESTATE

| To Whom Payable | | How Payable | Interest Rate | Maturity Date | Unpaid Balance |
|---|---|---|---|---|---|
| Homestead | $ | per | | | |
| | $ | per | | | |
| | $ | per | | | |
| | $ | per | | | |
| | $ | per | | | |

## SCHEDULE 7 NOTES PAYABLE BANKS AND OTHERS AND INSTALLMENT CONTRACTS PAYABLE

| To Whom Payable | Address | Collateral or Unsecured | How Payable | Unpaid Balance |
|---|---|---|---|---|
| | | | $ per | |
| | | | $ per | |
| | | | $ per | |
| | | | $ per | |
| | | | $ per | |
| | | | $ per | |
| | | | $ per | |

06/16/2006  18:01  18474138032          OFFICEMAX                    PAGE  04

|  | APPLICANT | CO-APPLICANT |
|---|---|---|
| Have you ever gone through bankruptcy or had a judgment against you? | ☐ Yes  ☒ No | ☐ Yes  ☒ No |
| Are any assets pledged or debts secured except as shown? | ☐ Yes  ☒ No | ☐ Yes  ☒ No |
| Have you made a will? | ☒ Yes  ☐ No | ☒ Yes  ☐ No |

Number of dependents
(if "none" check none)

_____4____ ☐ None          _____1____ ☐ None

Marital Status (answer only if this financial statement is provided in connection with a request for secured credit or applicant is seeking a joint account with spouse.)

☒ Married              ☐ Married
☐ Separated            ☐ Separated
☐ Unmarried            ☐ Unmarried
(Unmarried includes single, divorced, widowed)

The foregoing statement, submitted for the purpose of obtaining credit, is true and correct in every detail and fairly shows my/our financial condition at the time indicated. I/we will give you prompt written notice of any subsequent substantial change in such financial condition occurring before discharge of my/our obligations to you. I/we understand that you will retain this personal financial statement whether or not you approve the credit in connection with which it is submitted. You are authorized to check my/our credit and employment history or any other information contained herein.

**THE UNDERSIGNED CERTIFY THAT THE INFORMATION CONTAINED ON THIS FORM HAS BEEN CAREFULLY REVIEWED AND THAT IT IS TRUE AND CORRECT IN ALL RESPECTS.**

_____        _____
Date                               Your Signature

_____        _____
Date                               Co-Applicant Signature (if you are requesting the financial accommodation jointly)



Member
FDIC



06/26/2006  14:47   19474138032                OFFICEMAX                                      PAGE  02/05

# PERSONAL FINANCIAL STATEMENT

IMPORTANT : Read these directions before completing this Statement

[ ] If you are applying for individual credit in your own name and are relying on your own income or assets and not the income or assets of another person as the basis for repayment of the credit requested, complete Section 1 and Section 2 and continue

[X] If you are applying for joint credit with another person, complete all Sections providing information in Section 2 about the joint applicant
We intend to apply for join credit

Satennreet K. Mullani
Applicant

Surjinder P. Mullani
Co- Applicant

[ ] If you are applying for individual credit but are relying on income from alimony, child support or separate maintenance or on the income or assets of another person as a basis for repayment of the credit requested complete all Sections, providing information in Section 2 about the person upon whose alimony, child support, or maintenance payments or income or assets you are relying

| SECTION 1 - INDIVIDUAL INFORMATION | | | SECTION 2 - OTHER PARTY INFORMATION | | |
|---|---|---|---|---|---|
| Name : | Satennreet Kaur Mullani | | Name ( Mr. Surinder Mullani) | | |
| Residence Address:24 Bright Ridge Drive | | | Residence Address:24 Bright Ridge Drive | | |
| City, State & Zip: Schaumburg, IL - 60194 | | | City, State & Zip: Schaumburg, IL - 60194 | | |
| Position or Occupation: Partner | | | Position or Occupation: | | |
| Business Name: | | | Business Name: | | |
| Business Address: | | | Business Address: | | |
| City, State & Zip: | | | City, State & Zip: | | |
| Res Phone: | Bus Phone : | | Res Phone: | | Bus Phone : |
| Drivers License No: | | State:IL | Drivers Licence No: | | State: IL |
| Date Issued : | 07/12/04 | | Date Issued : 09/03/04 | | |
| Expiration Date : 01/30/09 | | | Expiration Date : 09/07/09 | | |

| SECTION 3 - STATEMENT OF FINANCIAL CONDITION AS OF | | 20 | | |
|---|---|---|---|---|
| ASSETS | In Dollars ( Omit cents) | LIABILITIES | | In Dollars ( Omit cents) |
| Cash on hand and in banks | $        102,800 | Notes Payable to Banks - Secured | | |
| U.S Govt & Marketable Securities | | Notes Payable to Banks- Unsecured | | |
| Non Marketable Securities | | Due to Brokers | | |
| Securities held by Broker | | Amounts Payable to others - Secured | | |
| Restricted or Control accounts | | Amounts Payable to others - Unsecured | $ | 100,400 |
| Partial Interest in Real Estate Equities | | Accounts and bills due | $ | 51,450 |
| Real Estate Owned | $     2,200,000 | Unpaid Income Tax | | |
| Loans Receivable | | Other Unpaid taxes and interest | | |
| Automobiles and Personal Property | $       210,000 | Real Estate mortgage payable | | |
| Cash Value - Life Insurance | $       142,000 | Other Debts | $ | 1,422,000 |
| Other Assets | $        12,000 | | | |
| Retirement Accounts | $        80,000 | Charge Accounts | $ | 114,000 |
| Furniture and Jewellery | $       780,000 | | | |
| Interest in Corporations | $     5,000,000 | Total Liabilities | $ | |
| | | Net Worth | $ | 1,938,850 |
| Total Assets | $     8,826,800 | Total Liabilities and Net Worth | $ | 7,067,950 |
| | | | $ | 8,826,800 |

## SOURCES OF INCOME FOR YEAR END 2006

| Salary, bonuses & commissions | | |
|---|---|---|
| Dividends | $ | 188,400 |
| Bonds | | |
| Real Estate Income | | |
| Other Income | | |
| (Alimony, Child Support etc) | | |
| Distribution from companies | $ | 560,000 |
| | | |
| Total | $ | 708,400 |

## PERSONAL INCOME

Do you have a will? Yes, if so, name of executor

Are you a partner or officer in any other ventures ?

Are you obligated to pay alimony, child support or separate maintenance payments ?
N/A

Are any assets pledged other than as described on Schedule

Income Tax settled through date _____

Are you a defendant in any suits or legal actions
N/A

Personal bank accounts carried at :
American Chartered Bank, CitiBank

Have you ever been declared bankrupt ? If so describe.
N/A

## CONTINGENT LIABILITIES

Do you have contingent liabilities ? If so describe

| As endorser, co-maker or guarantor? | | |
|---|---|---|
| On leases or contracts? | Auto Lease | |
| Legal Claims | | |

## SCHEDULE A - U.S. GOVERNMENTS & MARKETABLE SECURITIES

| Number of Shares or Face Value ( Bonds ) | Description | In Name of | Are These Pledged? | Market Value |
|---|---|---|---|---|
| | | | | |

## SCHEDULE B - NON MARKETABLE SECURITIES

| Number of Shares | Description | In Name of | Are these Pledged? | Source of Value? | Value |
|---|---|---|---|---|---|
| N/A | Promissory Note - Excellant Petroleum | | N/A | N/A | $ 177,000 |
| N/A | Promissory Note - Sichn Inc | | N/A | N/A | $ 51,000 |
| N/A | Promissory Note - Almanshu Reide | | N/A | N/A | $ 52,000 |

## SCHEDULE C - PARTIAL INTEREST IN REAL ESTATE EQUITIES

| Address & Type of Property | Title- Owner | % of Ownership | Date Acquired | Cost | Market Value | Mortgage Maturity | Mortgage Amount |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

## SCHEDULE D - REAL ESTATE OWNED

| Address & Type of Property | Title- Owner | Date Acquired | Cost Acquired | Market Value | Mortgage Maturity | Mortgage Amount |
|---|---|---|---|---|---|---|
| 24 Bright Ridge Drive Schaumburg, IL - 60194 | S.P. Singh (and Safanpreet Kaur | 1/1 | $ 1,670,000 | $ 2,200,000 | LOC  6 | 1,200,000 |
| | | | | | LOC  8 | 99,000 |

## SCHEDULE E - LIFE INSURANCE CARRIED, INCLUDING N.S.L.I. AND GROUP INSURANCE

| Name of Insurance Comp | Owner of Policy | Beneficiary | Face Amount | Policy Loans | Cash Surrender Value |
|---|---|---|---|---|---|
| New York Life | S.P. Singh - Whole | Safanpreet Kaur | $ 100,000 | | $12,000 |
| New York Life | S.P. Singh - Term | Safanpreet Kaur | $ 1,000,000 | | N/A |
| Jackson National Life | S.P. Singh - Term | Safanpreet Kaur | $ 1,000,000 | | N/A |

| Jackson National Life | S.P. Singh - Term | S.P. Singh | $ 1,000,000 | | | N/A | |

## SCHEDULE F - BANKS OR FINANCE COMPANIES WHERE CREDIT HAS BEEN OBTAINED

| Name and Address of Lender | Credit in the name of | Secured or Unsecured | Original Date | High Credit | Current Balances |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

The information contained in this statement is provided for the purpose of obtaining or maintaining credit with you on behalf of the undersigned, or persons, firms or corporations in whose behalf the undersigned may either severally or jointly with others, execute a guaranty in favor. Each undersigned understands that you are relying on the information provided herein in deciding to grant or continue credit. Each undersigned represents and warrants that the information provided is true and complete and that you may consider this statement as continuing to be true and correct until a written notice of a change is given to you by the undersigned. You are authorized to make all inquires you deem necessary to verify the accuracy of the statements made herein, and to determine my/our credit worthiness. You are authorized to answer questions about your credit experience with me/us.

Date Signed _____

Signature (Individual) _____

S.S. No _____ Date of Birth _____

Signature (Other Party) _____

S.S. No _____ Date of Birth _____

## Supplement to Personal Financial Statement

| ASSETS | Amount | LIABILITIES | Amount |
|---|---|---|---|
| Automobiles | | Automobiles (Secured Notes) | |
| Range Rover 2005 | $ 71,000 | Range Rover 2005 | $ 48,500 |
| Mercedes S600 2003 | $ 39,000 | BMW 325IX | $ 28,200 |
| Mitsubishi SUV 2006 | $ 32,000 | Mitsubishi SUV 2006 | $ 23,700 |
| Total | $ 142,000 | Total | $100,400 |
| Other Assets | | Credit Card Payables | |
| Furniture and Household Effects | $ 600,000 | Chase | $ 11,000 |
| Jewelry | $ 180,000 | Citibank | $ 1,100 |
| | | MBNA | $ 15,000 |
| Total | $ 780,000 | MBNA | $ 7,500 |
| | | Discover | $ 9,850 |
| | | Chase | $ 7,000 |
| | | Total | $ 51,450 |
| Retirement Accounts | | | |
| 401 K Allianz Life Insurance | $ 40,000 | Charge Account | |
| 401 K Allianz Life Insurance | $ 40,000 | Marshall Field | $114,000 |
| Total | $ 80,000 | | |
| Stock Ownership | | | |
| 80 % Owner | $ 3,500,000 | | |
| abc Corp | | | |
| ( FMV of Credit Card Processing Business ) | | | |
| 50% Shareholders in | $ 1,500,000 | | |
| Sapphire Supply LLC | | | |
| (Gasoline Distribution Company) | | | |

06/16/2006 18:01 18474138032 OFFICEMAX PAGE 05

# PERSONAL FINANCIAL STATEMENT

**IMPORTANT : Read these directions before completing this Statement**

☐ If you are applying for individual credit in your own name and are relying on your own income or assets and not the income or assets of another person as the basis for repayment of the credit requested, complete Section 1 and Section 2 and continue

☒ If you are applying for joint credit with another person, complete all Sections providing information in Section 2 about the joint applicant
We intend to apply for joint credit

Satamreet K. Mullani
Applicant

Surender P. Mullani
Co-Applicant

☐ If you are applying for individual credit but are relying on income from alimony, child support or separate maintenance or on the income or assets of another person as a basis for repayment of the credit requested, complete all Sections, providing information in Section 2 about the person upon whose alimony, child support, or maintenance payments or income or assets you are relying.

## SECTION 1: INDIVIDUAL INFORMATION

| | | SECTION 2 - OTHER PARTY INFORMATION | |
|---|---|---|---|
| Name : Satamreet Kaur Mullani | | Name : Mr. Surnder Mullani | |
| Residence Address:24 Bright Ridge Drive | | Residence Address:24 Bright Ridge Drive | |
| City, State & Zip: Schaumburg, IL - 60194 | | City, State & Zip: Schaumburg, IL - 60194 | |
| Position or Occupation: Partner | | Position or Occupation: | |
| Business Name: | | Business Name: | |
| Business Address: | | Business Address: | |
| City, State & Zip: | | City, State & Zip: | |
| Res Phone: | Bus Phone : | Res Phone: | |
| Drivers License No: | | Drivers License No: | | Bus Phone : |
| Date Issued : 07/12/04 | | State: IL | Date Issued : 09/06/04 | State: IL |
| Expiration Date : 04/30/08 | | Expiration Date: 09/07/08 | |

## SECTION 3 - STATEMENT OF FINANCIAL CONDITION AS OF _____, 20__

| ASSETS | In Dollars (Omit Cents) | LIABILITIES | | In Dollars (Omit Cents) |
|---|---|---|---|---|
| Cash on Hand and in Banks | $ 355,000 | Notes Payable to Banks - Secured | | |
| U.S. Govt. & Marketable Securities | | Notes Payable to Banks - Unsecured | | |
| Non Marketable Securities | | Due to Brokers | | |
| Securities held by Broker | | Amounts Payable to others - Secured | $ | 120,000 |
| Restricted or Control accounts | | Amounts Payable to others - Unsecured | $ | 41,500 |
| Partial Interest in Real Estate Equities | | Accounts and bills due | | |
| Real Estate Owned | | Unpaid income Tax | | |
| Notes Receivable | $ 2,200,000 | Other Unpaid taxes and interest | | |
| Automobiles and Personal Property | $ 310,000 | Real Estate mortgages payable | | |
| Cash Value - Life Insurance | $ 157,000 | Other Debts | $ | 1,283,000 |
| Other Assets | $ 1%,000 | | | |
| | | | | |
| Retirement Accounts | | Charge Accounts | | |
| Furniture and Jewelery | $ 80,000 | | $ | 111,000 |
| Interest in Corporations | $ 760,000 | | | |
| | $ 5,000,000 | | | |
| | | Total Liabilities | $ | 1,577,500 |
| | | Net Worth | $ | 7,520,000 |
| Total Assets | $ 9,097,500 | Total Liabilities and Net Worth | $ | 9,097,500 |

06/16/2005  18:01  18474138032    OFFICEMAX    PAGE  06

## SOURCES OF INCOME FOR YEAR END 2005

| Salary, bonuses & commissions | | | PERSONAL INCOME |
|---|---|---|---|
| Dividends | $ | 125,000 | Do you have a will? Yes. If no, name of executor |
| Real Estate Income | | | |
| Other Income | | | Are you a partner or officer in any other ventures ? |
| ( Alimony, Child Support etc.) | | | |
| Distribution from companies | | | |
| | | $ | 550,000 | Are you obligated to pay alimony, child support or separate |
| | | | | maintenance payments ? |
| Total | | $ | 675,000 | N/A |

### CONTINGENT LIABILITIES

| Do you have contingent liabilities ? If so Describe | | Are any assets pledged other than as described on Schedules |
|---|---|---|
| As endorser, co-maker or guarantor? | | Income Tax settled through date _____ |
| On leases or contracts? | | Are you a defendant in any suits or legal actions |
| Legal Claims | Auto Lease | N/A |
| | | Personal bank accounts carried at - |
| | | American Chartered Bank, CitiBank |
| | | Have you ever been declared bankrupt ? If so describe. |
| | | N/A |

### SCHEDULE A - U.S. GOVERNMENT & MARKETABLE SECURITIES

| Number of Shares or Face Value ( Bonds ) | Description | In Name of | Are These Pledged? | Market Value |
|---|---|---|---|---|
| | | | | |
| | | | | |

### SCHEDULE B - NON MARKETABLE SECURITIES

| Number of Shares | Description | In Name of | Are these Pledged? | Source of Values | Value |
|---|---|---|---|---|---|
| N/A | Promissory Note - Excellent Petroleum | | N/A | | $ 127,000 |
| N/A | Promissory Note - Sigma Inc | | N/A | | $ 61,000 |
| N/A | Promissory Note - Himanshu Patels | | N/A | | $ 62,000 |

### SCHEDULE C - PARTIAL INTEREST IN REAL ESTATE EQUITIES

| Address& Type of Property | Title - Owner | % of Ownership | Date Acquired | Cost | Market Value | Mortgage Maturity | Mortgage Amount |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |

### SCHEDULE D - REAL ESTATE OWNED

| Address& Type of Property | Title - Owner | Date Acquired | Cost Acquired | Market Value | Mortgage Maturity | Mortgage Amount |
|---|---|---|---|---|---|---|
| 2 Singh Ridge Drive Schamburg, IL - 83194 | S.P. Singh and Satanpreet Kaur | 1/4 | $ 1,870,000 | $ 2,200,000 | LOC | $ 1,300,000 |
| | | | | | LOC | $ 93,000 |

### SCHEDULE E - LIFE INSURANCE CARRIED, INCLUDING N.S.L.I. AND GROUP INSURANCE

| Name of Insurance Comp | Owner of Policy | Beneficiary | Face Amount | Policy Loans | Cash Surrender Value |
|---|---|---|---|---|---|
| New York Life | S.P. Singh - Whole | Satanpreet Kaur | $ 100,000 | | $12,555 |
| New York Life | S.P. Singh - Term | Satanpreet Kaur | $1,000,000 | | N/A |
| Alpakash National Life | S.P. Singh - Term | Satanpreet Kaur | $1,000,000 | | N/A |

06/15/2006  18:01    19474138032                    OFFICEMAX                          PAGE  07

| Jackson National Life | S.P. Singh - Term | S.P. Singh | $ 1,000,000 | | | N/A | |

**SCHEDULE F - BANKS OR FINANCE COMPANIES WHERE CREDIT HAS BEEN OBTAINED**

| Name and Address of Lender | Credit in the name of | Secured or Unsecured | Original Date | High Credit | Current Balance |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

The information contained in this statement is provided for the purpose of obtaining or maintaining credit with you on behalf of the undersigned , or persons, firms or corporations in whose behalf the undersigned may either severally or jointly with others , execute a guaranty in favor . Each undersigned understands that you are relying on the information provided herein in deciding to grant or continue credit. Each undersigned represents and warrants that the information provided is true and complete and that you may consider this statement as continuing to be true and correct until a written notice of a change is given to you by the undersigned. You are authorized to make all inquires you deem necessary to verify the accuracy of the statements made herein, and to determine my/our credit worthiness. You are authorized to answer questions about your credit experience with me/us.

Date Signed  12 - 26 - 05        Signature (Individual) _____

S.S. No _____ Date of Birth _____

Signature (Other Party) _____

S.S. No _____ Date of Birth _____

06/16/2006  16:01  18474136032                OFFICEMAX                                PAGE  09

S.P Singh
Supplement to Personal Financial Statement
30-Sep-05

| ASSETS | | LIABILITIES | |
|---|---|---|---|
| **Automobiles** | | **Automobiles (Secured Notes)** | |
| Range Rover 2005 | $80,000 | Range Rover 2005 | $66,000 |
| Mercedes 3500 2003 | $42,000 | BMW X5 | $30,000 |
| Mitsubishi SUV 2005 | $35,000 | Mitsubishi SUV 2005 | $33,000 |
| | $157,000 | | $129,000 |
| | | | |
| **Other Assets** | | **Credit Card Payables** | |
| Furniture and Household Effects | $600,000 | Chase | $11,000 |
| Jewelry | $180,000 | Citibank | $1,100 |
| | $780,000 | MBNA | $15,000 |
| | | MBNA | $7,500 |
| | | Chase | $7,000 |
| | | | $41,600 |
| **Retirement Accounts** | | | |
| 401 (K) Allianz Life Insurance | $40,000 | **Charge Account** | |
| 401 (K) Allianz Life Insurance | $40,000 | | |
| | $0 | Marshall Fields | $114,000 |
| | $80,000 | | |
| | | | |
| **Stock Ownership** | | | |
| 50% Owner | $3,500,000 | | |
| ABBE Management Group LLC | | | |
| ( FMV of Credit Card Processing Business) | | | |
| 50% Shareholders in | $1,500,000 | | |
| Sapphire Supply LLC | | | |
| (Gasoline Distribution Company | | | |

# PERSONAL FINANCIAL STATEMENT

IMPORTANT : Read these directions before completing this Statement

☐ If you are applying for individual credit in your own name and are relying on your own income or assets and not the income or assets of another person as the basis for repayment of the credit requested, complete Section 1 and Section 2 and continue

☒ If you are applying for joint credit with another person, complete all Sections providing information in Section 2 about the joint applicant
We intend to apply for join credit

|  |  |
|---|---|
| **Satanpreet K. Multani** | **Surinder P. Multani** |
| Applicant | Co- Applicant |

☐ If you are applying for individual credit but are relying on income from alimony, child support or separate maintenance or on the income or assets of another person as a basis for repayment of the credit requested complete all Sections, providing information in Section 2 about the person whose alimony, child support, or maintenance payments or income or assets you are relying

| SECTION 1 - INDIVIDUAL INFORMATION | | SECTION 2 - OTHER PARTY INFORMATION | |
|---|---|---|---|
| Name : Satanpreet Kaur Multani | | Name : Mr. Surinder Multani | |
| Residence Address:24 Bright Ridge Drive | | Residence Address:24 Bright Ridge Drive | |
| City, State & Zip: Schaumburg, IL - 60194 | | City, State & Zip: Schaumburg, IL - 60194 | |
| Position or Occupation: Partner | | Position or Occupation: | |
| Business Name: | | Business Name: | |
| Business Address: | | Business Address: | |
| City, State & Zip: | | City, State & Zip: | |
| Res Phone: | Bus Phone : | Res Phone : | |
| Drivers Licence No: | | Drivers Licence No: | Bus Phone : |
| | State:IL | | State: IL |
| Date Issued : 7/12/2004 | | Date Issued : 09/03/04 | |
| Expiration Date : 01/30/09 | | Expiration Date : 09/07/06 | |

| SECTION 3 - STATEMENT OF FINANCIAL CONDITION AS OF | | 20 | | |
|---|---|---|---|---|
| **ASSETS** | **In Dollars (Omit Cents)** | **LIABILITIES** | | **In Dollars (Omit Cents)** |
| Cash on hands and in banks | $ 275,800 | Notes Payable to Banks - Secured | | |
| U.S. Govt & Marketable Securities | | Notes Payable to Banks- Unsecured | | |
| Non Marketable Securities | | Due to Brokers | | |
| Securities held by Broker | | Amounts Payable to others - Secured | $ | 87,000 |
| Restricted or Control accounts | | Amounts Payable to others - Unsecured | $ | 84,000 |
| Partial Interest in Real Estate Equities | | Accounts and bills due | | |
| Real Estate Owned | $ 2,200,000 | Unpaid Income Tax | | |
| Loans Receivable | $ 235,000 | Other Unpaid taxes and interest | | |
| Automobiles and Personal Property | $ 104,000 | Real Estate mortgage payable | | |
| Cash Value - Life Insurance | $ 12,000 | Other Debts | $ | 1,203,000 |
| Other Assets | | | | |
| Retirement Accounts | $ 60,000 | Charge Accounts | $ | 95,000 |
| Furniture and Jewellery | $ 760,000 | | | |
| Interest in Corporations | $ 5,000,000 | Total Liabilities | $ | 1,469,000 |
| Total Assets | | Net Worth | $ | 7,197,300 |
| | $ 8,666,300 | Total Liabilities and Net Worth | $ | 8,666,300 |

**SOURCES OF INCOME FOR YEAR END 2006**

| | | |
|---|---|---|
| Salary, bonuses & commisions | | |
| Dividends | $ | 155,400 |
| Real Estate Income | | |
| Other Income | | |
| ( Alimony, Child Support etc.) | | |
| Distribution from companies | $ | 310,311 |
| | | |
| Total | $ | 465,711 |

**PERSONAL INCOME**

Do you have a will? Yes  If so, name of executor

Are you a partner or officer in any other ventures ?

Are you obliged to pay alimony, child support or separate maintenance payments ?
N/A

Are any assets pledged other than as described on Schedules

Income Tax settled through date _____

Are you a defendant in any suits or legal actions
N/A

Personal bank accounts carried at :
American Chartered Bank, CitiBank

Have you ever been declared bankrupt ? If so describe,
N/A

**CONTINGENT LIABILITIES**

Do you have contingent liabilities ? If so Describe

| | |
|---|---|
| As endoser, co-maker or guarantor? | |
| On leases or contracts? | |
| Legal Claims | Auto Lease |

**SCHEDULE A - U.S. GOVERMENTS & MARKETABLE SECURITIES**

| Number of Shares or Face Value ( Bonds ) | Description | In Name of | Are Those Pledged? | Market Value |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

**SCHEDULE B - NON MARKETABLE SECURITIES**

| Number of Shares | Description | In Name of | Are these Pledged? | Source of Value? | Value |
|---|---|---|---|---|---|
| N/A | Promissory Note - Excellent Petroleum | | N/A | | |
| N/A | Promissory Note - Sidra Inc | | N/A | | $ 165,000 |
| N/A | Promissory Note - Himanshu Retale | | N/A | | $ 70,000 |

**SCHEDULE C - PARTIAL INTEREST IN REAL ESTATE EQUITIES**

| Address& Type of Property | Title- Owner | % of Ownership | Date Acquired | Cost | Market Value | Mortgage Maturity | Mortgage Amount |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

**SCHEDULE D - REAL ESTATE OWNED**

| Address&Type of Property | Title- Owner | Date Acquired | Cost Acquired | Market Value | Mortgage Maturity | Mortgage Amount |
|---|---|---|---|---|---|---|
| 24 Bright Ridge Drive Schamburg, IL - 60194 | S.P. Singh and Safanpreet Kaur | 1/4 | $ 1,870,000 | $ 2,200,000 | LOC LOC | $ 1,200,000 $ 93,000 |

**SCHEDULE E - LIFE INSURANCE CARRIED, INCLUDING N.S.L.I. AND GROUP INSURANCE**

| Name of Insurance Comp | Owner of Policy | Beneficiary | Face Amount | Policy Loans | Cash Surrender Value |
|---|---|---|---|---|---|
| New York Life | S.P. Singh - Whole | Safanpreet Keur | $ 100,000 | | $12,000 |
| New York Life | S.P. Singh - Term | Safanpreet Keur | $ 1,000,000 | | N/A |
| Jackson National Life | S.P. Singh - Term | Safanpreet Keur | $ 1,000,000 | | N/A |

| Jackson National Life | S.P. Singh - Term | S.P. Singh | $ 1,000,000 | | | N/A |
|---|---|---|---|---|---|---|

### SCHEDULE F - BANKS OR FINANCE COMPANIES WHERE CREDIT HAS BEEN OBTAINED

| Name and Address of Lender | Credit in the name of | Secured or Unsecured | Original Date | High Credit | Current Balances |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

The information contained in this statement is provided for the purposes of obtaining or maintaining credit with you on behalf of the undersigned , or persons, firms or corporations in whose behalf the undersigned may either severally or jointly with others , execute a gauranty in favor . Each undersigned understands that you are relying on the information provided herein in deciding to grant or continue credit. Each undersigned represents and warrants that the information provided is true and complete and that you may consider this statement as continuing to be true and correct until a written notice of a change is given to you by the undersigned. You are authorized to make all inquires you deem necessary to verify the accuracy of the statements made herein, and to determine my/our credit worthiness. You are authorized to answer questions about your credit experience with me/us.

Date Signed __01 - 01 - 07__

Signature _____
(Individual)

S.S. No _____ Date of Birth _____

Signature _____
(Other Party)

S.S. No _____ Date of Birth _____

Supplement to Personal Financial Statement

| ASSETS | Amount | | LIABILITIES | Amount | |
|---|---|---|---|---|---|
| Automobiles | | | Automobiles (Secured Notes) | | |
| Range Rover 2005 | $ | 68,000 | Range Rover 2005 | $ | 43,000 |
| Mercedes S500 2003 | $ | 36,000 | BMW 325IX | $ | 24,000 |
| Total | $ | 104,000 | Total | $ | 67,000 |
| Other Assets | | | Credit Card Payables | | |
| Furniture and Household Effects | $ | 600,000 | Chase | $ | 11,000 |
| Jewelry | $ | 180,000 | Citibank | $ | 1,100 |
| | | | MBNA | $ | 7,400 |
| Total | $ | 780,000 | MBNA | $ | 7,500 |
| | | | Discover | | |
| | | | Chase | $ | 7,000 |
| | | | Total | $ | 34,000 |
| Retirement Accounts | | | | | |
| 401 K Allianz Life Insurance | $ | 40,000 | Charge Account | | |
| 401 K Allianz Life Insurance | $ | 40,000 | Marshall Field | $ | 95,000 |
| Total | $ | 80,000 | | | |

Stock Ownership

50 % Owner                                   $ 3,500,000
abc Corp
( FMV of Credit Card Processing Business )

50% Shareholders in                          $ 1,500,000
Sapphire Supply LLC
(Gasoline Distribution Company)

Nov 24 06 04:42p

000000000000000    p.5

U.S. Service Center   014
PO Box 769013
San Antonio, TX 78245-9013

SURINDER P MRZIANI
SURINDER P MRZIANI
24 BRIDGEWATER DR
SCHAUMBURG IL

60194-3696

000    CITIBANK, F.S.B.
000000109040914
A-number

Statement Period
Oct. 4 – Nov. 2, 2006

Page 1 of 2

**CITIBANK ACCOUNT SUMMARY:**

| | | |
|---|---|---|
| Checking | $213,610.51 | |
| Savings | | |
| Investments | | |
| (not FDIC Insured) | | |
| Loans | $0.00 | |
| Credit Cards | — | |

Earn cash back with the Citi® Dividend Platinum
Select® Card! Get 0% APR on balance transfers
until 12/4/07. A low 13.24% APR thereafter. For
more information, see enclosed insert. To apply, call
1-800-613-9947 and start saving. (please apply by
7/14/07) Citi® Dividend Platinum Select® Card is issued by
Citibank (South Dakota), N.A.

| | Credit Line | Amount Available |
|---|---|---|
| **Checking** | | |
| Regular Checking | | |
| **Loans** | | |
| Checking Plus (as of 11/02/05) | $1,500.00 | $1,500.00 |

| | Balance | Amount You Owe |
|---|---|---|
| | $213,610.51 | $0.00 |

On October 1, 2006, Citibank, FSB, Citibank Texas, N.A., and Citibank (West), FSB,
will merge with and into Citibank, N.A. With this merger, your accounts will be with
Citibank, N.A.

As of November 30, 2006, Citibank, N.A. will no longer offer WorldWallet® Drafts for purchase. For more information,
please use the contact information listed on this statement.

Domestic Citibank® Global Transfers are now FREE! Transfer at selected ATMs or Citibank Online to another Citibank
account you have or to someone else's Citibank account anywhere in the U.S.

Nov 24 06 04:41p

p.3

U.S. Service Center    011
PO Box 769013
San Antonio, TX 78245-9013

SHERIDER P BRYANT
DEPARTMENT X BROKER
24 BROOKRIDGE DR
SCHAUMBURG IL    60194-3696

000
CITIBANK, F.S.A.
Account

Statement Period
Sept 6 - Oct 3, 2006

Page 1 of 2

## CITIBANK ACCOUNT SUMMARY:

| CITIBANK ACCOUNT SUMMARY: | |
|---|---|
| Checking | $213,706.60 |
| Savings | |
| Investments (not FDIC Insured) | |
| Loans | |
| Credit Cards | $0.00 |

| Checking Plus (as of 10/03/06) | Credit Line | Amount Available |
|---|---|---|
| | $1,500.00 | $1,500.00 |

| Checking | | Balance |
|---|---|---|
| Regular Checking | | $213,706.60 |
| Loans | | Amount You Owe |
| | | $0.00 |

As a valued Citibank customer, get a great rate and the rewards you want with the Citi PremierPass® Card! To apply for this Citi Card product call 877-265-5316 & start earning rewards right away.
(please reply by 11/15/06)
Citi PremierPass® cards are issued by Citibank(South Dakota), N.A.

On October 1, 2006, Citibank, FSB; Citibank(Texas), N.A.; and the Citibank (West), FSB, will merge with and into Citibank, N.A. With this merger, your accounts will be with Citibank, N.A.

**SUGGESTION:**

*Low mortgage rates make big dreams possible.* If you are looking to buy a new home, refinance, or get cash back, there's no better time. To find the mortgage that's right for you, call 1-888-248-4694.

*First Mortgage products are made available through CitiMortgage, Inc., an equal housing lender.*

Print

Page 1

NOW ACCOUNT                          AMERICAN CHARTERED BANK                    6/26/2006 11:40:28 AM
Printed by: MELISSA SCHMULDT                                                    Reporting Institution: 20

**Demand Deposit :**        **- SAFANPREET KAUR MULTANI**

|  | Rel | Birthdate | Phone | Tax Identification |
|---|---|---|---|---|
| [01] SAFANPREET KAUR MULTANI | P |  | [H] (847) 490-0449 | SSI |
|  |  |  | [B] (847) 593-8333 |  |
| [02] SURINDER P MULTANI |  |  | [H] (847) 437-2191 | SSN |
|  |  |  | [B] (847) 593-8333 |  |
| 24 BRIGHT RIDGE DR |  |  |  |  |
| SCHAUMBURG IL 60194-3696 |  |  |  |  |

Tax Name: [1] SAFANPREET KAUR
MULTANI

**Account Classification**

Portfolio:                                    Responsibility Code:

Product:                          NOW ACCOUNT    Account Type Code:      SCHMULDT/AMBROSON/OLSON
                                                                        [100] INDIVIDUALS
Accounting Branch:

**Memo Balances**

| | | | |
|---|---|---|---|
| Current Ledger Balance: | $98,723.00 | Current Reg CC Cash Available: | $98,723.00 |
| Plus Presentments: | $2,438.03 | Memo Available Balance: | $98,723.00 |
| Memo Ledger Balance: | $101,161.03 | | |