## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
CASE NUMBER 08-CV-1722

GD DEAL HOLDINGS, LLC                                                    PLAINTIFF

v.                                    **MOTION FOR ORDER OF SALE**

SURINDER MULTANI, et al.                                              DEFENDANTS

** ** **

Comes now the Plaintiff, GD Deal Holdings, LLC, and requests the Court to enter an Order of Sale as against Defendant Surinder Multani pursuant to: 28 U.S.C. §§ 2001, 2002, and 2004; 28 U.S.C. § 1962; FED. R. CIV. P. 69; and 735 ILL. COMP. STAT. 5/12-152. As grounds for this request, Plaintiff states that the Surinder Multani was served with process on April 11, 2008, and has failed to file responsive pleadings. Plaintiff further submits a supporting Memorandum simultaneously herewith.

WHEREFORE, Plaintiff prays that this Court enter the Order of Sale tendered simultaneously herewith and for any and all other appropriate relief.

This day, June 10, 2008.

THOMAS M. FALKENBERG
WILLIAMS MONTGOMERY & JOHN LTD.
20 North Wacker Drive, Suite 2100
Chicago, Illinois 60606-3094
Telephone: (312) 443-3200

-and-

HARNED, BACHERT & DENTON, LLP
324 East Tenth Avenue
Post Office Box 1270
Bowling Green, Kentucky 42102-1270
Telephone: (270) 782-3938

/s/ Scott A. Bachert
SCOTT A. BACHERT

CERTIFICATION:

      This is to certify that a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court this day, June 10, 2008, by using the CM/ECF system, which will send a notice of electronic filing to the following:

Hon. Lucia Nale
Hon. Diane Renae Sabol
Hon. Nicole J. Highland
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 630606-4637

      This is to certify that a true and correct copy of the foregoing document was this day, June 10, 2008, placed in the US Mail, postage prepaid, addressed to the following:

Hon. Leroy Simms
6061 Savoy Drive
Houston, Texas 77036

Surinder Multani
302 Midwest Club
Oak Brook, Illinois 60523

Surinder Multani
24 Bright Ridge Drive
Schaumburg, Illinois 60194

Safanpreet Multani
302 Midwest Club
Oak Brook, Illinois 60523

Safanpreet Multani
24 Bright Ridge Drive
Schaumburg, Illinois 60194

ABBE Properties, LLC
c/o: Surinder Multani, Registered Agent
2015 S. Arlington Hts. Rd. #120
Arlington Heights, Illinois 60005

Sapphire Supply, LLC
c/o: Surinder Multani, Registered Agent
2015 S. Arlington Hts. Rd. #120
Arlington Heights, Illinois 60005

JGG Investments, LLC
c/o: Kishor Shah, Registered Agent
5 Whippoorwill Court
Roselle, Illinois 60172

ABBE Capital and Leasing, LLC
c/o: Surinder Multani, Registered Agent
2015 S. Arlington Hts. Rd. #120
Arlington Heights, Illinois 60005

ABBE Management Group, LLC
c/o: Robert S. Luce, Registered Agent
399 Quentin Rd. Ste. A
Palatine, Illinois 60067

Fifth Third Bank
1801 Algonguin Road
Rolling Meadows, Illinois 60008

Fifth Third Bank
One Vandenberg Center
Grand Rapids, Michigan 49503

Fifth Third Bank
c/o: Paul L. Reynolds
38 Fountain Square Plaza
Cincinnati, Ohio 45263

Babaji PS, LLC
c/o: Narendra Bhalla, Registered Agent
1718 Fry Road, Suite 415
Houston, Texas 77084

Capital Access & Investments, LLC
c/o: Narendra Bhalla, Registered Agent
1718 Fry Road, Suite 415
Houston, Texas 77084

G & S Portage, Inc.
c/o: Ajai Agnihotri, Registered Agent
1856 Samuelson Road
Portage, Indiana 46368

/s/ Scott A. Bachert
SCOTT A. BACHERT

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
CASE NUMBER 08-CV-1722

GD DEAL HOLDINGS, LLC                                                    PLAINTIFF

V.

SURINDER MULTANI, et al.                                              DEFENDANTS

**MEMORANDUM IN SUPPORT OF**
**MOTION FOR ORDER OF SALE**

Comes now the Plaintiff, GD Deal Holdings, LLC, by and through counsel, and for its

Memorandum in Support of Motion for Order of Sale, states as follows:

FACTUAL BACKGROUND

1.      On May 11, 2007, the United States District Court for the Western District of

Kentucky granted a judgment to GD Deal Holdings, LLC against Surinder Multani for the recovery

of $10,048,295.12 with interest thereon at the judgment rate of 4.9% per annum from the date of

judgment until paid.  The judgment was entered in the case *GD Deal Holdings, LLC, et al. v. Baker*

*Energy, Inc., et al.*, Case Number 1:05-cv-00003-R.  A copy of the Memorandum - Opinion whereby

the judgment was entered is attached hereto as "Exhibit A" for the Court's consideration.

2.      On September 4, 2007, GD Deal Holdings, LLC registered the judgment in the

United States District Court for the Northern District of Illinois, Case Number 1:07-cv-04965.

3.      On October 9, 2007, GD Deal Holdings, LLC filed a Memorandum of Judgment in

the real property records for the Office of the Cook County, Illinois Recorder of Deeds.  A copy of

the Memorandum of Judgment is attached hereto as "Exhibit B" for the Court's consideration.

4.      The Defendant/Judgment Debtor Surinder Multani holds significant assets located

within the jurisdiction of this Court including: 1) real property located at 24 Bright Ridge Drive,

Schaumburg, Illinois; 2) real property located at 302 Midwest Club, Oak Brook, Illinois; 3) interests in multiple limited liability companies; and 4) substantial personal property assets. Copies of deeds transferring real property assets to Surinder Multani are attached hereto as "Exhibit C" for the Court's consideration. A copy of a financial statement prepared and signed by Surinder Multani demonstrating his personal property assets is attached hereto as "Exhibit D" for the Court's consideration. A copy of a *Declaration* of Surinder Multani previously submitted to the United States Bankruptcy Court for the Northern District of Illinois further demonstrating the assets of Surinder Multani is attached hereto as "Exhibit E" for the Court's consideration.

5.      Surinder Multani has made no arrangements to pay the judgment debt at issue and has made no offer to settle the obligation. The Affidavit of Plaintiff's counsel establishing such fact is attached hereto as "Exhibit F" for the Court's consideration.

6.      As a consequence of the judgment debtor's failure to make an offer to settle the case and/or voluntarily make arrangements for payment, GD Deal Holdings, LLC initiated this case in an effort to collect the debt at issue in requesting certain relief including: 1) foreclosure of the judgment lien on Surinder Multani's real property located at 24 Bright Ridge Drive, Schaumburg, Illinois pursuant to a judicial sale; and 2) liquidation of Surinder Multani's nonexempt personal property through a judicial sale towards satisfaction of the judgment debt.

7.      Surinder Multani and Safanpreet Multani (Surinder Multani's spouse) were served with process in this case on April 11, 2008. Copies of Affidavits demonstrating personal service of process for those Defendants are attached hereto as "Exhibit G" for the Court's consideration.

8.      To date, the Defendants Surinder Multani and Safanpreet Multani have not filed an responsive pleadings in this case. Upon information and belief, such Defendants are not minors, are

under no legal disability, and are not members of the armed services.  See the Affidavit of Counsel for Plaintiff, attached as Exhibit F.

9.    The Defendant Citibank filed an Answer herein on May 16, 2008 (Docket # 29).  Citibank asserts a mortgage interest in Surinder Multani's real property located at 24 Bright Ridge Drive, Schaumburg, Illinois.

DISCUSSION

### I.    The Court may Order a Judicial Sale of Judgment Debtor Surinder Multani's Real and Personal Property.

Plaintiff requests a judicial sale of Surinder Multani's real property assets.  The Court may direct enforcement of money judgments by statutes other than a writ of execution, and judicial sales of real property to enforce judgments are authorized.  *E.g., United States v. Branch Coal Corp.*, 390 F.2d 7 (3rd Cir. 1968).  Judicial sales are governed by federal statutes.  28 U.S.C. §§ 2001, 2002, 2004.

Likewise, judicial sales of personal property are conducted in accordance with the statutory provisions for judicial sales of realty, unless the Court directs otherwise.  28 U.S.C. §§ 2001, 2004.  The Court has discretion to determine the terms and method of conducting the sale.  *Revere Copper & Bass v. Adriance Machine Works, Inc.*, 68 F.2d 708 (2nd Cir. 1934).  A judicial sale of personal property which departs from the statutory procedure will be set aside only if there has been an abuse of discretion under the circumstances.  *Tanzer v. Huffines*, 412 F.2d 221 (3rd Cir. 1969).

The circumstances of this case demonstrate that the Judgment Debtor/Defendant Surinder Multani has significant assets within the jurisdiction of this Court.  However, Surinder Multani has failed and refused to make arrangements for payment of the debt or to file an Answer in this case.

The only party with a potential interest in the real property that has filed an Answer in this case is Citibank.  The Defendant Citibank asserts a mortgage interest in the real property located at

24 Bright Ridge Drive, Schaumburg, Illinois. As such, the property may be sold at this juncture of

the case with applicable liens attaching to the proceeds. Priority to those proceeds (after deduction

of the United States Marshall's costs of sale and commission) may be determined subsequent to sale.

Therefore, the Plaintiff requests a judicial sale of the judgment debtor's nonexempt assets.

WHEREFORE, Plaintiff GD Deal Holdings, LLC respectfully requests as follows:

1.      An Order directing the United States Marshall to sell the judgment debtor Surinder

Multani's real property located at 24 Bright Ridge Drive, Schaumburg, Illinois towards satisfaction

of the Plaintiff's judgment;

2.      An Order directing the United States Marshall to sell the judgment debtor Surinder

Multani's nonexempt personal property towards satisfaction of the Plaintiff's judgment; and

3.      Such other and further relief as may be just and proper.

This day, May 13, 2008.

THOMAS M. FALKENBERG
WILLIAMS MONTGOMERY & JOHN LTD.
20 North Wacker Drive, Suite 2100
Chicago, Illinois 60606-3094
Telephone: (312) 443-3200

-and-

HARNED, BACHERT & DENTON, LLP
324 East Tenth Avenue
Post Office Box 1270
Bowling Green, Kentucky  42102-1270
Telephone:  (270) 782-3938

/s/ Scott A. Bachert
SCOTT A. BACHERT

<u>CERTIFICATION</u>:

This is to certify that a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court this day, June 10, 2008, by using the CM/ECF system, which will send a notice of electronic filing to the following:

Hon. Lucia Nale
Hon. Diane Renae Sabol
Hon. Nicole J. Highland
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 630606-4637

This is to certify that a true and correct copy of the foregoing document was this day, June 10, 2008, placed in the US Mail, postage prepaid, addressed to the following:

Hon. Leroy Simms
6061 Savoy Drive
Houston, Texas 77036

Surinder Multani
302 Midwest Club
Oak Brook, Illinois 60523

Surinder Multani
24 Bright Ridge Drive
Schaumburg, Illinois 60194

Safanpreet Multani
302 Midwest Club
Oak Brook, Illinois 60523

Safanpreet Multani
24 Bright Ridge Drive
Schaumburg, Illinois 60194

ABBE Properties, LLC
c/o: Surinder Multani, Registered Agent
2015 S. Arlington Hts. Rd. #120
Arlington Heights, Illinois 60005

Sapphire Supply, LLC
c/o: Surinder Multani, Registered Agent
2015 S. Arlington Hts. Rd. #120
Arlington Heights, Illinois 60005

JGG Investments, LLC
c/o: Kishor Shah, Registered Agent
5 Whippoorwill Court
Roselle, Illinois 60172

ABBE Capital and Leasing, LLC
c/o: Surinder Multani, Registered Agent
2015 S. Arlington Hts. Rd. #120
Arlington Heights, Illinois 60005

ABBE Management Group, LLC
c/o: Robert S. Luce, Registered Agent
399 Quentin Rd. Ste. A
Palatine, Illinois 60067

Fifth Third Bank
1801 Algonguin Road
Rolling Meadows, Illinois 60008

Fifth Third Bank
One Vandenberg Center
Grand Rapids, Michigan 49503

Fifth Third Bank
c/o: Paul L. Reynolds
38 Fountain Square Plaza
Cincinnati, Ohio 45263

Babaji PS, LLC
c/o: Narendra Bhalla, Registered Agent
1718 Fry Road, Suite 415
Houston, Texas 77084

Capital Access & Investments, LLC
c/o: Narendra Bhalla, Registered Agent
1718 Fry Road, Suite 415
Houston, Texas 77084

G & S Portage, Inc.
c/o: Ajai Agnihotri, Registered Agent
1856 Samuelson Road
Portage, Indiana 46368

/s/ Scott A. Bachert
SCOTT A. BACHERT

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CASE NO.: 1:05-CV-3-R

G.D. DEAL HOLDINGS, INC., et. al.,                                    PLAINTIFFS

v.

BAKER ENERGY, INC, et. al.,                                           DEFENDANTS

### MEMORANDUM OPINION

This matter comes before the Court on the Plaintiff G.D. Deal Holdings, LLC's ("GD

Deal") Motion for Summary Judgment (Docket #77). Defendants Rohit Sharma ("Sharma") and

Surinder Multani ("Multani") have responded (Docket #83)[1], and the Plaintiff has replied to their

response (Docket #85). This matter is now ripe for adjudication. For the following reasons, the

Plaintiff's Motion for Summary Judgment is **GRANTED**.

### PROCEDURAL HISTORY

The Plaintiff initially filed this action against the Defendants in Warren County Circuit

Court. It was removed to this Court on January 10, 2005. On March 11, 2005, the Court ordered

that this matter be stayed through the duration of the bankruptcy concerning the Defendants,

though the Court retained jurisdiction. On March 6, 2006, the bankruptcy petition of Defendant

Baker Energy, Inc. was dismissed. On September 28, 2006, the Court removed the stay and

restored this matter to the active docket. The Plaintiff filed the instant motion in January 2007.

### FACTUAL BACKGROUND

This case arises from a dispute concerning real property and personal property leases

connected to thirty-eight (38) gasoline stations and convenience stores located throughout

---

[1]Defendant Baker Energy, Inc. has not responded to this motion.

Exhibit A

western Kentucky and north-central Tennessee. In April 2001, the Plaintiff leased thirty-eight

(38) gasoline stations and convenience stores ("properties") to Clark Retail Enterprises, Inc.

("CRE"). There were two (2) leases between GD Deal and CRE that dealt with real property,

personal property and equipment at the thirty-eight (38) locations ("real property lease" and

"personal property lease"). GD Deal was the owner of the real property on which the gasoline

stations and convenience stores were located. GE Capital Franchise Finance Corporation ("GE

Capital") was the mortgage lender of the properties. FFCA Acquisition Corporation ("FFCA")

had a security interest on all of the equipment located at the properties. However, following a

merger between GE Capital and FFCA, GE Capital held both the mortgage and security

interests.

On October 15, 2002, CRE filed a voluntary petition in the United States Bankruptcy

Court for the Northern District of Illinois requesting reorganization under Chapter 11. The Court

in that matter granted CRE the authority to assign its leases on the properties to Baker Energy,

Inc. ("Baker"), which was run by Sharma and Multani. Both Sharma, the President and an

equity owner of Baker, and Multani, a director and shareholder of Baker, personally guaranteed

payment of all liabilities under the leases on behalf of Baker to GD Deal. Pursuant to the

Assumption Order and Assumption Agreement by the Bankruptcy Court on August 26, 2003,

Baker became the holder of CRE's leasehold interests in the properties. This included the

payment of rent to GD Deal under the terms of the leases.

After assuming the liabilities under the leases, the Plaintiff contends that Baker defaulted

on several of its obligations. On January 5, 2005, GD Deal sent Baker a "notice of default and

notice of termination upon failure to cure default" letter. On January 20, 2005, GD Deal sent

2

Baker another letter, this time informing Baker that it was terminating its lease with Baker

regarding the properties. Four (4) days later on January 24, 2005, this Court issued an agreed

preliminary injunction so that Crown Oil and Petroleum Supplies, Inc. ("Crown Oil"), who had

been assigned some of Baker's interests as a tenant under the leases, could collect rent from the

subtenants of the properties. However, on February 4, 2005, Crown Oil filed a voluntary

petition of bankruptcy with the United States Bankruptcy Court for the Eastern District of

Wisconsin seeking relief under Chapter 11. Eleven (11) days later, on February 15, 2005, Baker

followed suit, filing a voluntary petition of bankruptcy with the United States Bankruptcy Court

for the Western District of Tennessee seeking relief under Chapter 11. Both petitions were

eventually dismissed. From February 2005 through August 2005, GD Deal was not able to act

on and/or collect rent from the properties due to the bankruptcy proceedings.

In April 2005, GE Capital, as the holder of the mortgage and security interests, accelerated

the amount of debt due and began the process of foreclosure of the properties. In August 2005,

the Bankruptcy Court for the Western District of Tennessee held that Baker had rejected the

leases between it and GD Deal. At that point, the Plaintiff attempted to collect rent from the

subtenants of Baker who were operating the properties. However, in September 2005, GE

Capital sent a stay collection letter to GD Deal, demanding that GD Deal cease its collection

efforts from the properties. GE Capital then filed a claim in this Court, requesting foreclosure on

the Kentucky properties. The Court held that the foreclosure actions asserted by GE Capital

were not related to Baker's bankruptcy case to confer jurisdiction, and therefore, dismissed GE

Capital's claim.

As a result, GE Capital pursued its foreclosure claims by filing actions in more than

twenty (20) separate circuit courts throughout the Commonwealth.  The Kentucky courts

appointed NRC Realty Advisors, LLC ("NRC Realty") to possess the property pending sale and

act as the receiver over the properties.  This precluded GD Deal from exercising any ownership

over the properties.  The majority of the properties have been foreclosed upon and sold.  In this

case, GD Deal seeks to recover all available remedies against Baker, Sharma and Multani,

arguing that the Defendants breached the terms of the leases that covered the properties.

## STANDARD

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can

establish that the "pleadings, depositions, answer to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue of material fact and that

the moving party is entitled to judgment as a matter of law."  In determining whether summary

judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences

against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material

fact."  *Street v. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989).  The test is "whether the

party bearing the burden of proof has presented a jury question as to each element in the case."

*Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996).  The plaintiff must present more than a mere

scintilla of evidence.  To support this position, he must present evidence on which the trier of

fact could find for the plaintiff.  *See id.* (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52

(1986)).  Mere speculation will not suffice to defeat a motion for summary judgment: "[t]he mere

existence of a colorable factual dispute will not defeat a properly supported motion for summary

4

judgment.  A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Electronic Data Systems Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

Finally, while Kentucky state law is applicable to this case pursuant to *Erie Railroad v. Tomkins*, 304 U.S. 64 (1938), a federal court in a diversity action applies the standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476 (1991)." *Gafford v. General Electric Co.*, 997 F.2d 150, 165 (6th Cir. 1993).

## DISCUSSION

GD Deal claims damages against the Defendants for breaching both leases.  Under the real property lease, GD Deal claims that it is owed damages for the Defendants' failure to pay rent for the time period prior to the date Baker rejected the lease and that GD Deal is owed damages connected to the sums that were to become due after Baker rejected the lease agreement, as stipulated by the lease.

Under the personal property lease, GD Deal claims that it is owed damages for the Defendants' failure to pay rent for the time period prior to the date Baker rejected the lease and that GD Deal is owed damages connected to the sums that were to become due after Baker rejected the lease agreement, as stipulated by the lease.

In addition, GD Deal contends that under the terms of the leases it is entitled to recover all court costs, attorney fees, associated legal expenses and miscellaneous costs under the terms of the real property lease.  In total, GD Deal claims $10,048,295.12 in damages for Baker's alleged breach of the leases.

In their response, the Defendants argue GD Deal overcharged Baker in excess of $752,253.82. In addition, the Defendants assert that the January 24, 2005 agreed preliminary injunction is a novation, which discharges any obligations the Defendants may have had to the Plaintiff in relation to the leases. In its reply, the Plaintiff contends that Baker did not overpay its rent and that the agreed preliminary injunction did not constitute a novation.

The Court shall first address the defense raised by the Defendants in their response in determining whether the agreed preliminary injunction was a novation that discharged the Defendants from any liability to the Plaintiff. The Court shall then examine the arguments asserted by the Plaintiff in its motion to determine if GD Deal is entitled to damages due to the Defendants' alleged breach of the real property and personal property leases. In addition, the Court shall also address the claims by the Plaintiff for court costs, attorney fees and associated legal expenses incurred by GD Deal in connection with the alleged breach by Baker. Lastly, the Court shall address the cross claim filed against GD Deal by Baker contending that GD Deal overcharged the Defendants $752,253.82 in rent.

### 1. Agreed Preliminary Injunction as a Novation

In their response to the Plaintiff's motion for summary judgment, the Defendants contend that the January 24, 2005 agreed preliminary injunction ("injunction") between the parties and Crown Oil constituted a novation that discharged the Defendants from any debt owed to the Plaintiff. As noted *supra*, when the Bankruptcy Court permitted CRE to assign its interest and liabilities in the properties to Baker, Sharma and Multani personally guaranteed Baker's debt. However, the Defendants argue that because the injunction is a novation it supercedes any previous agreements reached by the parties concerning debt under the leases. In addition,

Defendants Sharma and Multani contend that because they did not sign the January 24, 2005 injunction they have no continuing obligation under the leases. In its reply, the Plaintiff contends that: 1) the agreed preliminary injunction entered by the Court was not a novation; 2) the Defendants are judicially estopped from claiming the lease agreements were extinguished by an alleged novation; and 3) the Defendants waived the defense of discharge by novation in the personal guaranty agreement.

Kentucky courts define a novation as "the substitution of a new obligation for an old one, with intent to extinguish the old one, or the substitution of a new debtor for an old one, with the intent to release the latter, or the substitution of a new creditor, with the intent to transfer the rights of the old one to him." *Truscon Steel Co. v. Thirlwell Elec. Co.*, 265 Ky. 414, 416-17 (1936); *see also In re Cantrill Const. Co.*, 418 F.2d 705, 707 (6th Cir. 1989); *M.A. Walker Co., Inc. v. PBK Bank, Inc.*, 95 S.W.3d 70, 75 (Ky. Ct. App. 2002). "Intent is the essential element" in proving the existence of a novation, and "[t]he burden of proving a novation [is] on the [party seeking to enforce it]." *In re Cantrill Const. Co.* at 707; *see also Clark v. Thompson*, 219 S.W.2d 22, 29 (Ky. 1949)(quoting *North Western Mut. Life Ins. Co. v. Eddleman*, 247 Ky. 116, 56 S.W.2d 561 (Ky. Ct. App. 1932)("'[w]hether a novation has been accomplished or not depends upon the intention of the parties. This intent is the controlling element in determining the question, and unless the transaction was intended to extinguish the old obligation by substituting the new one therefor, a novation is not effected.'").

In the instant matter, there was no intent by the Plaintiff in the injunction to extinguish the obligations of the Defendants under the leases. The Defendants have not pointed to any specific language from the injunction that demonstrates that GD Deal sought to release the

7

Defendants from their obligations.  On the contrary, the injunction states, in pertinent part:

> IT IS FURTHER ORDERED as agreed that nothing herein shall be construed or interpreted as a release of any claims defenses by any party, *or as a release of the obligations of any guarantor*.  Further, nothing herein shall be construed or interpreted as a consent or acceptance by GD Deal or Girkin Development to the assignment by Baker Energy to Crown, or a waiver of any defaults under the lease agreements, or a release of Baker Energy's liability under the lease agreements except for subsequent lease payments, which come due while this Order is in place. (emphasis added).

This section of the injunction leaves no doubt that GD Deal did not intend to release the Defendants from their obligations.  The Defendants have not met their burden in proving that the Plaintiff intended to release them from their obligations.  Accordingly, the January 24, 2005 Agreed Preliminary Injunction did not serve as a novation of the leases, and therefore, the Defendants obligations to the Plaintiff continued after the injunction was issued.

Further, the Court also concurs with the argument asserted by the Plaintiff that the Defendants are judicially estopped from claiming that their obligations under the leases were extinguished by a novation.  The doctrine of judicial estoppel is "'an equitable doctrine invoked by the court at its discretion.' *See New Hampshire v. Maine*, 532 U.S. 742, 750, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001)." *Lewis v. Weyerhaeuser Co.*, 141 Fed. Appx. 420, 423 (6th Cir. 2005).  The doctrine "'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.' *New Hampshire*, 532 U.S. at 749, 121 S.Ct. 1808." *Id.* at 424.  "Judicial estoppel 'preserve[s] the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship.' *Browning v. Levy*, 283 F.3d 761, 776 (6th Cir.2002) (quotation omitted). This court has previously described judicial estoppel as a rule against 'playing fast and loose with the courts,' 'blowing hot and cold as the occasion demands,' or 'hav[ing] [one's] cake and eat[ing] it too.'

8

*Reynolds v. Comm'r*, 861 F.2d 469, 472 (6th Cir.1988) (citations omitted) (alteration in original)." *Id.*

Essentially, judicial estoppel bars a party from "'(1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position either as a preliminary matter or as part of a final disposition.' *Browning*, 283 F.3d at 775 (internal quotation omitted)." *Id.*

During Baker's bankruptcy proceeding, which was after the injunction was signed by the parties, the Defendants acknowledged through their Motion to Extend Time Period to Assume of Reject Unexpired Leases of Non-Residential Real Property that the leases were not extinguished. In that motion, which was filed after January 24, 2005, Baker stated that it is "the lessee under certain leases of non-residential real which consist primarily of service stations/convenience stores located in Kentucky." To now argue that the injunction served as a novation after acknowledging that it was a lessee under the agreement is an example of what the doctrine of judicial estoppel seeks to preclude; "preventing a party from abusing the judicial process through cynical gamesmanship." *Browning* at 776. Accordingly, the Defendants are judicially estopped from arguing that the January 24, 2005 injunction was a novation.[2]

## 2. Damages under the Real Property Lease

The Plaintiff claims two (2) sets of damages against the Defendants under the real property lease: 1) failure to pay rent for the time period prior to the date Baker rejected the lease

---

[2]The Plaintiff also asserts that the Defendants waived the defense of discharge by novation because they signed personal guarantee statements. The Plaintiff acknowledges that Kentucky has not addressed this specific issue, and has instead cited cases from Georgia and Pennsylvania. This Court has not found any Kentucky or Sixth Circuit case law on point. Nonetheless, as the Court has determined that the January 24, 2005 Agreed Preliminary Injunction was not a novation and that the Defendants are judicially estopped from arguing that the injunction was a novation, the Court does not need to address this argument of first impression at this juncture.

9

agreement and 2) sums that would become due after Baker rejected the lease agreement. In their response, the Defendants did not address these arguments nor the figures submitted by the Plaintiff. The Court shall address each claim under the real property lease separately.

### i) Failure to Pay Rent

The Plaintiff contends that from February 2005 through August 2005, the Defendants owe the Plaintiff rent on the real property. While the Plaintiff does acknowledge that it did receive some rent during that time ($521,929.56) from Crown Oil on behalf of the Defendants, it claims that the Defendants fell short by a total of $660,433.96.

The rent per month for the real property was $153,887.00. There was a seven (7) month period where the Plaintiff claims it was not paid, for a total of $1,077,209.00 ($153,887.00 x 7). Subtracting the amount paid by the Defendants from the seven (7) month figure and the remaining amount becomes $555,279.44. The Plaintiff reaches the figure of $660,433.96 by contending that the Defendants owed interest on the rent for late payment, as stated in Section 6.5 of the lease. The lease states that "[a]ny delinquent payment by Tenant (that is, any payment not made by the date when and after all applicable notice and cure periods provided in this Lease) shall, in addition to any other remedy of Landlord, bear interest at the Default Rate, such interest to be computed commencing on the date such payment was due through and including the date of the payment." The Plaintiff submits that the default interest rate was 12% per annum, and that through January 18, 2007, the total amount due comes to $660,433.96.

As noted *supra*, the Defendants have not challenged the figure reached by the Plaintiff nor have they addressed this argument. Accordingly, the Court finds that the Defendants owe the Plaintiff $660,433.96 for failure to pay the Plaintiff rent on the real property from February

2005 through August 2005.

### ii) Sums Due After Baker's Rejection of the Real Property Lease Agreement

GD Deal also contends that it has the right to accelerate the payment of rent on the lease and recover from the Defendants all monies that were to become due after Baker rejected the lease agreement. The Plaintiff argues that under Section 28.2.5 of the lease, damages for this amount are calculated by adding up the total accelerated amount of rent payments with a discount factor of 12%, and then subtracting that amount from the present value of the fair market rental values of the real estate at issue. The Plaintiff notes that the present value of the fair market rental values for real estate is also discounted at 12%. As noted *supra*, the Defendants have not challenged this argument in their response.

The Plaintiff asserts that because the original term of the lease was twenty (20) years and three (3) months and that the lease was rejected in August 2005, there are 191 months of rent payments that remain unpaid. Discounting the total amount of rent by the discount factor of 12% over 191 months, the Plaintiff submitted a total discounted accelerated amount of $7,766,428.97.

However, the Plaintiff contends that under the next step of calculating the damages under Section 28.2.5, subtracting the present value of the fair market rental values for real estate for the future duration of the lease, cannot take place because the Plaintiff cannot properly subtract the fair market rental value since GD Deal has lost its interest in the properties after the foreclosures, and therefore, to the Plaintiff the properties cannot have any future fair market rental value.

The Plaintiff also argues that Section 28.2.5 essentially requires the Plaintiff to mitigate damages under the assumption that under a new lease the landlord would apply any new rent received to the satisfaction of the prior liability of the tenant, in this case Baker. However, the

11

Plaintiff notes that it could not mitigate damages in this situation because GE Capital would not permit GD Deal to act upon the property during the bankruptcy and foreclosure actions.

Lastly, the Plaintiff contends that language Section 28.2.5 that requires subtraction from total damages is a liquidated damages provision, and that the Court should not apply that provision in this matter because the provision was designed to mirror a general landlord mitigation clause, which was not feasible for the Plaintiff under the circumstances. As such, the Plaintiff requests to recover the sum of $7,766,428.97, which represents damages for the accelerated amount of rent due at the time of the rejection, discounted at 12% over the applicable time frame, less the subtraction of any future fair market rental value.

In determining the amount of damages the Plaintiff may recover for the default on the lease agreement by the Defendants, the Court must determine whether the Plaintiff has a right to receive accelerated damages under the lease agreement. If it has that right, the Court must then determine whether the provision that requires the Plaintiff to subtract any future fair market rental value is a liquidated damages provision that should not be enforced by the Court, and/or if an alternative measure of damages is more appropriate under the circumstances.

Section 28.2.5 of the lease agreement allows for the Plaintiff to accelerate and recover from the Defendant, stating in pertinent part that "all Rent and other monetary sums due and owing and scheduled to become and owing under this Lease both before *and after* the date of such breach *for the entire* original scheduled Term." (emphasis added). As such, the lease does permit the Plaintiff recover accelerated damages under the lease agreement due to the default by the Defendants.

Determining whether a clause is a liquidated damages provision is matter of law. *Fidelity*

12

*& Deposit Co. of Maryland v. Jones*, 75 S.W.2d 1057, 1060 (Ky. Ct. App. 1934). The Sixth

Circuit Court of Appeals defines "liquidated damages" as "a definite sum or amount, which has

been determined by agreement of the parties or by litigation." *Jewett, Bigelow & Brooks v.

Detroit Edison Co.*, 274 F. 30, 32 (6th Cir. 1921). In addition, Courts have held that a liquidated

damages provision must not be greatly disproportionate to the injury suffered, in that the amount

stated must bear some relation to the actual injury rather than serving as a penalty. *Smith v.

Ward*, 256 S.W.2d 385, 387 (Ky. 1953); *Robert F. Simmons and Associates v. Urban Renewal

and Community Development Agency of Louisville*, 497 S.W.2d 705, 706 (Ky. 1973); *Mattingly

Bridge Co. v. Holloway & Son Construction Co.*, 694 S.W.2d 702, 706 (Ky.1985); *Man O War

Restaurants, Inc. v. Martin,* 932 S.W.2d 366, 369 (Ky. 1996). Further, the actual damages must

be difficult to ascertain. *Id.* If the stated amount is substantially higher than the actual injury

suffered, the provision will be declared a penalty and not enforceable. *Coca-Cola Bottling Works

(Thomas) Inc. v. Hazard Coca-Cola Bottling Works, Inc.*, 450 S.W.2d 515, 518 (Ky. 1970);

*Martin*, 932 S.W.2d at 368. Lastly, a party should not recover damages in excess of those set out

in a valid liquidated damages provision. *Coca-Cola*, 450 S.W.2d at 519; *see also Island Creek

Corp. v. Anker Energy Corp.*, 968 F.2d 1215 (6th Cir. 1992).

In the instant matter, while Section 28.2.5 does entitle the Plaintiff to recover accelerated

damages, the section does not contain and/or constitute a liquidated damages provision. First,

the section does not specify a set amount of damages that was determined by the parties.

Second, assuming that the Plaintiff still retained possession of the properties in question, the

actual damages would not be difficult to ascertain, indicating that the parties did not intend the

section to qualify as a liquidated damages provision. Here, the reason why the actual damages

13

are difficult to configure is not because the actual damages are abstract, but instead it is because the Plaintiff is not in possession of the property, and therefore, it cannot determine the future fair market rental value of the properties. Further, even assuming that the section was a liquidated damages provision, the Plaintiff would not be able to recover the amount requested because GD Deal has not subtracted the future fair market rental value, and therefore, the Plaintiff would recover an excess of damages in contrast to those set out in Section 28.2.5. *See Coca-Cola* at 519.

As mentioned *supra*, the Plaintiff also contends that the provision within Section 28.2.5 that requires the subtraction of the fair market rental value mirrors a general obligation of landlord to mitigate damages upon default by a tenant. The Plaintiff correctly points out that where a tenant abandons lease and the possibility to minimize damages is foreclosed, the landlord is under no obligation to mitigate his/her damages. *Abraham v. Gheens*, 205 Ky. 289, 265 S.W. 778 (Ky. Ct. App. 1924); *Ideal Furniture Co. v. Mazer*, 234 Ky. 665, 28 S.W.2d 974 (Ky. Ct. App. 1930); *Jordon v. Nickell*, 253 S.W.2d 237, 238-39 (Ky. 1952); *Fields v. Mullins*, 320 S.W.2d 133 (Ky. 1959); *Illinois Basin Oil Ass'n v. Lynn*, 425 S.W.2d 555, 560 (Ky. 1968). In *Lynn*, the Kentucky Court of Appeals held that when a lessor was foreclosed from taking any steps to mitigate its damages, the trial court was correct in rejecting the mitigation instruction and holding that the lessor did not have a duty to mitigate under the circumstances because he had been foreclosed from doing so. *Lynn* at 560.

Here, similar to *Lynn*, the Plaintiff did not have a duty to mitigate its damages under the circumstances because as soon as the Defendants rejected the lease, GE Capital precluded the Plaintiff from taking any action and/or collecting any rent from the properties. Eventually, the

14

properties were foreclosed, relinquishing any interest GD Deal had over the properties and

foreclosing the Plaintiff from mitigating its damages after the Defendants defaulted on the lease.

Accordingly, the Plaintiff had no duty to mitigate its damages under the circumstances because it

was foreclosed from taking any steps to do so. As such, the Court now must determine if the

provision requiring the subtraction of the fair market rental value within Section 28.2.5 mirrors a

mitigation clause; if that provision does mirror and/or constitute a mitigation clause, then the

Plaintiff may recover accelerated damages without having to subtract the fair market rental value

because the Plaintiff had no duty to mitigate its damages under the circumstances.

The provision in question within Section 28.2.5 states:

> there shall be subtracted from such accelerated amounts present value of the fair
> market rental values of the Properties for the period from the date of acceleration
> until the date of the remainder of the Term (excluding all unexercised Renewal
> Periods) using the same discount factor (net of costs reasonably incurred by Landlord
> *to mitigate* its damages hereunder). (emphasis added).

Within the provision the last parenthetical section defines "the same discount factor" as the "net

of costs reasonably incurred by [the] Landlord to mitigate its damages hereunder." This implies

that the provision in question constitutes a mitigation clause, and therefore, the Plaintiff does

need to subtract the fair market rental values from the properties because the Plaintiff was

foreclosed from having the opportunity to mitigate damages after the Defendants rejected the

leases.

Other jurisdictions have consistently held that a subtraction of the fair market rental value

and/or fair market value from a property corresponds with a duty to mitigate on behalf of the

landlord following a default by the tenant. *See Lu v. Grewal*, 30 Cal. Rptr.3d 623, 627-28 (Cal.

App. 2d 2005)(holding that when a tenant breaches a contract "the correct measure for

15

mitigation credit is the property's fair market rental value."); *Harrison Riverside Ltd.*
*Partnership v. Eagle Affiliates, Inc.*, 707 A.2d 490, 493 (N.J. Super. App. Div.1998); *American*
*Nat. Bank and Trust Co. of Chicago v. Hoyne Industries, Inc.*, 1990 WL 114486, *3 (N.D. Ill.
July 31,1990); *Kauder v. Thompson*,1986 WL 5424, *5 (Ohio Ct. App. 1986); *see also Snell v.*
*Salem Ave. Assoc.*, 111 Ohio App.3d 23, 37-39 (Ohio Ct. App. 1996); *Hill v. Metropolitan Dist.*
*Com'n*, 787 N.E.2d 526, 535 (Mass. 2003); *Ly v. Nystrom*, 615 N.W.2d 302, 307 (Minn. 2000);
*National Life Ins. Co. v. Conagra, Inc.*,1994 WL 924300, *5 (W.D. N.C. October 21, 1994).

Accordingly, the Court finds that the Defendants owe the Plaintiff $7,766,428.97 in
damages for an accelerated amount of rent due after the rejection of the real property lease
agreement by the Defendants in August 2005.

### 3. Damages under the Personal Property (Equipment) Lease

Similar to the real property lease, the Plaintiff claims two (2) sets of damages against the
Defendants under the personal property lease: 1) failure to pay rent for the time period prior to
the date Baker rejected the lease agreement and 2) sums that would become due after Baker
rejected the lease agreement. In their response, the Defendants did not address these arguments
nor the figures submitted by the Plaintiff. The Court shall address each claim under the personal
property lease separately.

### i) Failure to Pay Rent

The Plaintiff contends that from February 2005 through August 2005, the Defendants
owe the Plaintiff rent on the personal property. During that time, the Plaintiff submits that
during that seven (7) month period the rent per month on the personal property was $54,822.00.
The Plaintiff states that it received $9,710.62 from the Baker to apply to the rent owed under the

personal property lease.  In addition, similar to the real property lease, all delinquent payments accumulate interest at a default rate of 12% per annum.  As of January 18, 2007, the Plaintiff claims $451,223.70 in damages for the failure of the Defendants to pay rent on the personal property lease from February 2005 through August 2005.

As noted *supra*, the Defendants have not challenged the figure reached by the Plaintiff nor have they addressed this argument.  Accordingly, the Court finds that the Defendants owe the Plaintiff $451,223.70 for failure to pay the Plaintiff rent on the personal property from February 2005 through August 2005.

### ii) Sums Due After Baker's Rejection of the Personal Property Lease Agreement

GD Deal also contends that it has the right to accelerate and recover from the Defendants all rent monies that were to become due after Baker rejected the personal property lease agreement.  Similar to the real property argument analyzed *supra*, the Plaintiff put forth the same arguments as to why it should recover damages from the Defendants for the accelerated amount of rent payments.  Section 22.2.5 in the personal property lease contains the exact same language as Section 28.2.25 of the real property lease.  Using the same steps and formulas in figuring the rent amount owed under the real property lease, the Plaintiff submits a claim of $945,098.98 in damages for an accelerated amount of rent due after the rejection of the leases by the Defendants.

As noted *supra*, the Defendants have not challenged the figure reached by the Plaintiff nor have they addressed this argument.  Accordingly, the Court finds that the Defendants owe the Plaintiff $945,098.98 in damages for an accelerated amount of rent due after the rejection of the personal property lease agreement by the Defendants in August 2005.

### 4. Court Costs, Attorney Fees and Associated Legal Expenses

17

Both the real property lease and the personal property lease, under Section 28.2.6 and Section 22.2.6, respectively, provide for the recovery of legal expenses to the Plaintiff, regardless of whether or not legal proceedings are actually commenced, so long as the Plaintiff is the prevailing party. As of January 18, 2007, the Plaintiff claims legal fees, including court costs, attorney fees and associated legal expenses, in the amount of $140,296.04. This includes representing the Plaintiff in: bankruptcy cases in Tennessee and Wisconsin; a case before the Western District of Tennessee; foreclosure cases in over twenty (20) circuit courts through out the Commonwealth; and two (2) appearances before this Court, including the instant matter. In Kentucky, a party may recover legal expenses if a contract expressly provides for such fees. *Kentucky State Bank v. AG Services, Inc.*, 663 S.W.2d 754, 755 (Ky. Ct. App. 1984); *Batson v. Clark*, 980 S.W.2d 566, 577 (Ky. Ct. App.1998); *see also McNutt v. State Farm Mutual Automobile Insurance Company*, 369 F.Supp. 381, 385-86 (W.D.Ky.1973), *aff'd*, 494 F.2d 1282 (6th Cir.1974).

The Defendants have not challenged the figures reached by the Plaintiff nor have they addressed this argument. Accordingly, the Court finds that the Plaintiff is entitled to $140,296.04 in attorney fees and costs.

The Plaintiff also seeks the recovery of "miscellaneous expenses" it incurred in dealing with the properties because of the default by the Defendants. GD Deal seeks to recover costs it incurred, including: paying taxes on the properties ($7,147.43); securing compliance with applicable environmental statutes and EPA regulations ($38,224.36); insurance ($23,494.02); and repairs ($15,947.66), for a total of $84,813.47 in miscellaneous expenses. Fred Higgins, the President of GD Deal, has documented these costs and expenses in an affidavit. While the

18

Plaintiff does not state how and/or when the default by the Defendants caused the Plaintiff to incur these expenses, it does provide the relevant sections within the real property lease that justify the recovery of these expenses regardless of how and when the costs took place.

Section 7.1 mandates that the landlord (GD Deal) has a net lease with the tenant (Baker) "free of expenses or charges with respect to the Properties, except as provided in this Lease. Tenant shall pay, subject to terms of this Lease, as Additional Rent and discharge before they become delinquent, *all items of expenses*, arising during and pertaining to the Term, from the *operation, maintenance, repair, use or occupancy of the Properties*." (emphasis added).

Section 7.2.1 states, in pertinent part, that the "[t]enant shall pay and discharge, before delinquency, all Impositions. Tenant shall pay all interest and penalties assessed by any Government on account of late payment of any imposition." Under the "definitions" section on page 6, the real property lease defines "impositions" as "all taxes, special and general assessments, water rents, rates and charges, commercial rent taxes, all charges for utility telecommunication services, all sales, gross receipts and other taxes, duties or imposts...levies fees and other impositions and charges of every nature and kind."

Section 11.1.2 requires that the tenant keep the properties "free and clear of all environmental liens, whether due to any act or omission of Tenant or any other person." Section 14.1, entitled "Indemnification by Tenant," is a "catch-all" provision that requires the tenant to indemnify the landlord "from and against any and all losses." Lastly, Section 15.1-15.5 mandates the tenant to maintain insurance on the properties.

The Defendants have not challenged the figure reached by the Plaintiff nor have they addressed this argument. Accordingly, the Court finds that the Plaintiff is entitled to $84,813.47

in miscellaneous costs associated with the Defendants' breach of the real property lease.

### 5. Overpayment of Rent Owed to the Plaintiff - Counterclaim of Baker

In Baker's answer to the Plaintiff's complaint (Docket #3), Baker asserted that the Plaintiff breached its lease agreement with Baker by overcharging the Defendant $752,253.82 in rent. In their response to the Plaintiff's motion for summary judgment (Docket #83), Defendants Sharma and Multani also state that as of January 2005, GD Deal had overcharged Baker in excess of $752,253.82. Though the Defendants do not elaborate on this issue except to state that the overcharge caused the Defendants "severe financial distress," the Plaintiff devotes a substantial part of its twenty-six (26) page reply (Docket #85) to this matter. The Plaintiff offers a detailed history of the transactions between CRE, the entity who entered into the original lease agreement with GD Deal, and Girkin Development LLC ("Girkin"), who worked with GD Deal on leasing the properties in 2001 and is a co-Plaintiff in this matter. The Plaintiff offers a thorough explanation both addressing and disproving the allegation of the overcharge, countering the argument put forth by the Defendants in their answer to the complaint and response to the motion for summary judgment, respectively.

Baker has not responded to the Plaintiff's motion for summary judgment. Further, none of the Defendants have provided any evidence to support the claim that the Plaintiff overcharged Baker in excess of $752,253.82. Under FRCP 56, the Supreme Court has held that a party must present more than a mere scintilla of evidence in order for the claim to survive a motion for summary judgment. *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986). At this juncture, the Defendants have not met their burden in sustaining their counterclaim against the Plaintiff because the Defendants have not provided any evidence or arguments to support their assertion.

20

Accordingly, the Court finds that the Defendants' counterclaim that the Plaintiff overcharged them rent fails as a matter of law.

## CONCLUSION

For the foregoing reasons, the Plaintiff's Motion for Summary Judgment is **GRANTED**. The Court finds that the Defendants owe the Plaintiff **$660,433.96** for failure to pay the Plaintiff rent on the real property from February 2005 through August 2005. The Court finds that the Defendants owe the Plaintiff **$7,766,428.97** in damages for an accelerated amount of rent due after the rejection of the real property lease agreement by the Defendants in August 2005. The Court finds that the Defendants owe the Plaintiff **$451,223.70** for failure to pay the Plaintiff rent on the personal property from February 2005 through August 2005. The Court finds that the Defendants owe the Plaintiff **$945,098.98** in damages for an accelerated amount of rent due after the rejection of the personal property lease agreement by the Defendants in August 2005. The Court finds that the Plaintiff is entitled to **$140,296.04** in attorney fees and costs. The Court finds that the Plaintiff is entitled to **$84,813.47** in miscellaneous costs associated with the Defendants' breach of the real property lease. Lastly, the Defendants' counterclaim against the Plaintiff for breach of the lease agreement fails as a matter of law.

Accordingly, the Plaintiff shall recover **$10,048,295.12** in damages from the Defendants for their breach and default of the real property and personal property leases.

An appropriate order shall issue.

May 11, 2007

Thomas B. Russell

**Thomas B. Russell, Judge**
**United States District Court**

21

3315        (Rev. 6/11/02) CCG 0015
Memorandum of Judgment

Doc#: 0728260164 Fee: $28.00
Eugene "Gene" Moore
Cook County Recorder of Deeds
Date: 10/09/2007 04:23 PM Pg: 1 of 3

IN THE CIRCUIT COURT OF
COOK COUNTY, ILLINOIS

G.D. DEAL HOLDINGS, INC. et al.

v.

BAKER ENERGY, INC., et al.

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT
OF ILLINOIS

Recorder's Stamp

No. _____ 07 CV 04965 _____

and U.S.D.C., Western District of KY, Bowling Green Division, Court No.: 1:05-CV-3-R

## MEMORANDUM OF JUDGMENT

On __May 11_____, __2007__, judgment was entered in    court

in favor of the plaintiff __G.D. Deal Holdings, Inc., (see attached judgment order entered in Bowling Green__

__Division, Western District of KY)__

and against defendant __Surinder Multani__

whose address is __24 Bright Ridge Drive, , Schaumburg, IL 60194-3696, Parcel No. 07 23 102 021 0000__

in the amount of $ __10,048,295.12_____.

Atty. No.: __04933_____

Name: __Michael Ripani, Williams Montgomery & John__

Atty. for: __Plaintiff__

Address: __20 North Wacker Drive__

City/State/Zip: __Chicago, IL 60606__

Telephone: __312-443-3206__

Judge          Judge's No.

Exhibit B

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CASE NO.: 1:05-CV-3-R

G.D. DEAL HOLDINGS, INC., et. al.,                                        PLAINTIFFS

v.

BAKER ENERGY, INC, et. al.,                                               DEFENDANTS

## ORDER

**IT IS SO ORDERED:**

The Plaintiff's Motion for Summary Judgment (Docket #77) is **GRANTED**. The Court

finds that the Defendants owe the Plaintiff **$660,433.96** for failure to pay the Plaintiff rent on the

real property from February 2005 through August 2005. The Court finds that the Defendants

owe the Plaintiff **$7,766,428.97** in damages for an accelerated amount of rent due after the

rejection of the real property lease agreement by the Defendants in August 2005. The Court

finds that the Defendants owe the Plaintiff **$451,223.70** for failure to pay the Plaintiff rent on the

personal property from February 2005 through August 2005. The Court finds that the

Defendants owe the Plaintiff **$945,098.98** in damages for an accelerated amount of rent due after

the rejection of the personal property lease agreement by the Defendants in August 2005. The

Court finds that the Plaintiff is entitled to **$140,296.04** in attorney fees and costs. The Court

finds that the Plaintiff is entitled to **$84,813.47** in miscellaneous costs associated with the

Defendants' breach of the real property lease. Lastly, the Defendants' counterclaim against the

Plaintiff for breach of the lease agreement fails as a matter of law.

Accordingly, the Plaintiff shall recover **$10,048,295.12** in damages from the Defendants

for their breach and default of the real property and personal property leases.

May 11, 2007

*Thomas B. Russell*

**Thomas B. Russell, Judge**
**United States District Court**

# HARNED, BACHERT & DENTON, LLP

ATTORNEYS AT LAW
324 EAST 10TH AVENUE
P. O. BOX 1270
BOWLING GREEN, KY 42102-1270

NORMAN E. HARNED
SCOTT A. BACHERT
JOY D. DENTON
STEPHANIE MCGEHEE-SHACKLETTE
W. GREG HARVEY
WILLIAM F. CODELL

Telephone:
(270) 782-3938
Facsimile:
(270) 781-4737

Codell@hbd-law.com
August 30, 2007

Michael W. Dobbins
Clerk of US District Court
Everett McKinley Dirksen Building
219 South Dearborn Street
Chicago, IL 60604

RE:     Registration of District Court Judgment of Another District

Dear Mr. Dobbins:

You are hereby requested to register promptly in your district pursuant to Title 28, Section 1963 of the United States Code a judgment rendered and entered in Civil Action Number 1:05-CV-3-R, by the United States District Court for the Western District of Kentucky, Bowling Green Division, on May 11, 2007, in favor of GD Deal Holdings, LLC and Girkin Development, LLC (on whose behalf the registration is requested) and against Baker Energy, Inc., Rohit Sharma, and Surinder Multani. The judgment is for the recovery of money, as more fully shown by the enclosed certified copy of the judgment. The United States District Court for the Western District of Kentucky has found good cause to register the judgment in other districts pending appeal as shown by the enclosed certified copy of the order allowing registration of the judgment. Additionally enclosed, please find a check in the amount of $39.00 to cover the filing fee for the registration of the judgment.

You are requested to notify the undersigned, attorney for GD Deal Holdings, LLC and Girkin Development, LLC, at the address set out above as soon as the registration is effected in order that enforcement of the judgment in your district may be expedited. Thank you for your attention to this matter.

Very truly yours,

HARNED, BACHERT & DENTON, LLP

**07CV4965
JUDGE KENNELLY
MAG. JUDGE VALDEZ**

*William F. Codell*

William F. Codell

enclosure

ORDER #: _____

**QUIT CLAIM DEED**
Illinois Statutory



**FRED BUCHOLZ**
**DUPAGE COUNTY RECORDER**
FEB.05,2007         RHSP      1:52 PM
DEED                06-33-202-015
**003 PAGES**  **R2007-022926**

THE GRANTOR, Abbe Properties, L.L.C., an Illinois limited liability company, of the Village of Schaumburg, County of Cook, State of Illinois for and in consideration of the sum of Ten Dollars ($10.00) DOLLARS, and other good and valuable consideration in hand paid, CONVEYS and QUIT CLAIMS to Surinder P Multani and Safanpreet Multani, not as tenants in common, but as joint tenants, 302 Midwest Club, Oak Brook, Illinois 60523 of the County of DuPage, all interest in the following described Real Estate situated in the County of DuPage in the State of Illinois, to wit:

See Exhibit 'A' attached hereto and made a part hereof

Subject to covenants, conditions and restrictions of record, general taxes for 2006 and subsequent years including taxes which may accrue by reason of new or additional improvements during the year 2006

hereby releasing and waiving all rights under and by virtue of the Homestead Exemption Laws of the State of Illinois. TO HAVE AND TO HOLD said premises not as tenants in common, but as joint tenants forever.

Permanent Real Estate Index Number(s): 06-33-202-015-0000
Address(es) of Real Estate: 302 Midwest Club, Oak Brook, Illinois 60523

Dated this ___1st___ day of December, ~~2007~~ 2006

Abbe Properties, LLC

By: _____
Surinder PS Multani

Exhibit C

STATE OF ILLINOIS COUNTY OF __DuPage__ ss.

I, the undersigned, a Notary Public in and for said County, in the state aforesaid, CERTIFY THAT Surinder PS Multani, Manager of Abbe Properties LLC, an Illinois limited liability company, personally known to me to be the same person whose name is subscribed to the foregoing instrument, appeared before me this day in person, and acknowledged that he signed, sealed and delivered the said instrument as his free and voluntary act as Manager, for the uses and purposes therein set forth.

Given under my hand and official seal, this __1st__ day of __December__, ~~2007~~ 2006

OFFICIAL SEAL
INA ALIKHAN
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:05/12/09

__Ina Alikhan__ (Notary Public)

EXEMPT UNDER PROVISIONS OF PARAGRAPH
(c) SECTION 31-45 REAL ESTATE TRANSFER
TAX LAW

DATE: __12|1|06__

Signature of Buyer, Seller or Representative

Prepared by:

Mail To:      ABBE MANAGEMENT GROUP, LLC
              1450 E. AMERICAN LANE, SUITE 1400
              SCHAUMBURG, IL 60173

Name & Address of Taxpayer:
Surinder PS Multani and Safanpreet Multani
302 Midwest Club
Oak Brook, Illinois 60523

01/25/2007 13:25 6309401750 PAGE 03
12/19/2006 08:10 8479632042 ROBERTSLUCE PAGE 03

### EXHIBIT 'A'
#### Legal Description

LOT 14 IN THE MIDWEST CLUB PHASE I, BEING A SUBDIVISION OF PART OF THE NORTH 1/2 OF SECTION 33, AND THE NORTHWEST 1/4 OF SECTION 34, TOWNSHIP 39 NORTH, RANGE 11, EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED DECEMBER 6, 1978 AS DOCUMENT R78-116577 AND CERTIFICATE OF CORRECTION RECORDED NOVEMBER 20, 1979 AS DOCUMENT R79-104546 AND CERTIFICATE OF CORRECTION RECORDED JANUARY 25, 1982 AS DOCUMENT R82-02848, IN DUPAGE COUNTY, ILLINOIS.

**Warranty Deed**
**Statutory (ILLINOIS)**

Doc#: 0405642030
Eugene "Gene" Moore  Fee: $28.00
Cook County Recorder of Deeds
Date: 02/25/2004 07:55 AM  Pg: 1 of 3

THE GRANTOR (S)
MAJESTIC HOMES, INC.

*Above Space for Recorder's Use Only*

corporation created and existing under and by virtue of the laws of the State of ILLINOIS and duly
authorized to transact business in the State of ILLINOIS for and in consideration of the sum of ($10.00)
TEN DOLLARS, in hand paid, and pursuant to authority given by the Board of BOARD OF
DIRECTORS of said corporation, CONVEYS and WARRANTS to

SURINDER S. MULTANI AND SAFANPREET K. MULTANI, husband and wife, not as Joint
Tenants, nor as Tenants in Common, but as TENANTS BY THE ENTIRETY, 2140 S. Goebberg Road,
Arlington, Heights, IL 60005

the following described Real Estate situated in the County of COOK in the State of Illinois, to wit:

SEE ATTACHED

Permanent Index Number (PIN): 07-23-102-021

Address(es) of Real Estate: 124 BRIGHT RIDGE DRIVE, SCHAUMBURG, IL 60194

SUBJECT TO: General Taxes for 2003 and subsequent years, covenants, restrictions, and conditions of
record.

In Witness Whereof, said Grantor has caused its corporate seal to be hereto affixed, and has caused its
name to be signed to these presents by its President, and attested by its Secretary, this _____ day
of ___January___, 2004.

MAJESTIC HOMES, INC.

By _____
                                    President

Attest: _____
                                    Secretary

VILLAGE OF SCHAUMBURG
REAL ESTATE TRANSFER TAX
1-29-04
0923    $_____

| STATE OF ILLINOIS | 0000005262 | REAL ESTATE TRANSFER TAX |
|---|---|---|
| STATE TAX  FEB.23.04  REAL ESTATE TRANSFER TAX DEPARTMENT OF REVENUE | # | 01367.00  FP 102808 |

| COOK COUNTY REAL ESTATE TRANSACTION TAX | 0000005433 | REAL ESTATE TRANSFER TAX |
|---|---|---|
| COUNTY TAX  FEB.23.04  REVENUE STAMP | # | 0068350  FP 102802 |

BOX 333-CTI

State of Illinois, County of COOK ss, I, the undersigned, a Notary Public In and for the County and State aforesaid, DO HEREBY CERTIFY that Matt Schweibenz personally known to me to be President of the corporation, and Irene Schweibenz personally known to me to be the Secretary of said corporation, and personally known to me to be the same persons whose names are subscribed to the foregoing instrument, appeared before me this day in person, and severally acknowledged that as such President and Secretary, they signed, sealed and delivered the said instrument and caused the corporate seal of the corporation to be affixed thereto pursuant to authority given by the Board of Directors said corporation, as their free and voluntary act, and as the free and voluntary act and deed of corporation, for the uses and purposes therein set forth.

Given under my hand and official seal this _____ day of _____, 2004.

Commission expires _____

> OFFICIAL SEAL
> ARTHUR W WENZEL
> NOTARY PUBLIC - STATE OF ILLINOIS
> MY COMMISSION EXPIRES:12/19/07

NOTARY PUBLIC

This instrument was prepared by:  Arthur W. Wenzel, 1111 Plaza Drive, Suite 405, Schaumburg, Illinois 60173

**MAIL TO:** ABACUS FINANCE INC.

To SUPINDER MULTANI

2015- S. ARLINGTON HEIGHTS

SUITE 120.

ARLINGTON HEIGHTS - IL- 60005

SEND SUBSEQUENT TAX BILLS TO:

SURINDER S. MULTANI
124 BRIGHT RIDGE DRIVE
SCHAUMBURG, IL 60194

LOT 9 IN SUMMERFIELD ESTATES SUBDIVISION, BEING A SUBDIVISION OF PART OF THE
SOUTHWEST 1/4 OF SECTION 23, TOWNSHIP 41 NORTH, RANGE 10, EAST OF THE THIRD
PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED AUGUST 2, 2000, AS
DOCUMENT 00675392, IN COOK COUNTY, ILLINOIS.

0W/16/2006  18:01    18474138282            OFFICEMAX

FAX: 680-940-1744

# Personal Financial Statement



**MIDWEST**™
*Community Bank*

YOU MAY APPLY FOR A CREDIT EXTENSION OR FINANCIAL ACCOMMODATION INDIVIDUALLY OR JOINTLY WITH A CO-APPLICANT. THIS STATEMENT AND ANY APPLICABLE SUPPORTING SCHEDULES MAY BE COMPLETED JOINTLY BY BOTH MARRIED AND UNMARRIED CO-APPLICANTS IF THEIR ASSETS AND LIABILITIES ARE SUFFICIENTLY JOINED SO THAT THE STATEMENT CAN BE MEANINGFULLY AND FAIRLY PRESENTED ON A COMBINED BASIS; OTHERWISE SEPARATE STATEMENTS AND SCHEDULES ARE REQUIRED.

**APPLICANT**

NAME SAPANPREET KAUR MULTANI  SOCIAL SECURITY #

ADDRESS 24-BRIGHT RIDGE DR., SCHAUMBURG-IL-60194

TELEPHONE NUMBER _____    DATE OF BIRTH _____

PRESENT EMPLOYER ABGE MANAGEMENT PLC  POSITION  V

ADDRESS 1450-E-AMERICAN LANE, SUITE - 1400 - IL-60173 SCHAUMBURG

**CO-APPLICANT**

NAME SURINDER PS MULTANI  SOCIAL SECURITY #

ADDRESS SAME

TELEPHONE NUMBER _____    DATE OF BIRTH _____

PRESENT EMPLOYER ABGE MANAGEMENT GROUP-LLC  POSITION  CEO

ADDRESS 1450-E- AMERICAN LANE, SUITE-1400-IL-60173 SCHAUMBURG

Exhibit D

ATTACHED

DATE OF VALUATION _____

* Round all amounts to the nearest $(U)
* Attach separate sheet if you need more space to complete detail schedule

| ASSETS | AMOUNT | LIABILITIES | AMOUNT |
|---|---|---|---|
| Cash in this Bank | | Notes Payable Banks (Schedule 7) | |
| Cash in Other Banks (Detail) | | Notes Payable Others (Schedule 7) | |
| | | Installment Contracts Payable (Schedule 7) | |
| | | Due Rent, Stores, Credit Cards & Others | |
| Due from Friends, Relatives & Others (Schedule 1) | | Income Taxes Payable | |
| Mortgage & Contracts for Deed Owned (Schedule 2) | | Other Taxes Payable | |
| Securities Owned (Schedule 3) | | | |
| Cash Surrender Value of Life Insurance (Schedule 4) | | Loans on Life Insurance (Schedule 4) | |
| Homestead (Schedule 6) | | | |
| Other Real Estate Owned (Schedule 5) | | Mortgage on Homestead (Schedule 6) | |
| Automobiles | | Mortgage or Liens on Other Real Estate Owned (Schedule 5) | |
| Personal Property | | Other Liabilities (Detail) | |
| Other Assets (Detail) | | | |
| | | TOTAL LIABILITIES | |
| | | Net Worth (Total Assets Less Total Liabilities) | |
| TOTAL | | TOTAL | |

| ANNUAL INCOME | APPLICANT | CO-APPLICANT | CONTINGENT LIABILITIES | |
|---|---|---|---|---|
| Salary | | | As Endorser | |
| Commissions | | | As Guarantor | |
| Dividends | | | Lawsuits | |
| Interest | | | For Taxes | |
| Rentals | | | Other (Detail) | |
| Alimony, child support or maintenance (you need not show this unless you wish us to consider it) | | | | |
| Other | | | ☐ Check here if "None" | |
| TOTAL INCOME | | | TOTAL CONTINGENT LIABILITIES | |

SCHEDULE 1 DUE FROM FRIENDS, RELATIVES & OTHERS

| Name of Debtor | Owed To | Collateral | How Payable | Maturity Date | Unpaid Balance |
|---|---|---|---|---|---|
| | | | $    per | | |
| | | | $    per | | |
| | | | $    per | | |
| | | | TOTAL | | |

SCHEDULE 2 MORTGAGE AND CONTRACTS FOR DEED OWNED

| Name of Debtor | Type of Property | 1st or 2nd Lien | Owed To | How Payable | Unpaid Balance |
|---|---|---|---|---|---|
| | | | | $    per | |
| | | | | $    per | |
| | | | | $    per | |
| | | | | $    per | |
| | | | | TOTAL | |

ATTACHED

## SCHEDULE 3 SECURITIES OWNED

| No. Shares or Bond Amount | Description | In Whose Name(s) Registered | Cost | Present Market Value | L - listed U - unlisted |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | TOTAL | | |

## SCHEDULE 4 LIFE INSURANCE

| Insured | Insurance Company | Beneficiary | Face Value of Policy | Cash Value | Loans |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | TOTAL | | |

## SCHEDULE 5 REAL ESTATE

| Address and Type of Property | Title in Name(s) of | Monthly Income | Cost Year Acquired | Present Market Value | Amount of Insurance |
|---|---|---|---|---|---|
| Homestead | | | $ Year | | |
| | | | $ Year | | |
| | | | $ Year | | |
| | | | $ Year | | |
| | | | $ Year | | |

## SCHEDULE 6 MORTGAGES OR LIENS ON REAL ESTATE

| To Whom Payable | How Payable | Interest Rate | Maturity Date | Unpaid Balance |
|---|---|---|---|---|
| Homestead | $ per | | | |
| | $ per | | | |
| | $ per | | | |
| | $ per | | | |
| | $ per | | | |

## SCHEDULE 7 NOTES PAYABLE BANKS AND OTHERS AND INSTALLMENT CONTRACTS PAYABLE

| To Whom Payable | Address | Collateral or Unsecured | How Payable | Unpaid Balance |
|---|---|---|---|---|
| | | | $ per | |
| | | | $ per | |
| | | | $ per | |
| | | | $ per | |
| | | | $ per | |
| | | | $ per | |
| | | | $ per | |

|  | **APPLICANT** | **CO-APPLICANT** |
|---|---|---|
| Have you ever gone through bankruptcy or had a judgment against you? | ☐Yes ☑No | ☐Yes ☐No |
| Are any assets pledged or debts secured except as shown? | ☐Yes ☑No | ☐Yes ☑No |
| Have you made a will? | ☑Yes ☐No | ☑Yes ☐No |
| Number of dependents (if "none" check none) | 4  ☐None | 1  ☐None |

Marital Status (answer only if this financial statement is provided in connection with a request for secured credit or applicant is seeking a joint account with spouse.)

☑Married      ☑Married
☐Separated    ☐Separated
☐Unmarried    ☐Unmarried
(Unmarried includes single, divorced, widowed)

The foregoing statement, submitted for the purpose of obtaining credit, is true and correct in every detail and fairly shows my/our financial condition at the time indicated. I/we will give you prompt written notice of any subsequent substantial change in such financial condition occurring before discharge of my/our obligations to you. I/we understand that you will retain this personal financial statement whether or not you approve the credit in connection with which it is submitted. You are authorized to check my/our credit and employment history or any other information contained herein.

### THE UNDERSIGNED CERTIFY THAT THE INFORMATION CONTAINED ON THIS FORM HAS BEEN CAREFULLY REVIEWED AND THAT IT IS TRUE AND CORRECT IN ALL RESPECTS.

Date _____          Your Signature _____

Date _____          Co-Applicant Signature (if you are requesting the financial accommodation jointly) _____


Member FDIC



## PERSONAL FINANCIAL STATEMENT

IMPORTANT : Read these directions before completing this statement

☐ If you are applying for individual credit in your own name and are relying on your own income or assets and not the income or assets of another person as the basis for repayment of the credit requested, complete Section 1 and Section 2 and continue

☒ If you are applying for joint credit with another person, complete all Sections providing information in Section 2 about the joint applicant
We intend to apply for joint credit

      Satamreet K. Mullani,                Suvinder P. Mullani,
          Applicant                       Co- Applicant

☐ If you are applying for individual credit but are relying on income from alimony, child support or separate maintenance or on the income or assets of another person as a basis for repayment of the credit requested, complete all Sections, providing information in Section 2 about the person upon whose alimony, child support, or maintenance payments or income or assets you are relying

| SECTION 1 - INDIVIDUAL INFORMATION | | | SECTION 2 - OTHER PARTY INFORMATION | | |
|---|---|---|---|---|---|
| Name : | Satamreet Kaur Mullani | | Name ( No. | Suvinder Mullani | |
| Residence Address: | 24 Bright Ridge Drive | | Residence Address: | 24 Bright Ridge Drive | |
| City, State & Zip: | Schaumburg, IL - 60184 | | City, State & Zip: | Schaumburg, IL - 60184 | |
| Position or Occupation: | Partner | | Position or Occupation: | | |
| Business Name: | | | Business Name: | | |
| Business Address: | | | Business Address: | | |
| City, State & Zip: | | | City, State & Zip: | | |
| Res Phone : | | Bus Phone : | Res Phone : | | Bus Phone : |
| Drivers Licence No: | | State: IL | Drivers Licence No: | | State: IL |
| Date Issued : | 07/13/04 | | Date Issued : | 06/08/04 | |
| Expiration Date : 07/30/09 | | | Expiration Date : 06/27/08 | | |

| SECTION 3 - STATEMENT OF FINANCIAL CONDITION AS OF | | | 20 | | |
|---|---|---|---|---|---|
| ASSETS | | In Dollars (Omit Cents) | LIABILITIES | | In Dollars (Omit Cents) |
| Cash on Hand and in Banks | | $    102,000 | Notes Payable to Banks - Secured | | |
| U.S Govt & Marketable Securities | | | Notes Payable to Banks - Unsecured | | |
| Non Marketable Securities | | | Due to Brokers | | |
| Securities held by Broker | | | Amounts Payable to others - Secured | | $    100,400 |
| Restricted or Control accounts | | | Amounts Payable to others - Unsecured | | $    51,450 |
| Partial Interest in Real Estate Equities | | | Accounts and bills due | | |
| Real Estate Owned | | $    2,300,000 | Unpaid Income Tax | | |
| Loans Receivable | | $    10,000 | Other Unpaid taxes and interest | | |
| Automobiles and Personal Property | | $    142,000 | Real Estate mortgages payable | | $    1,491,000 |
| Cash Value - Life Insurance | | $    12,000 | Other Debts | | |
| Other Assets | | | | | |
| | | | Charge Accounts | | $    114,000 |
| Retirement Accounts | | $    80,000 | | | |
| Furniture and Jewelery | | $    780,000 | | | |
| Interest in Corporations | | $    5,000,000 | Total Liabilities | | $    1,856,850 |
| | | | Net Worth | | $    7,067,950 |
| Total Assets | | $    8,826,000 | Total Liabilities and Net Worth | | $    8,826,000 |

| SOURCES OF INCOME FOR YEAR END 2005 | | | PERSONAL INCOME | |
|---|---|---|---|---|
| Salary, bonuses & commissions | $ | 180,000 | Do you have a will? Yes, if so, name of executor | |
| Dividends | | | | |
| Real Estate Income | | | Are you a partner or officer in any other ventures ? | |
| Other Income | | | | |
| ( Alimony, Child support etc.) | | | | |
| Distribution from companies | $ | 525,000 | Are you obliged to pay alimony, child support or separate | |
| | | | maintenance payments ? | |
| | | | N/A | |
| Total | $ | 705,000 | Are any assets pledged other than as described on Schedules | |

| CONTINGENT LIABILITIES | | | |
|---|---|---|---|
| Do you have contingent liabilities ? If so Describe | | | Income Tax settled through date _____ |
| | | | Are you a defendant in any suits or legal actions |
| As endorser, co-maker or guarantor? | | | N/A |
| On lease or contract? | | Auto Lease | |
| Legal Claims | | | Personal bank accounts carried at ? |
| | | | American Chartered Bank, CitiBank |
| | | | Have you ever been declared bankrupt ? If so describe. |
| | | | N/A |

### SCHEDULE A - U.S. GOVERNMENT & MARKETABLE SECURITIES

| Number of Shares or Face Value ( Bonds ) | Description | In Name of | Are These Pledged? | Market Value |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

### SCHEDULE B - NON MARKETABLE SECURITIES

| Number of Shares | Description | In Name of | Are these Pledged? | Source of Value? | Value |
|---|---|---|---|---|---|
| N/A | Promissory Note - Excellent Petroleum | | N/A | | $ 117,000 |
| N/A | Promissory Note - Sista Inc. | | N/A | | $ 51,000 |
| N/A | Promissory Note - Himanshu Patel | | N/A | | $ 62,000 |

### SCHEDULE C - PARTIAL INTEREST IN REAL ESTATE EQUITIES

| Address&Type of Property | Title- Owner | 1/2 of Ownership | Date Acquired | Cost | Market Value | Mortgage Maturity | Mortgage Amount |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |

### SCHEDULE D - REAL ESTATE OWNED

| Address&Type of Property | Title- Owner | Date Acquired | Cost | Market Value | Mortgage Maturity | Mortgage Amount |
|---|---|---|---|---|---|---|
| 24 Bright Ridge Drive | S.P. Singh | 1/1 | $ 1,070,000 | $ 3,000,000 | LOC | $ 3,200,000 |
| Schaumburg, IL - 60194 | (and Balvinjeet Kaur | | | | LOC | $ 95,000 |

### SCHEDULE E - LIFE INSURANCE CARRIED, INCLUDING N.S.L.I. AND GROUP INSURANCE

| Name of Insurance Comp. | Owner of Policy | Beneficiary | Face Amount | Policy Loans | Cash Surrender Value |
|---|---|---|---|---|---|
| New York Life | S.P. Singh - Whole | Balvinjeet Kaur | $ 100,000 | | $12,000 |
| New York Life | S.P. Singh - Term | Balvinjeet Kaur | $ 1,000,000 | | N/A |
| Jackson National Life | S.P. Singh - Term | Balvinjeet Kaur | $ 1,000,000 | | N/A |

06/26/2006  14:47    18474139032                    OFFICEMAX                              PAGE  04/05

| Jackson National Life | S.P. Singh - Term | S.P. Singh | $ 1,000,000 | | N/A | |

### SCHEDULE F - BANKS OR FINANCE COMPANIES WHERE CREDIT HAS BEEN OBTAINED

| Name and Address of Lender | Credit in the name of | Secured or Unsecured | Original Date | High Credit | Current Balance |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

The information contained in this statement is provided for the purpose of obtaining or maintaining credit with you on behalf of the undersigned , or persons, firms or corporations in whose behalf the undersigned may either severally or jointly with others , execute a guaranty in favor . Each undersigned understands that you are relying on the information provided herein in deciding to grant or continue credit. Each undersigned represents and warrants that the information provided is true and complete and that you may consider this statement as continuing to be true and correct until a written notice of a change is given to you by the undersigned. You are authorized to make all inquires you deem necessary to verify the accuracy of the statements made herein, and to determine my/our credit worthiness. You are authorized to answer questions about your credit experience with me/us.

Date Signed _____

Signature
(Individual) _____

S.S. No _____ Date of Birth _____

Signature
(Other Party) _____

S.S. No _____ Date of Birth _____

06/25/2008  14:47   18474188032                    OFFICEMAX                          PAGE  05/05

### Supplement to Personal Financial Statement

| ASSETS | Amount | LIABILITIES | Amount |
|---|---|---|---|
| Automobiles | | Automobiles (Secured Notes) | |
| Range Rover 2005 | $ 71,000 | Range Rover 2005 | $ 48,500 |
| Mercedes S500 2003 | $ 39,000 | BMW 325iX | $ 28,200 |
| Mitsubishi SUV 2005 | $ 32,000 | Mitsubishi SUV 2005 | $ 23,700 |
| Total | $ 142,000 | Total | $ 100,400 |
| Other Assets | | Credit Card Payables | |
| Furniture and Household Effects | $ 600,000 | Chase | $ 11,000 |
| Jewelry | $ 180,000 | Citibank | $ 1,100 |
| | | MBNA | $ 16,000 |
| Total | $ 780,000 | MBNA | $ 7,500 |
| | | Discover | $ 9,850 |
| | | Chase | $ 7,000 |
| | | Total | $ 51,450 |
| Retirement Accounts | | | |
| 401 K Allianz Life Insurance | $ 40,000 | Charge Account | |
| 401 K Allianz Life Insurance | $ 40,000 | Marshall Field | $ 114,000 |
| Total | $ 80,000 | | |
| Stock Ownership | | | |
| 80 % Owner | $ 3,600,000 | | |
| abc Corp | | | |
| ( FMV of Credit Card Processing Business ) | | | |
| 50% Shareholders in | $ 1,500,000 | | |
| Sapphire Supply LLC | | | |
| (Gasoline Distribution Company) | | | |

05/15/2006  18:01    18474196032    OFFICEMAX    PAGE  05

## PERSONAL FINANCIAL STATEMENT

IMPORTANT : Read these directions before compiling this statement

[ ] If you are applying for individual credit in your own name and are relying on your own income or assets and not the income or assets of another person as the basis for repayment of the credit requested, complete Section 1 and Section 3 and continue

[X] If you are applying for joint credit with another person, complete all Sections providing information in Section 2 about the joint applicant
We intend to apply for joint credit

Rajanunesh K. Mullani          Surender P. Mullani
Applicant                      (Jo-Applicant)

[ ] If you are applying for individual credit but are relying on income from alimony, child support or separate maintenance or on the income or assets of another person as a basis for repayment of the credit requested complete all Sections, providing information in Section 2 about the person upon whose alimony, child support, or maintenance payments or income or assets you are relying.

| SECTION 1: INDIVIDUAL INFORMATION | | | SECTION 2: OTHER PARTY INFORMATION | | |
|---|---|---|---|---|---|
| Name : Rajanunesh Kaur Mullani | | | Name : Mr. Surinder Mullani | | |
| Residence Address:24 Bridil Ridge Drive | | | Residence Address:24 Bridil Ridge Drive | | |
| City, State & Zip: Schaumburg, IL - 30194 | | | City, State & Zip: Schaumburg, IL - 60193 | | |
| Position or Occupation: Partner | | | Position or Occupation : | | |
| Business Name: | | | Business Name: | | |
| Business Address: | | | Business Address: | | |
| City, State & Zip: | | | City, State & Zip: | | |
| Res Phone : | Bus Phone : | | Res Phone: | | Bus Phone: |
| Drivers License No: | | State: IL | Drivers License No: | | State: IL |
| Date Issued : 02/04/04 | | | Date Issued : 03/04/04 | | |
| Expiration Date : 01/30/08 | | | Expiration Date : 03/07/08 | | |

| SECTION 3 - STATEMENT OR FINANCIAL CONDITION AS OF _____, 20__ | | | | | |
|---|---|---|---|---|---|
| ASSETS | | In Dollars (Omit Cents) | LIABILITIES | | In Dollars (Omit Cents) |
| Cash on hand and in Bank | $ | 395,000 | Notes Payable to Banks - Secured | | |
| U.S. Govt & Marketable Securities | | | Notes Payable to Banks- Unsecured | | |
| Non-Marketable Securities | | | Due to Brokers | | |
| Securities held by Broker | | | Amount Payable to others - Secured | $ | 120,000 |
| Restricted or Control Securities | | | Amount Payable to others - Unsecured | $ | 41,000 |
| Partial Interest in Real Estate Equities | | | Accounts and Bills due | | |
| Real Estate Owned | $ | 3,800,000 | Unpaid Income Tax | | |
| Loans Receivable | $ | 810,000 | Other Unpaid taxes and interest | | |
| Automobiles and Personal Property | $ | (57,000) | Real Estate mortgages payable | $ | 1,305,000 |
| Cash Value - Life Insurance | | 74,000 | Other Debts | | |
| Other Assets | | | Charge Accounts | $ | 111,000 |
| Retirement Accounts | $ | 60,000 | | | |
| Furniture and Jewelery | $ | 700,000 | | | |
| Interest in Organization | $ | 3,005,000 | Total Liabilities | $ | 1,577,000 |
| | | | Net Worth | | 4,520,000 |
| Total Assets | $ | 6,097,000 | Total Liabilities and Net Worth | $ | 6,097,000 |

06/16/2005  18:01    18474138032    OFFICEMAX    PAGE  05

| SOURCES OF INCOME FOR YEAR ONE 2002 | | | | | PERSONAL INCOME |
|---|---|---|---|---|---|
| Salary, bonuses & commissions | | $ | 125,000 | | Do you have a Will? Yes. If so, name of executor |
| INCOME | | | | | |
| Real Estate Income | | | | | |
| Other Income | | | | | Are you a partner or officer in any other ventures ? |
| ( Alimony, Child Support etc.) | | | | | |
| Distribution from companies | | $ | 550,000 | | |
| | | | | | Are you obliged to pay alimony, child support or separate maintenance payments ? N/A |
| | | | | | |
| Total | | $ | 675,000.1 | | Are any assets pledged other than as described on Schedules |
| CONTINGENT LIABILITIES | | | | | |
| Do you have contingent liabilities ? If so Describe | | | | | Income Tax settled through date _____ |
| | | | | | |
| As endorser, co-maker or guarantor? | | | | | Are you a defendant in any suits or legal actions N/A |
| On leases or contracts? | | Auto Lease | | | |
| Legal Claims | | | | | |
| | | | | | Personal bank accounts carried at - American Chartered Bank, Citibank |
| | | | | | |
| | | | | | Have you ever been declared bankrupt ? If so describe. N/A |

## SCHEDULE A - U.S. GOVERNMENTS & MARKETABLE SECURITIES

| Number of Shares or Face Value ( Bonds ) | Description | In Name of | Are These Pledged | Market Value |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

## SCHEDULE B - NON MARKETABLE SECURITIES

| Number of Shares | Description | In Name of | Are Usis Pledged? | Source of Value | Value |
|---|---|---|---|---|---|
| N/A | Promissory Note - Elmhurst Petroleum | | N/A | | $ 477,000 |
| N/A | Promissory Note - Edris Inc | | N/A | | $ 01,000 |
| N/A | Promissory Note - Hinsdale Petrols | | N/A | | $ 82,000 |

## SCHEDULE C - PARTIAL INTEREST IN REAL ESTATE EQUITIES

| Address/Type of Property | Title Owner | % of Ownership | Date Acquired | Cost | Market Value | Mortgage Maturity | Mortgage Amount |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

## SCHEDULE D - REAL ESTATE OWNED

| Address/Type of Property | Title Owner | Date Acquired | Cost Acquired | Market Value | Mortgage Maturity | Mortgage Amount |
|---|---|---|---|---|---|---|
| 24 Eliot Ridge Drive Schaumburg, IL - 60194 | B.P. Singh and Satamneel Kaur | 7/1 | $ 1,570,000 | $ 2,300,000 | 1/00 1/00 | $ 1,800,000 $ 83,000 |

## SCHEDULE E - LIFE INSURANCE CARRIED, INCLUDING N.S.L.I. AND GROUP INSURANCE

| Name of Insurance Comp. | Owner of Policy | Beneficiary | Face Amount | Policy Loans | Cash Surrender Value |
|---|---|---|---|---|---|
| New York Life | B.P. Singh - Whole | Satamneel Kaur | $ 100,000 | | $12,000 |
| New York Life | B.P. Singh - Term | Satamneel Kaur | $ 1,000,000 | | N/A |
| American National Life | B.P. Singh - Term | Satamneel Kaur | $ 1,000,000 | | N/A |

| Jackson National Life | S.P. Singh x Trust | S.P. Singh | $ 1,500,000 | | N/A | |

### SCHEDULE F - BANKS OR FINANCE COMPANIES WHERE CREDIT HAS BEEN OBTAINED

| Name and Address of Lender | Credit in the name of | Secured or Unsecured | Original Date | High Credit | Current Balance |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

The information contained in this statement is provided for the purpose of obtaining or maintaining credit with you on behalf of the undersigned, or persons, firms or corporations in whose behalf the undersigned may either severally or jointly with others, execute a guaranty in favor. Each undersigned understands that you are relying on the information provided herein in deciding to grant or continue credit. Each undersigned represents and warrants that the information provided is true and complete and that you may consider this statement as continuing to be true and correct until a written notice of a change is given to you by the undersigned. You are authorized to make all inquiries you deem necessary to verify the accuracy of the statements made herein, and to determine my/our credit worthiness. You are authorized to answer questions about your credit experience with me/us.

Date Signed   **12 - 28 - 05**

Signature (Individual) _____

S.S. No. _____ Date of Birth _____

Signature (Other Party) _____

S.S. No. _____ Date of Birth _____

S.P  Singh
Supplement to Personal Financial Statement
30-Sep-05

| **ASSETS** | | **LIABILITIES** | |
|---|---|---|---|
| **Automobiles** | | **Automobiles (Secured Notes)** | |
| Range Rover 2005 | $80,000 | Range Rover 2005 | $66,000 |
| Mercedes S500 2003 | $42,000 | BMW X5 | $30,000 |
| Mitsubishi SUV 2006 | $35,000 | Mitsubishi SUV 2005 | $33,000 |
| | $157,000 | | $129,000 |
| **Other Assets** | | **Credit Card Payables** | |
| Furniture and Household Effects | $600,000 | Chase | $11,000 |
| Jewelry | $180,000 | Citibank | $1,100 |
| | | MBNA | $15,000 |
| | $780,000 | MBNA | $7,500 |
| | | Chase | $7,000 |
| **Retirement Accounts** | | | $41,600 |
| 401 (K) Allianz Life Insurance | $40,000 | | |
| 401 (K) Allianz Life Insurance | $40,000 | **Charge Account** | |
| | $0 | Marshall Fields | $114,000 |
| | $80,000 | | |
| **Stock Ownership** | | | |
| 50% Owner | $3,600,000 | | |
| ABBE Management Group LLC | | | |
| ( FMV of Credit Card Processing Business) | | | |
| 50% Shareholders in | $1,800,000 | | |
| Sapphire Supply LLC | | | |
| (Gasoline Distribution Company | | | |

## PERSONAL FINANCIAL STATEMENT

**IMPORTANT : Read these directions before completing this Statement**

☐ If you are applying for individual credit in your own name and are relying on your own income or assets and not the income or assets of another person as the basis for repayment of the credit requested, complete Section 1 and Section 2 and continue

☒ If you are applying for joint credit with another person, complete all Sections providing information in Section 2 about the joint applicant
We intend to apply for joint credit

| Satannreet K. Mullani | Sudnder P. Mullani |
|---|---|
| Applicant | Co- Applicant |

☐ If you are applying for individual credit but are relying on income from alimony, child support or separate maintenance or on the income or assets of another person as a basis for repayment of the credit requested complete all Sections, providing information in Section 2 about the person upon whose alimony, child support, or maintenance payments or income or assets you are relying

| SECTION 1: INDIVIDUAL INFORMATION | | | SECTION 2 - OTHER PARTY INFORMATION | | |
|---|---|---|---|---|---|
| Name : | Satannreet Kaur Mullani | | Name : | Mr. Sukhdar Mullani | |
| Residence Address:24 Bright Ridge Drive | | | Residence Address:24 Bright Ridge Drive | | |
| City, State & Zip: Schaumburg, IL - 60194 | | | City, State & Zip: Schaumburg, IL - 60194 | | |
| Position or Occupation: Partner | | | Position or Occupation: | | |
| Business Name: | | | Business Name: | | |
| Business Address: | | | Business Address: | | |
| City, State & Zip: | | | City, State & Zip: | | |
| Res Phone: | | Bus Phone : | Res Phone: | | Bus Phone : |
| Drivers License No : | | State IL | Drivers License No: | | State IL |
| Date Issued : 7/12/2004 | | | Date Issued : 09/03/04 | | |
| Expiration Date : 01/30/09 | | | Expiration Date : 09/07/06 | | |

| SECTION 3 - STATEMENT OF FINANCIAL CONDITION AS OF | | 20 | | | |
|---|---|---|---|---|---|
| ASSETS | | In Dollars (Omit Cents) | LIABILITIES | | In Dollars (Omit Cents) |
| Cash on hands and in banks | $ | 275,300 | Notes Payable to Banks - Secured | | |
| U.S. Govt & Marketable Securities | $ | | Notes Payable to Banks- Unsecured | | |
| Non Marketable Securities | | | Due to Brokers | | |
| Securities Held by Broker | | | Amounts Payable to others - Secured | $ | 67,000 |
| Restricted or Control Accounts | | | Amounts Payable to others - Unsecured | $ | 84,000 |
| Partial Interest in Real Estate Equities | | | Accounts and bills due | | |
| Real Estate Owned | $ | 2,300,000 | Unpaid Income Tax | | |
| Loans Receivable | $ | 235,000 | Other Unpaid taxes and interest | | |
| Automobiles and Personal Property | $ | 104,000 | Real Estate mortgage payable | $ | 1,203,000 |
| Cash Value - Life Insurance | $ | 12,000 | Other Debts | | |
| Other Assets | | | | | |
| | | | Charge Accounts | $ | 95,000 |
| Retirement Accounts | $ | 80,000 | | | |
| Furniture and Jewellery | | 760,000 | | | |
| Interest in Companies | $ | 5,000,000 | Total Liabilities | $ | 1,459,000 |
| | | | Net Worth | | 7,497,300 |
| Total Assets | $ | 8,866,300 | Total Liabilities and Net Worth | $ | 8,866,300 |

| SOURCES OF INCOME FOR YEAR END 2008 | | | PERSONAL INCOME |
|---|---|---|---|
| Salary, bonuses & commissions | $ | 155,400 | Do you have a will? Yes. If so, name of executor |
| Dividends | | | |
| Real Estate Income | | | |
| Other Income : | | | Are you a partner or officer in any other ventures ? |
| (Alimony, Child Support etc.) | | | |
| Distribution from companies | $ | 310,311 | Are you obliged to pay alimony, child support or separate maintenance payments ? |
| | | | N/A |
| Total | $ | 465,711 | Are any assets pledged other than as described on Schedule |
| CONTINGENT LIABILITIES | | | |
| Do you have contingent liabilities ? If so describe | | | Income Tax settled through date _____ |
| | | | |
| As endoser, co-maker or guarantor? | | | Are you a defendant in any suits or legal actions |
| On lease or contract? | | Auto Lease | N/A |
| Legal Claims | | | |
| | | | Personal bank accounts carried at : |
| | | | American Chartered Bank, CitiBank |
| | | | Have you ever been declared bankrupt ? If so describe. |
| | | | N/A |

### SCHEDULE A - U.S. GOVERMENTS & MARKETABLE SECURITIES

| Number of Shares or Face Value ( Bonds ) | Description | In Name of | Are These Pledged? | Market Value |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

### SCHEDULE B - NON MARKETABLE SECURITIES

| Number of Shares | Description | In Name of | Are these Pledged? | Source of Value? | Value |
|---|---|---|---|---|---|
| N/A | Promissory Note - Excellent Petroleum | | N/A | | $ 165,000 |
| N/A | Promissory Note - Sidra Inc | | N/A | | $ 70,000 |
| N/A | Promissory Note - Himanshu Patela | | N/A | | |
| | | | | | |

### SCHEDULE C - PARTIAL INTEREST IN REAL ESTATE EQUITIES

| Address & Type of Property | Title-Owner | % of Ownership | Date Acquired | Cost | Market Value | Mortgage Maturity | Mortgage Amount |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

### SCHEDULE D - REAL ESTATE OWNED

| Address & Type of Property | Title-Owner | Date Acquired | Cost Acquired | Market Value | Mortgage Maturity | Mortgage Amount |
|---|---|---|---|---|---|---|
| 24 Bright Ridge Drive Schaumburg, IL - 60194 | S.P. Singh and Safanpreet Kaur | 1/1 | $ 1,670,000 | $ 2,200,000 | LOC LOC | $ 1,200,000 $ 95,000 |

### SCHEDULE E - LIFE INSURANCE CARRIED, INCLUDING N.S.L.I. AND GROUP INSURANCE

| Name of Insurance Comp | Owner of Policy | Beneficiary | Face Amount | Policy Loans | Cash Surrender Value |
|---|---|---|---|---|---|
| New York Life | S.P. Singh - Whole | Safanpreet Kaur | $ 105,000 | | $12,000 |
| New York Life | S.P. Singh - Term | Safanpreet Kaur | $ 1,000,000 | | N/A |
| Jackson National Life | S.P. Singh - Term | Safanpreet Kaur | $ 1,000,000 | | N/A |

| Jackson National Life | S.P. Singh - Term | S.P. Singh | $ 1,000,000 | | N/A |
|---|---|---|---|---|---|

### SCHEDULE F - BANKS OR FINANCE COMPANIES WHERE CREDIT HAS BEEN OBTAINED

| Name and Address of Lender | Credit in the name of | Secured or Unsecured | Original Date | High Credit | Current Balances |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

The information contained in this statement is provided for the purposes of obtaining or maintaining credit with you on behalf of the undersigned , or persons, firms or corporations in whose behalf the undersigned may either severally or jointly with others , execute a gauranty in favor . Each undersigned understands that you are relying on the information provided herein in deciding to grant or continue credit. Each undersigned represents and warrants that the information provided is true and complete and that you may consider this statement as continuing to be true and correct until a written notice of a change is given to you by the undersigned. You are authorized to make all inquires you deem necessary to verify the accuracy of the statements made herein, and to determine my/our credit worthiness. You are authorized to answer questions about your credit experience with me/us.

Date Signed _01 - 01 - 07_

Signature (Individual) _Sehanpreet Kaur_

S.S. No _____ Date of Birth _____

Signature (Other Party) _____

S.S. No _____ Date of Birth _____

Supplement to Personal Financial Statement

| ASSETS | Amount | LIABILITIES | Amount |
|---|---|---|---|
| Automobiles | | Automobiles (Secured Notes) | |
| Range Rover 2005 | $ 68,000 | Range Rover 2005 | $ 43,000 |
| Mercedes S500 2003 | $ 36,000 | BMW 325IX | $ 24,000 |
| Total | $ 104,000 | Total | $ 67,000 |
| Other Assets | | Credit Card Payables | |
| Furniture and Household Effects | $ 600,000 | Chase | $ 11,000 |
| Jewelry | $ 180,000 | Citibank | $ 1,100 |
| | | MBNA | $ 7,400 |
| Total | $ 780,000 | MBNA | $ 7,500 |
| | | Discover | |
| | | Chase | $ 7,000 |
| | | Total | $ 34,000 |
| Retirement Accounts | | | |
| 401 K Allianz Life Insurance | $ 40,000 | Charge Account | |
| 401 K Allianz Life Insurance | $ 40,000 | Marshall Field | $ 95,000 |
| Total | $ 80,000 | | |

Stock Ownership

50 % Owner                          $ 3,500,000
abc Corp
( FMV of Credit Card Processing Business )

50% Shareholders in              $ 1,600,000
Sapphire Supply LLC
(Gasoline Distribution Company)

Nov 24 06 04:42p    ━━━    000000000000    p.5

U.S. Service-Center    014
PO Box 769013
San Antonio, TX 78245-9013

000    000008F10E0Y14
CITIBANK, F.S.B.
Account

SURINDER P MULTANI
SAFANPREET K MULTANI
24 BRIGHTRIDGE DR
SCHAUMBURG IL    60194-3696

Statement Period
Oct. 4 – Nov. 2, 2006

Page 1 of 2

## CITIBANK ACCOUNT SUMMARY:

| | |
|---|---|
| Checking | $ 213,810.51 |
| Savings | — |
| Investments (not FDIC insured) | — |
| Loans | $0.00 |
| Credit Cards | — |

Earn cash back with the Citi® Dividend Platinum Select® Card! Get 0% APR on balance transfers until 12/18/07. A low 13.24% APR thereafter. For more information, see enclosed insert. To apply, call 1-800-613-0947 and start saving. (please reply by 11/18/07) *Citi® Dividend Platinum Select® Card is issued by Citibank (South Dakota), N.A.*

| Checking | | | Balance |
|---|---|---|---|
| Regular Checking | | | $ 213,810.51 |

| Loans | Credit Line | Amount Available | Amount You Owe |
|---|---|---|---|
| Checking Plus  (as of 11/02/06) | $1,500.00 | $1,500.00 | $0.00 |

On October 1, 2006, Citibank, FSB; Citibank Texas, N.A.; and Citibank (West), FSB, will merge with and into Citibank, N.A. With this merger, your accounts will be with Citibank, N.A.

As of November 30, 2006, Citibank, N.A. will no longer offer World Wallet® Drafts for purchase. For more information, please use the contact information listed on this statement.

Domestic Citibank® Global Transfers are now FREE. Transfer at selected ATMs or Citibank Online to another Citibank account you have or to someone else's Citibank account anywhere in the U.S.

Nov 24 06 04:41p                                                                00000000000                        p.3

U.S. Service Center #44
PO Box 790113
San Antonio, TX 78245-9873

STEPHANIE P KOVALSKY
DEPARTMENT K MANAGEMENT
2X [          ] ODGES DR
SCHAUMBURG IL

60194-3695

00: CITIBANK, F.S.A. Account

Statement Period
Sept. 6 - Oct. 3, 2006

Page 1 of 2

**CITIBANK ACCOUNT SUMMARY:**

| | |
|---|---|
| Checking | $213,706.60 |
| Savings | |
| Investments (not FDIC insured) | |
| Loans | $0.00 |
| Credit Cards | |

As a valued Citibank customer, get a great rate and the rewards you want with the Citi PremierPass® Card! To apply for this Citi Card product and start earning rewards right away, (please reply by 11/15/06). Citi PremierPass cards are issued by Citibank (South Dakota), N.A.

| Checking | Credit Line | Amount Available | Balance |
|---|---|---|---|
| Regular Checking | | | $213,706.60 |
| Checking Plus (as of 10/03/06) | $1,500.00 | $1,500.00 | |
| Loans | | Amount You Owe | $0.00 |

On October 1, 2006, Citibank, FSB; Citibank (Texas), N.A.; and Citibank (West), FSB, will merge with and into Citibank, N.A. With this merger, your accounts will be with Citibank, N.A.

Low mortgage rates make big dreams possible.
If you are looking to buy a new home, refinance, or get cash back, there's no better time. To find the mortgage that's right for you, call 1-888-248-4684.

First Mortgage products are made available through CitiMortgage, Inc., an equal housing lender.

Print

Page 1

NOW ACCOUNT                          AMERICAN CHARTERED BANK                          6/26/2006 11:40:28 AM
Printed by: MELISSA SCHMULUT                                                          Reporting Institution: 20

## Demand Deposit : - SAFANPREET KAUR MULTANI

| | Rel | Birthdate | Phone | Tax Identification |
|---|---|---|---|---|
| [01] SAFANPREET KAUR MULTANI | P | | [H] (847) 490-0449 | SSN |
| [02] SURINDER P MULTANI | | | [B] (847) 593-8333 [H] (847) 437-2191 | SSN |
| 24 BRIGHT RIDGE DR | | | [B] (847) 593-8333 | |
| SCHAUMBURG IL 60194-3696 | | | | |

Tax Name: [1] SAFANPREET KAUR
MULTANI

## Account Classification
Portfolio:

Responsibility Code:                           SCHMULOT/AMBROSON/OLSON
Product:                    :    NOW ACCOUNT   Account Type Code:                  [100] INDIVIDUALS
Accounting Branch:

## Memo Balances

| | | | |
|---|---|---|---|
| Current Ledger Balance: | $98,723.00 | Current Reg CC Cash Available: | $98,723.00 |
| Plus Presentments: | $2,438.03 | Memo Available Balance: | $98,723.00 |
| Memo Ledger Balance: | $101,161.03 | | |

**EOD**    JUL 2 9 2003

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

-------------------------------------------------- x
|
In re:                                             |    Case No. 02-40045 (JHS)
                                                   |    Chapter 11
CLARK RETAIL ENTERPRISES, INC., a                  |    (Jointly Administered with
Delaware corporation; and CLARK RETAIL             |    Case No. 02-40046 (JHS))
GROUP, INC., a Delaware corporation                |    Hon. John H. Squires
                                                   |
        Debtors.                                   |    [This Pleading Applies To Both Cases]
                                                   |
                                                   |
                                                   |    Hearing Date: July 28, 2003
                                                   |    Hearing Time: 2:00 p.m. (Prevailing Central Time)
|
-------------------------------------------------- x

### DECLARATION OF SURINDER MULTANI IN SUPPORT OF CLARK RETAIL ENTERPRISES, INC.'S MOTION TO APPROVE THE SALE AND ASSUMPTION OF CERTAIN LEASED AND FEE PROPERTIES TO SELECTED ASSIGNEES

I, Surinder Multani, declare as follows:

1.      I am over the age of 18 years and if called as a witness I would testify to the following matters based upon my own personal knowledge.

2.      I am a director/shareholder of Baker Energy, Inc. ("Baker") and make this declaration (the "Declaration") on behalf of Baker, in support of the "Emergency Motion For Order Under 11 U.S.C. §§ 105, 363, 365, And 1146(c) And Fed. R. Bankr. P. 2002, 6004 And 6006: (A) Approving Bidding Procedures; (B) Scheduling Sale Hearing; (C) Approving Sale Of Real Estate Assets; (D) Approving The Assumption, Assignment, And Sale Of Debtor's Interest Under Certain Leases; (E) Approving The Termination Of Certain Leases; And (F) Granting Related Relief" (the "Sale Motion") filed by Clark Retail Enterprises, Inc. ("CRE," and together with Clark Retail Group, Inc., the "Debtors"), debtor and debtor in possession in the above-captioned chapter 11 cases. I have personal knowledge of the matters set forth herein.

197827.1

Exhibit E

3. Baker was made aware of the auction of certain stores operated by the Debtors being conducted by National Real Estate Clearinghouse ("NREC") and elected to participate in the auction by submitting a bid by the bid deadline for forty-seven (47) stores.

4. Pursuant to its bid, Baker is seeking the assignment to Baker from CRE of: (i) that certain Master Lease by and between GD Deal Holdings, LLC ("GD"), Landlord and CRE, Tenant, dated April 19, 2001; (ii) that certain Master Equipment and Personal Property Lease by and between GD, as lessor, and CRE, as lessee, dated April 19, 2001; (iii) nine leases relating to stores 2252, 2258, 2260, 2265, 2269, 2273, 2277, 2305 and 2306 (the "Nine Third-Party Leases"); and (iv) that certain Master Equipment and Personal Property Lease by and between Girkin Development, LLC, lessor and CRE, lessee, dated April 19, 2001 (as it relates to the Nine Third-Party Leases) (collectively, the "GD Leases").

5. In connection with its bid, Baker submitted certain documents regarding its financial position, and that of its principals, including the Balance Sheet and Resume of Surinder Multani (see Exhibit "A" annexed hereto).

6. Exhibit "A" annexed hereto is true and correct and presents an accurate and complete financial disclosure of my personal financial condition.

7. I will execute a personal guaranty "unconditionally, absolutely and continuingly" guarantying the prompt payment of all of the liabilities under the GD Leases. A form of the Guaranty is annexed hereto as Exhibit "B."

I declare under penalty of perjury that the foregoing Declaration is true and correct.

Executed on July ___, 2003, at Chicago, Illinois.

_____
Surinder Multani

2

# EXHIBIT A

# SURINDER MULTANI

### 3015 S. ARLINGTON HEIGHTS RD.
### ARLINGTON HEIGHTS, IL, 60005
### (847) 593-8333

***Objective*** *To achieve success in the Petroleum/Convenient Store, Restaurant Industries and Real Estate holdings and investments.*

## *Qualifications*

- *Over a thirteen of experience in the hospitality industry, truck plaza and gas stations/ convenience stores industry.*
- *More than thirteen of experience in Real Estate sale/purchase, holding, managing and investments.*
- *Effective bilingual communications skills, both written and verbal*
- *Strong hiring and training skills*
- *Ability to coordinate multi-faceted tasks involving managing a chain of large motels, truck plazas and multiple gas stations.*
- *Underwrote qualified transactions including cash flow, collateral/management evaluation, market analysis and personal/business credit reports.*

## *Education*

**1998-1999**      *Certificate of training in Real Estate Management*

**1986-1989**      *Masters in Public Administration, University of Punjab*
                   *Major in Hotel Management, Business Management and Minor in Restaurant Management.*

**1984-1986**      *Masters in Computer Science, University of Punjab*

## *Experience*

**2002(April)-Present**      *Managing Director, ABBE Management , Arlington Heights, IL*
                             *Overseeing Property and Business Management of multi unit gas stations within the United States.*

**2002(April)-Present**      *Managing Director, ABBE Properties, Arlington Heights, IL*
                             *Serve as a key member in managing, holding and investments in Real Estate properties consisting of multi business establishments.*

**2001-Present**      *Managing Partner, Superior Gas Inc., Quad City, IA*
                      *Serve as a key member in managing over 70 units of Gas Stations.*

**2001-Present**   *Sunrise Petro Inc., Arlington Heights, IL*
*Managing and serving as a key member in the business operations of*
*multi units of convenience stores gas stations and restaurants.*

**1998-Present**   *CEO, Abacus Finance, Inc., Arlington Heights, IL*
*Financial partner in capital planning and raising capital. Providing*
*Executive leadership, financial strategies and the management of*
*financial resources to ensure achievement of business plans and*
*objectives for the company. Established a successful clientele in real*
*estate management and investment sector.*

**1998-Present**   *Managing Partner, SSJG Petroleum Inc., Quad City, IA*
*Serve as a key member of the company's executive group and manage*
*the financial functions for the company during the time of strong*
*expansion.*

**1998-Present**   *Managing Partner, JVS Petro Inc., Oakwood, IL*
*Manage and take active role in all the financial functions and*
*participating in the programs which enhance the growth of the company.*

**1995-1999**   *Managing Partner, 3 Comfort Inn Suites and 1 Economy Inn of*
**America,**
                                        ***Merrillville, IN***
*Managed the chain of 4 motels by overseeing all the operations of motels*
*including hiring, accounts and daily cash flow.*

**1995-1999**   *Managing Partner, G S Portage Inc. (D/B/A ZIP FOODS*
                      *CONVENIENCE STORE), Portage IN*
*Managed, supervised and ran a convenience store with over 500 items in*
*inventory.*

**1989-1995**   *Managing Partner, Duswand Impex Exports and Imports, Germany*
*Managed my fathers business company in Germany. Worked with my*
*father and supervised the complete management staff of 12 employees.*
*Also managed the complete functioning of the company including*
*accounting, human resources and marketing.*

Corporations/Sole Proprietorships/LLCP-artnerships Owned by Surinder Mulhani

Balance Sheet as on October 31, 2002

| | Atba Management Group | Abacus Finance, Inc. | Sapphire Supply | Superior Gas, Inc. | ABDE Leasing & Equipment | Sunrise Petro, Inc. | JVS Petro | SS/JG Petroleum | Total |
|---|---|---|---|---|---|---|---|---|---|
| **Assets** | | | | | | | | | |
| **Current Assets** | | | | | | | | | |
| Carry on Hand | $ 197,323 | $ 1,345,882 | $ 119,882 | $ 175,205 | $ 122,655 | $ 685,147 | $ 185,299 | $ 109,699 | $ 2,221,896 |
| Cash in Bank | $ 281,589 | $ 1,345,378 | $ 346,585 | $ 356,855 | $ 378,911 | $ 345,678 | $ 372,588 | $ 248,951 | $ 4,143,799 |
| Total Current Assets | $ 678,185 | $ 2,910,911 | $ 486,417 | $ 471,823 | $ 501,303 | $ 672,605 | $ 463,287 | $ 478,801 | $ 5,335,075 |
| **Fixed Assets** | | | | | | | | | |
| Commercial Property | | $ 4,950,000 | $ 690,000 | $ 2,500,001 | $ 929,000 | $ 1,790,000 | $ 2,500,000 | $ 3,000,000 | $ 16,359,000 |
| Total Fixed Assets | | $ 4,950,000 | $ 680,000 | $ 2,600,000 | $ 929,000 | $ 1,790,000 | $ 2,800,000 | $ 3,000,000 | $ 16,330,000 |
| **Equipment** | | | | | | | | | |
| Automobiles | | $ 80,000 | | $ 115,000 | | | | | $ 195,000 |
| Business Assets | | | | | | | | | - |
| Commercial Equipment | $ 74,906 | $ 150,000 | $ 68,500 | $ 675,001 | $ 601,405 | $ 180,000 | $ 375,288 | $ 419,256 | $ 2,401,352 |
| **Total Assets** | $ 834,981 | $ 8,090,923 | $ 1,243,817 | $ 3,261,823 | $ 2,330,375 | $ 2,342,805 | $ 3,572,866 | $ 3,916,255 | $ 25,962,837 |
| | | | | | | | | | |
| **Equity & Liability** | | | | | | | | | |
| **Current Liabilities** | | | | | | | | | |
| Automobiles | | $ 45,000 | | $ 60,000 | $ 14,601 | | $ 1,330,000 | | $ 195,001 |
| Credit Cards | | $ 2,455 | | $ 1,296 | $ 4,895 | | $ 1,300,000 | | $ 89,300 |
| Total Current Liabilities | $ 45,447 | $ 47,425 | | $ 63,266 | | $ 515,000 | $ 1,330,000 | $ 1,325,001 | $ 191,687 |
| Long Term Liabilities | | $ 670,000 | $ 450,000 | $ 1,000,000 | $ 705,001 | | $ 1,300,000 | $ 1,600,000 | $ 2,895,000 |
| Notes Payable | $ 45,407 | $ 722,421 | $ 460,000 | $ 1,253,256 | $ 723,196 | $ 825,000 | $ 1,300,001 | $ 1,540,000 | $ 8,594,057 |
| Total Liabilities | $ 1,225,519 | $ 7,368,498 | $ 788,817 | $ 2,158,258 | $ 1,590,976 | $ 1,457,805 | $ 2,672,866 | $ 2,443,226 | $ 18,518,393 |
| Net Worth | | | | | | | | | |
| **Total Liabilities & Net Worth** | $ 1,290,198 | $ 8,090,981 | $ 1,243,817 | $ 3,261,523 | $ 2,330,378 | $ 2,342,805 | $ 3,572,866 | $ 3,816,255 | $ 18,518,437 |

# EXHIBIT B

**THIS PERSONAL GUARANTY** dated July 27, 2003 (the "Guaranty") is being attached as an addendum to that certain Purchase and Sale Agreement executed on _____, 2003 by Clark Retail Enterprises, Inc. and Baker Energy, Inc. This Guaranty is being offered by Rohit Sharma, Dr. Bhupinder Saini, Ramesh Kapur and Surinder Multani *(individually and collectively referred to as "Guarantor")*.

**WHEREAS**, Baker Energy, Inc. *("Tenant")* is assuming the following leases: (i) that certain Master Lease by and between GD Deal Holdings, LLC ("GD"), Landlord and CRE, Tenant, dated April 19, 2001; (ii) that certain Master Equipment and Personal Property Lease by and between GD, as lessor, and CRE, as lessee, dated April 19, 2001; (iii) nine leases relating to stores 2252, 2258, 2260, 2265, 2269, 2273, 2277, 2305 and 2306 (the "Nine Third-Party Leases"); and (iv) that certain Master Equipment and Personal Property Lease by and between Girkin Development, LLC, lessor and CRE, lessee, dated April 19, 2001 (as it relates to the Nine Third-Party Leases) (collectively, the "GD Leases").

**WHEREAS**, Guarantor is financially interested in Tenant and it is to Guarantor's direct advantage to enable Tenant to assume the Leases.

**NOW, THEREFORE**, in consideration of the foregoing, Guarantor agrees as follows:

1.      Guaranty. Guarantor unconditionally, absolutely and continuingly guarantees to the prompt payment *(in full)* of all "Liabilities" *(as defined herein)* associated with assuming the Leases. "Liabilities" shall be defined as all amounts due under the Leases, including all, interest, charges, fees and costs payable pursuant to the terms of the Lease. Guarantor agrees that it is directly and primarily liable, jointly and severally with Tenant, for the payment of the Liabilities. If more than one person is executing this Guaranty, the undersigned's liability under this Guaranty shall be joint and several.

2.      Representations and Warranties. Guarantor represents and warrants as follows: (a) Guarantor has the authority and power to execute this Guaranty and to consummate the transactions contemplated hereby; (b) this Guaranty is a valid and legally binding obligation of Guarantor and is enforceable against Guarantor in accordance with its terms; (c) the execution and delivery of this Guaranty is not in violation of any agreement or court order by which Guarantor is bound.

3.      Waivers. Guarantor waives: (a) all right to assert any claims and defenses based upon any failure of Guarantor to receive any information relating to Tenant's ability to pay the Liabilities; (b) to the extent permitted by law, Guarantor waives all other defenses, counterclaims and offsets of any kind or nature in connection with the validity and/or enforceability of this Guaranty.

4.      Default. The occurrence of any one of the following events shall constitute an "Event of Default" under this Guaranty: (a) if Guarantor fails to pay any of the Liabilities when due and payable or properly declared due and payable; (b) if Guarantor fails or neglects to perform, keep or observe any term, provision, condition, covenant, warranty or representation contained in this Guaranty, which is required to be performed, kept or observed by Guarantor;

(c) if a notice of lien, levy or assessment is filed of record or given to Guarantor with respect to Guarantor or any of its assets by any federal, state or local department agency; (d) if a petition under Title 11, United States Code or any similar law or regulation shall be filed by or against Guarantor, or if Guarantor shall make an assignment for the benefit of its creditors; (e) the death of Guarantor or if Guarantor attempts to cancel, revoke or disclaim this Guaranty.

5.    Miscellaneous.  This Guaranty shall continue in full force and effect until the Liabilities are paid and performed in full.  The headings in this Guaranty are inserted solely as a matter of convenience for reference, and shall not in any way affect the meaning or interpretation of any of the provisions of this Guaranty.  If any provision of this Guaranty or the application thereof to any party or circumstance is held invalid or unenforceable, reformation shall be first attempted and, if reformation is impossible, the remainder of this Guaranty and the application thereof to other parties or circumstances will not be affected thereby, the provisions of this Guaranty being severable in any such instance.  This Guaranty shall be binding upon, and shall inure to the benefit of, the parties hereto and their respective successors and assigns.  This Guaranty shall be governed by and construed and enforced in accordance with the laws of the State of Kentucky, without regard to its choice of laws rules.  All disputes concerning this Guaranty shall lay within the exclusive jurisdiction of courts sitting in the County of _____, Kentucky.  GUARANTOR WAIVES ALL RIGHTS TO TRIAL BY JURY FOR DISPUTES RELATED TO THIS GUARANTY.

**GUARANTOR:**

By:_____
   *Rohit Sharma*

By:_____
   *Ramesh Kapur*

By:_____
   *Dr. Bhupinder Saini*

By:_____
   *Surinder Multani*

**This addendum to the Purchase and Sale Agreement is agreed to inform and substance this _____ day of _____, 2003 by:**

Clark Retail Enterprises, Inc.                    Baker Energy, Inc.

By:_____                    By:_____

197828.1

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
CASE NUMBER 08-CV-1722

GD DEAL HOLDINGS, LLC                                                          PLAINTIFF

v.                                    **AFFIDAVIT OF SCOTT A. BACHERT**

SURINDER MULTANI, et al.                                                      DEFENDANTS

                                              ** ** **

Scott A. Bachert, being sworn, deposes and says:

1.     He is attorney for the Plaintiff, and makes this Affidavit in support of Plaintiff's

foregoing Motion for satisfaction of Plaintiff's money judgment against the debtor, Surinder Multani,

through a judicial sale of the debtor's real and personal property indentified in Plaintiff's Motion.

2.     On May 11, 2007, judgment was rendered in the action *GD Deal Holdings, LLC, et*

*al. v. Baker Energy, Inc., et al.*, Case Number 1:05-cv-00003-R, in the United States District Court

for the Western District of Kentucky, for Plaintiff's recovery from Surinder Multani of

$10,048,295.12, together with interest at the judgment rate of 4.9% per annum until paid.

3.     The judgment is subject to enforcement in that no order to stay enforcement has been

issued and no motion or supersedeas bond to effect a stay has been filed.  The judgment debtor has

made no arrangements to voluntarily pay the debt and has not made an offer to settle the debt.

4.     On September 4, 2007, Plaintiff registered the judgment in the United States District

Court for the Northern District of Illinois, Case Number 1:07-cv-04965, pursuant to Title 28, Section

1962 of the United States Code to effect attachment of the lien of judgment against the property of

the debtor that Plaintiff seeks to have subjected to judicial sale toward satisfaction of the judgment.

5.     On October 9, 2007, GD Deal Holdings, LLC filed a Memorandum of Judgment in

the real property records for the Office of the Cook County, Illinois Recorder of Deeds.

Exhibit F

6.    Surinder Multani is the record owner of the realty and personal property referred to in Plaintiff's Motion.

7.    The subjection of the property toward satisfaction of the Plaintiff's judgment by judicial sale in lieu of an execution sale would be in the interest of justice since it appears that the sale procedure provided by federal law would be more likely to obtain the full fair market value of the property than would the procedure required if an execution sale under the law of the State of Illinois or as the case may be.

8.    Based on Affiants information and belief derived from both financial statements regarding the judgment debtor's personal property and an appraisal of the judgment debtor's realty made by an appraiser on December 23, 2003 (copy attached hereto), sale of all of the property will be necessary to apply towards satisfaction of the judgment in that the appraised value of the property does not exceed the amount of the judgment debt at issue.

9.    The Defendants Surinder Multani and Safanpreet Multan have not filed any pleadings in this case.  To the best belief and knowledge of the Affiant, Surinder Multani and Safanpreet Multani are not minors, are under no legal disability, and are not members of the armed services.

This the 10th day of JUNE , 2008.

_____
SCOTT A. BACHERT

COMMONWEALTH OF KENTUCKY    )
                            )
COUNTY OF WARREN            )

Subscribed, sworn to and acknowledged before me by Scott A. Bachert, on this the 10th day of June , 2008.

_____
NOTARY PUBLIC
My Commission Expires: 1-22-2009



## APPRAISAL OF REAL PROPERTY

**LOCATED AT:**
24 Bright Ridge Dr
Lot 9 in Summerfield Estates Subdivision, Being Part...
Schaumburg, IL 60194

**FOR:**
Chicago Lending LTD
840 Shandrew Dr
Naperville, IL 60540

**AS OF:**
12/23/03

**BY:**
Paul M. Scarpelli, CREA

02/24/2004   03:30PM

Affidavit
Attachment

Omni Appraisals
638 Jonathan Court  Suite 107
Prospect Heights, IL 60070
847-520-5616

December 23, 2003

Chicago Lending LTD
640 Shandrew Dr
Naperville, IL 60540

Re: Property:    24 Bright Ridge Dr
                 Schaumburg, IL 60194
    Borrower:    Multani
    File No.:    03-12662

In accordance with your request, we have appraised the above referenced property.  The report of that appraisal is attached.

The purpose of this appraisal is to estimate the market value of the property described in this appraisal report, as improved, in unencumbered fee simple title of ownership.

This report is based on a physical analysis of the site and improvements, a locational analysis of the neighborhood and city, and an economic analysis of the market for properties such as the subject.  The appraisal was developed and the report was prepared in accordance with the Uniform Standards of Professional Appraisal Practice.

The value conclusions reported are as of the effective date stated in the body of the report and contingent upon the certification and limiting conditions attached.

It has been a pleasure to assist you.  Please do not hesitate to contact me or any of my staff if we can be of additional service to you.

Sincerely,

Paul M. Scarpelli, CREA

# One-Unit Residential Appraisal Field Review Report

File No. 03-12082

The purpose of this appraisal review is to verify the accuracy of the factual data and conclusions and to determine the reasonableness of the value opinion contained in the appraisal report under review. When the value is determined to be unreasonable, the review appraiser is required to develop and report his or her own opinion of value. The intended use of this report is for quality assurance for the lender/client and may be used as part of a state licensing or regulatory board referral.

| | | |
|---|---|---|
| Property Address  24 Bright Ridge Dr | City Schaumburg | State IL  Zip Code 60194 |
| Legal Description  Lot 9 in Summerfield Estates Subdivision, Being Part | | County Cook |
| Assessor's Parcel No.  07-23-102-021 | Map Reference PMSA 1600 | Census Tract 8046.04 |
| Borrower  Multani | Current Owner  Majestic Homes | |

Property rights appraised  [X] Fee Simple  [ ] Leasehold  | Project Type  [ ] Condo  [ ] PUD  [ ] Cooperative
Loan No. N/A  Effective Date of Original Appraisal  12/23/03  Manufactured Housing  [ ] YES  [X] NO

SCOPE OF WORK: In order to make a determination as to the reasonableness of the opinion of value, the review appraiser has, at a minimum, read the entire appraisal report under review, inspected the subject property and comparable sales described in the appraisal report from the street, inspected the neighborhood in which the subject is located, researched all appropriate data, verified the data in the appraisal report using all reliable sources, and assumed the property condition reported in the original appraisal is accurate unless there is evidence to the contrary.

If the review appraiser determines the opinion of value is unreasonable, he or she is required to provide an opinion of value. The review appraiser is not required to replicate the steps completed by the original appraiser. Those items in the original appraisal report that the review appraiser believes to be credible and in compliance with the applicable development standards of the Uniform Standards of Professional Appraisal Practice (USPAP) are extended to this report by the use of an extraordinary assumption, which is identified in Section III, Question 2. If the review appraiser determines the opinion of value is unreasonable, he or she must present additional data that has been researched and analyzed to produce a credible opinion of value in accordance with the applicable section of Standard 1 of the USPAP.

**Section I — Complete for all assignments**

1. Provide a sale/transfer and listing history for the subject property for a minimum of three years prior to the effective date of the original appraisal (if the information is available to the review appraiser in the normal course of business from a reliable source).

| Sale/Recording Date | Sales Price | List/Asking Price | Grantor/Grantee | Data Source |
|---|---|---|---|---|
| None/Past 36 Months | | | | ISI/MLSNI |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Analyze the sale/transfer history for the subject property and report its impact, if any, on the value opinion in the appraisal report under review. Subject is new construction and has no recent sales history. The NIMLS/ISI show no transfer of ownership with the past 36 months.

Did the appraisal report contain the appropriate prior sale(s) and/or prior listing(s) of the subject property and comparable sales?  [ ] YES  [X] NO - explain.  The appraiser was unable to verify the closing of the comparable sale #1 at 34 Bright Ridge Dr. No data was available from NIMLSftISI and Real Info. A sales contract was provided verified the Sales price of $1,000,000. Comparable sale #2's sales price was verified by a copy of the sales contract. No information was reported to MLSNI.

2. Is the data in the appraisal report factual and accurate?  [X] YES - provide a brief summary.  [ ] NO - explain and complete Section II.  Based on the exterior inspection the information appears accurate.

3. Is the final opinion of market value for the subject property reasonable as of the effective date of the appraisal under review?  [X] YES - provide a brief summary.  [ ] NO - explain and complete Sections II and III.  This is based on the information listed in the appraisal and the amenities that the subject has in comparison to the other sales. Sale #1 is similar in square footage and is next door to the subject. Sale #2 is also in the subject's subdivision but is 1400 square feet smaller and lacks the superior amenities and finishes that the subject appears to have.

**Section II — Complete only if review appraiser answers "No" to Section I, Questions 2 or 3**

1. Is the analysis of the neighborhood complete and accurate?  [ ] YES - provide a brief summary.  [ ] NO - explain.
N/A

2. Is the analysis of the site, including any apparent adverse site conditions and the highest and best use, complete and accurate?  [ ] YES - provide a brief summary.  [ ] NO - explain.  N/A

3. Are the specific zoning class, description, and compliance accurate?  [ ] YES - provide a brief summary.  [ ] NO - explain.
N/A

4. Is the data in the Improvements section complete and accurate?  [ ] YES - provide a brief summary.  [ ] NO - explain.
N/A

Omni Appraisals  (847)520-5616

Form FR3 — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

02/24/2004   03:30PM

5. Is the data presented in the approaches to value appropriate, accurate and correctly applied, including the individual adjustments in the sales comparison approach?  ☒ YES - provide a brief summary.  ☐ NO - provide a detailed explanation of the problem areas.

6. Are the comparable sales selected truly relevant to the subject property and the most reflective of the market area?
☒ YES - provide a brief summary.  ☐ NO - provide a detailed explanation as to why they are not the best comparables.
Due to this being new construction and at the very top of the price range, the comparable utilized were the best available.

**Section III — Complete only if the review appraiser answers "No" to Section I, Question 3**

1. Provide detailed reasoning for disagreement with the opinion of value in the original appraisal report.

2. State all extraordinary assumptions used (i.e. gross living area, room count, condition, etc.)  We are making the extraordinary assumption that the information regarding the interior of the subject is accurate and the square footage indicated is accurate.

3. Provide a new opinion of value as of the effective date of the original appraisal report using the sales grid below.
(NOTE:  This may or may not include the use of the same comparable sales in the original appraisal report.)

| FEATURE | SUBJECT | SALE 1 | | SALE 2 | | SALE 3 | |
|---|---|---|---|---|---|---|---|
| Address | 24 Bright Ridge Dr Schaumburg | | | | | | |
| Proximity to Subject | | | | | | | |
| Sales Price | $    1,541,194 | | $ | | $ | | $ |
| Price/Gross Living Area | $ | $ | | $ | | $ | |
| Data & Verification Sources | | | | | | | |
| VALUE ADJUSTMENTS | Description | Description | +(−)$ Adjustment | Description | +(−)$ Adjustment | Description | +(−)$ Adjustment |
| Sales or Financing Concessions | | | | | | | |
| Date of Sale/Time | | | | | | | |
| Location | | | | | | | |
| Site | | | | | | | |
| View | | | | | | | |
| Design (Style) | | | | | | | |
| Actual Age (Yrs.) | | | | | | | |
| Condition | Good | | | | | | |
| Above Grade | Total ¦ Bdrms ¦ Baths | Total ¦ Bdrms ¦ Baths | | Total ¦ Rooms ¦ Baths | | Total ¦ Bdrms ¦ Baths | |
| Room Count | 10 ¦ 6 ¦ 5.5 | | | | | | |
| Gross Living Area | Sq. Ft. | Sq. Ft. | | Sq. Ft. | | Sq. Ft. | |
| Basement & Finished Rooms Below Grade | | | | | | | |
| Garage/Carport | | | | | | | |
| Net Adj. (total) | | ☐+ ☐− $ | | ☐+ ☐− $ | | ☐+ ☐− $ | |
| Adjusted Sales Price of Comparables | | Net    % Gross  % $ | | Net    % Gross  % $ | | Net    % Gross  % $ | |

Provide a sale/transfer history for the above comparable sales for a minimum of three years prior to the effective date of the original appraisal (if the information is available in the normal course of business from a reliable source.)

Summary of Value Conclusion (including detailed support for the opinion of value and reasons why the new comparables are better than the sales used in the original appraisal report).

**REVIEW APPRAISER'S OPINION OF MARKET VALUE (required only if reviewer answered "No" to Section I, Question 3)**
My opinion of market value of the real property that is the subject of this report is $ 1,800,000
as of    12/28/03    , the effective date of the original appraisal report.

02/24/2004   03:30PM

## GUIDANCE FOR COMPLETING THE ONE-UNIT RESIDENTIAL APPRAISAL FIELD REVIEW REPORT

The appraisal review function is important to maintaining the integrity of both the appraisal and the loan underwriting processes. The following guidance is intended to aid the appraiser and client in the development of an appraisal review:

1. This One-Unit Residential Appraisal Field Review Report form may be used to report the results of a field review for a one-unit property, including individual units in condominium, cooperative, and PUD projects.

2. The review appraiser must, at a minimum:
   • have the technical and geographic competence to complete the appraisal review;
   • read the entire appraisal report under review;
   • inspect from the street the subject property and comparable sales described in the appraisal report;
   • inspect the neighborhood in which the subject property is located;
   • verify the data described in the appraisal report; and
   • research all data relevant to the property that is the subject of the review.

3. The review appraiser must be the individual who personally inspected, from the street, the property that is the subject of the appraisal review (unless otherwise indicated in this report that he or she completed an interior inspection) and the exterior of the comparables sales, performed the analysis, and prepared and signed the appraisal field review report.

4. The review appraiser must focus his or her comments on the appraisal report under review and not include personal opinions about the appraiser(s) who performed the original appraisal report.

5. The review appraiser must assume that the condition reported in the appraisal report is accurate unless there is evidence to the contrary.

6. Unless noted elsewhere in this appraisal review report, the lender/client has withheld the identity of the appraiser who prepared the appraisal report under review.

7. The One-Unit Residential Appraisal Review report is divided into three sections. Section I must be completed for all assignments. Section II must be completed if the answer to either Question 2 or 3 in Section I is "NO". Section III must be completed only when the answer to Question 3 in Section I is "NO".

8. The review appraiser must provide a sale/transfer and listing history of the subject property for a minimum period of three years, if the information is available from a reliable source. The review appraiser is expected to report ALL listings, sales, and/or transfers that took place during the three-year time frame prior to the effective date of the appraisal under review. In non-disclosure states the transfer history should be provided. The review appraiser must analyze the sales transfer data and report the effect, if any, on the value conclusions in the original appraisal report.

9. The review appraiser must form an opinion about the overall accuracy and quality of the factual data in the original appraisal report. The objective is to determine whether material errors exist and what effect they have on the opinions and conclusions in the appraisal report. When the review appraiser agrees that the factual data is essentially correct (although minor errors may exist), he or she must summarize the overall findings. Identification of any minor deficiencies and the review appraiser's statement of the effect on the value opinion should be included. When the review appraiser determines that material errors exist in the factual data, he or she must identify them, comment on their overall effect on the opinions and conclusions in the appraisal report, and complete Section II.

10. The review appraiser, after completing appropriate research, must determine whether the opinion of market value is reasonable and supported by market evidence. Because appraisers' opinions can vary, the review appraiser must have conclusive evidence that the value opinion is unreasonable. When the review appraiser determines that the opinion of value in the original appraisal report is reasonable, he or she must summarize the overall findings, including identifying minor value-related issues that do not affect the value conclusion. When the review appraiser disagrees with the opinion of value, he or she must complete Sections II and III.

11. The questions in Section I are intended to identify both the positive and negative elements of the original appraisal and to detail deficiencies. The review appraiser must make it clear to the reader the effect the deficiencies have on the opinions and conclusions in the appraisal report. Simple "YES" and "NO" answers are unacceptable.

12. The review appraiser must explain why the comparable sales in the original appraisal should not have been used.

13. The review appraiser must provide specific, supportable reasons for disagreeing with the opinion of value in the original appraisal report.

14. The review appraiser must identify the extraordinary assumptions that were necessary in order to arrive at his or her opinion of market value. Extraordinary assumptions include the use of information from the original appraisal report that the review appraiser concludes is credible (such as an assumption that the reported condition of the subject is correct).

15. The review appraiser must include the rationale for using new comparable sales. The following question must be answered: Why are these sales better than the sales in the original appraisal report?

16. The new comparable sales provided by the review appraiser and reported in the sales comparison grid must have closed on or before the effective date of the appraisal report under review. It may be appropriate to include data that the original appraiser did not have available as of the effective date of the original value opinion. However, this information should only be reported as "supplemental" to the data that would have been available to the original appraiser.

17. The review appraiser must provide a sale/transfer history of the new comparable sales for a minimum of three years (if the information is available in the normal course of business from a reliable source). The review appraiser must analyze the sale/transfer data and report the effect, if any, on the review appraiser's value conclusion.

18. An appraisal review of an individual unit in a condominium, cooperative, or PUD project requires the review appraiser to analyze the project information in the appraisal report and to report this information by using addenda when necessary.

19. The review appraiser is required to provide a new opinion of market value only when he or she answers "NO" to Section I, Question 3.

20. The review appraiser's opinion of market value must be "as of" the effective date of the original appraisal report.

02/24/2004   03:30PM

## STATEMENT OF LIMITING CONDITIONS

1. The review appraiser will not be responsible for matters of a legal nature that affect either the property that is the subject of the appraisal review or the title to it. The review appraiser assumes that the title is good and marketable and, therefore, will not render any opinions about the title. The property is reviewed on the basis of it being under responsible ownership.

2. The review appraiser has noted in the review appraisal report any adverse conditions (such as, but not limited to, needed repairs, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the normal research involved in performing the appraisal review. Unless otherwise stated in the appraisal report, the review appraiser has no knowledge of any hidden or unapparent conditions of the property or adverse environmental conditions (including the presence of hazardous wastes, toxic substances, etc.) that would make the property more or less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, expressed or implied, regarding the condition of the property. The review appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the review appraiser is not an expert in the field of environmental hazards, the appraisal review report must not be considered as an environmental assessment of the property.

3. The review appraiser obtained the information, estimates, and opinions that were expressed in the appraisal review report from sources that he or she considers to be reliable and believes them to be true and correct. The review appraiser does not assume responsibility for the accuracy of such items that were furnished by other parties.

4. The review appraiser will not disclose the contents of either the appraisal report or the appraisal review report except as provided for in the Uniform Standards of Professional Appraisal Practice.

## CERTIFICATIONS
I certify that, to the best of my knowledge and belief:

1. I reported and used in the review process facts and data that are true and correct.

2. I have the technical and geographic competence to complete the appraisal review, read the entire appraisal report under review, inspected the neighborhood in which the subject property is located, verified the data described in the original appraisal report, and researched all data relevant to the property that is the subject of this review.

3. I stated in the appraisal review report only my personal, unbiased, and professional analyses, opinions, and conclusions, which are subject only to the contingent and limiting conditions specified in this form.

4. I have no present or prospective interest in the property that is the subject of this appraisal review report and I have no present or prospective interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or the opinion of market value (if any) in the appraisal review report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

5. I was not required to report a predetermined value or direction in value that favors the cause of the client or any related party, the amount of the value opinion, the attainment of a specific result, or the occurrence of a subsequent event in order to receive my compensation and/or employment for performing the appraisal review. I did not base the appraisal review report on a required minimum valuation, a specific valuation, or the need to approve a specific mortgage.

6. I developed my analyses, opinions, and conclusions and prepared this report in conformity with the Uniform Standards of Professional Appraisal Practice.

7. I personally inspected the subject property from the street (unless I have otherwise indicated in this report that I completed an interior inspection) and the comparable sales described in the appraisal report.

8. I personally prepared all conclusions and opinions about the real estate that were set forth in the appraisal review report. I further certify that no one provided significant professional assistance to me in the development of this appraisal review report.

| REVIEW APPRAISER: | |
|---|---|
| Signature: | |
| Name: | Paul M. Scarpelli, CREA |
| Company Name: | Omni Appraisals |
| Company Address: | 838 Jonathan Ct Suite 107 |
| Telephone Number: | 847-520-5615 |
| E-mail Address (if available) | omniappraisals@comcast.net |
| Date of Report/Signature | 12/24/03 |
| State Certification # | 186.0001095 |
| or State License # | |
| State | IL |
| Expiration Date of Certification or License | 9/30/2005 |
| Reviewer's Opinion of Market Value $ | 1,000,000 (if the review appraiser answered "NO" to Question 3, Section I) |
| Effective Date of Original Appraisal | 10/23/2003 |

| LENDER/CLIENT: | Chicago Lending |
|---|---|
| Name | Adrian |
| Company Name | Chicago Lending LTD |
| Company Address | 840 Shendraw Dr |
| | Naperville, IL 60540 |

| ORIGINAL LENDER/CLIENT OF THE APPRAISAL REPORT UNDER REVIEW: | |
|---|---|
| Name | |
| Company Name | Chicago Lending LTD |
| Company Address | 840 Shendraw Dr |
| | Naperville, IL 60540 |

Freddie Mac Form 1032   12-2002      PAGE 4 OF 4      Fannie Mae Form 2000   12-2002

Form FR3 — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

02/24/2004   03:30PM

## Subject Photo Page

| Borrower/Client  Multani | | | | |
|---|---|---|---|---|
| Property Address  24 Bright Ridge Dr | | | | |
| City  Schaumburg | County  Cook | State  IL | Zip Code  60194 | |
| Lender  Chicago Lending LTD | | | | |



**Subject Front**

| | |
|---|---|
| 24 Bright Ridge Dr | |
| Sales Price | 1,041,104 |
| Gross Living Area | |
| Total Rooms | 10 |
| Total Bedrooms | 5 |
| Total Bathrooms | 6.5 |
| Location | |
| View | |
| Site | |
| Quality | |
| Age | |



**Subject Rear**



**Subject Street**

Form PICPIX.SR — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

02/24/2004   03:30PM

**Location Map**

| Borrower/Client | Multani | | | | | |
| Property Address | 24 Bright Ridge Dr | | | | | |
| City | Schaumburg | County | Cook | State | IL | Zip Code | 60194 |
| Lender | Chicago Lending LTD | | | | | |



Form MAP.LOC — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

02/24/2004    03:30PM

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what they considers their own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale.

**SCOPE OF REVIEW:** The scope of this review is limited to the information being provided by the original appraiser, form an opinion as to the apparent adequacy and relevance of the data and the propriety of any adjustments to the data; form and opinion as to the appropriateness of the appraisal methods and techniques used and develop the reasons for any disagreement; form an opinion as to whether the analyses, opinions, and conclusions in the report under review are appropriate and reasonable, and develop the reasons for any disagreement.

## CERTIFICATION AND STATEMENT OF LIMITING CONDITIONS

**CERTIFICATION:** The reviewer certifies and agrees that, to the best of his/her knowledge and belief:

1. The facts and data reported by the Reviewer and used in the review process are true and correct.

2. The analyses, opinions, and conclusions in this review report are limited only by the assumptions and limiting conditions stated in this review report, and are my personal, unbiased professional analyses, opinions, and conclusions.

3. Unless stated elsewhere, I have no present or prospective interest in the property that is the subject of this report and I have no personal interest or bias with respect to the parties involved.

4. My compensation is not contingent on an action or event resulting from the analyses, opinions, or conclusions in, or the use of, this review report.

5. My analyses, opinions, and conclusions were developed and this review report was prepared in conformity with the Uniform Standards of Professional Appraisal Practice.

6. Unless stated elsewhere in this report, I did not personally inspect the exterior subject property.

7. No one provided significant professional assistance to the person signing this review report.

**CONTINGENT AND LIMITING CONDITIONS:** The certification of the Reviewer appearing in the review report is subject to the following conditions and to such other specific and limiting conditions as are set forth by the Reviewer in the review report.

1. The Reviewer assumes no responsibility for matters of a legal nature affecting the property which is the subject of this review or the title thereto, nor does the Reviewer render any opinion as to the title, which is assumed to be good and marketable.

2. The Reviewer is not required to give testimony or appear in court because of having made the review, unless arrangements have been previously made therefor.

3. The Reviewer assumes that there are no hidden or unapparent conditions of the property, subsoil, or structures, which would render it more or less valuable. The Reviewer assumes no responsibility for such conditions, or for engineering which might be required to discover such factors.

4. Information, estimates, and opinions furnished to the Reviewer, and contained in the review report, were obtained from sources considered reliable and believed to be true and correct. However, no responsibility for accuracy of such items furnished the Reviewer can be assumed by the Reviewer.

5. Disclosure of the contents of the report is governed by the Uniform Standards of Professional Appraisal Practice and the Bylaws and Regulations of the professional appraisal organizations with which the Reviewer is associated.

6. Neither all, nor any part of the content of the review report, or copy thereof (including the conclusions of the review, the identity of the Reviewer, professional designations, reference to any professional appraisal organizations, or the firm with which the Reviewer is connected), shall be used for any purpose by anyone but the client specified in the review report, its successors and assigns, professional appraisal organizations, any state or federally approved financial institution, any department, agency, or instrumentality of the United States or any state or the District of Columbia, without the previous written consent and approval of the Reviewer.

7. No change of any item in the review report shall be made by anyone other than the Reviewer and the Reviewer shall have no responsibility for any such unauthorized change.

**APPRAISER:**                                    **SUPERVISORY APPRAISER (only if required):**

| | |
|---|---|
| Signature: _Paul L. Scarpelli_ | Signature: _____ |
| Name: _Paul M. Scarpelli, CREA_ | Name: _____ |
| Date Signed: _12/24/03_ | Date Signed: _____ |
| State Certification #: _166.0001055_ | State Certification #: _____ |
| or State License #: _____ | or State License #: _____ |
| State: _IL_ | State: _____ |
| Expiration Date of Certification or License: _9/30/2005_ | Expiration Date of Certification or License: _____ |

☐ Did    ☐ Did Not Inspect Property

IN THE UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF ILLINOIS

GD Deal Holdings, LLC

vs.    Surinder Multani, et al.

Case Number    08 CV 1722

### AFFIDAVIT OF SERVICE

I, Ronald Steffens, being first duly sworn on oath deposes and states that I am over the age of 18 years and not a party to this action, and on the 11 day of April, 2008, at 08:15 PM at 24 Bright Ridge, Schaumburg, IL 60194, did serve the following document(s):

**Summons and Complaint**

Upon:    **Surinder Multani**

By:    ☑ Personally serving to:    Surinder Multani

☐ leaving copies at the usual place of abode with:

a member of the household 13 years or upwards and informed that person of the contents thereof

☐ by mailing copies of said document(s) in a sealed envelope with postage fully prepaid to the defendant:

at 24 Bright Ridge, Schaumburg, IL 60194 on

| Description: | Sex | **Male** | Race | **Middle Eastern** | Approximate Age | **56** |
|---|---|---|---|---|---|---|
| | Height | **5'10** | Weight | **160** | Hair Color | **Black** |

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this affidavit of service are true and correct.

Further the Affiant Sayeth Naught:

Ronald Steffens
United Processing, Inc.
55 West Wacker Drive, 9th Floor
Chicago, IL  60601
IL License #117-001101

Exhibit G

IN THE UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF ILLINOIS

GD Deal Holdings, LLC

vs.

Surinder Multani, et al.

Case Number    08 CV 1722

### AFFIDAVIT OF SERVICE

I, Ronald Steffens, being first duly sworn on oath deposes and states that I am over the age of 18 years and not a party to this action, and on the 11 day of April, 2008, at 08:15 PM at 24 Bright Ridge, Schaumburg, IL 60194, did serve the following document(s):

**Summons and Complaint**

Upon:  **Sanranpreet Multani**

By:  ☑ Personally serving to:  Surinder Multani

☐ leaving copies at the usual place of abode with:

a member of the household 13 years or upwards and informed that person of the contents thereof

☐ by mailing copies of said document(s) in a sealed envelope with postage fully prepaid to the defendant:

at 24 Bright Ridge, Schaumburg, IL 60194 on

| Description: Sex | **Male** | Race | **Middle Eastern** | Approximate Age | **56** |
|---|---|---|---|---|---|
| Height | **5'10** | Weight | **160** | Hair Color | **Black** |

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this affidavit of service are true and correct.

Further the Affiant Sayeth Naught:

Ronald Steffens
United Processing, Inc.
55 West Wacker Drive, 9th Floor
Chicago, IL  60601
IL License #117-001101

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
CASE NUMBER 08-CV-1722

GD DEAL HOLDINGS, LLC                                               PLAINTIFF

V.

SURINDER MULTANI, et al.                                        DEFENDANTS

## ORDER OF SALE OF REAL AND PERSONAL PROPERTY
## FOR SATISFACTION OF MONEY JUDGMENT

This matter came before the Court on the Plaintiff's Motion for Order of Sale and the Plaintiff's request for an order directing satisfaction of a money judgment recovered by Plaintiff against Surinder Multani by a public judicial sale of Surinder Multani's below-described real property and personal property.

Based on the records and files in this action, and the Court being otherwise sufficiently advised, it appears to the Court that:

1.      The United States District Court for the Western District of Kentucky rendered a judgment on May 11, 2007 in the case *GD Deal Holdings, LLC, et al. v. Baker Energy, Inc., et al.*, Case Number 1:05-cv-00003-R, for GD Deal Holdings, LLC's recovery from Surinder Multani of $10,048,295.12 with interest thereon at the judgment rate of 4.9% per annum from May 11, 2007 until paid.

2.      On September 4, 2007, GD Deal Holdings, LLC registered the judgment in the United States District Court for the Northern District of Illinois, Case Number 1:07-cv-04965.  In accordance with Title 28, Section 1962 of the United States Code, the judgment created a lien against all the real and personal property of Surinder Multani situated in this state.

3.      On October 9, 2007, GD Deal Holdings, LLC filed a Memorandum of Judgment in the real property records for the Office of the Cook County, Illinois Recorder of Deeds.

4.    The judgment is subject to enforcement since no order to stay enforcement has been issued and no motion or supersedeas bond to effect a stay has been filed, and more than ten (10) days have elapsed since entry of the judgment.

5.    The Court has authority under Rule 69(a) of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2001, 2002, and 2004 to order enforcement and satisfaction of the judgment by a judicial sale of nonexempt real or personal property, or both, of Surinder Multani situated in this judicial district in lieu of allowing the usual execution proceedings that would otherwise be the procedure for the enforcement of the judgment.

6.    Surinder Multani and Safanpreet Multani were served with process herein on April 11, 2008. Surinder Multani and Safanpreet Multani have failed to file responsive pleadings herein. The statements in Plaintiff's Complaint are established as true as against Surinder Multani and Safanpreet Multani.

7.    There is situated in this judicial district the following described nonexempt realty of Surinder Multani that may be subjected to a private or public judicial sale for satisfaction of GD Deal Holdings, LLC's judgment against Surinder Multani: the real property commonly referred to as 24 Bright Ridge Drive, Schaumburg, Illinois 60194. The realty is more particularly described as follows:

LOT 9 IN SUMMERFIELD ESTATES SUBDIVISION, BEING A SUBDIVISION OF PART OF THE SOUTHWEST 1/4 OF SECTION 2, TOWNSHIP 41 NORTH, RANGE 10, EAST OF THE THIRD PRINCIPAL MERIDAN, ACCORDING TO THE PLAT THEREOF RECORDED AUGUST 2, 2000, AS DOCUMENT 00675392, IN COOK COUNTY, ILLINOIS.

PERMANENT INDEX NUMBER: 07-23-102-021-0000

8.    There is situated in this judicial district the following described nonexempt personal property of Surinder Multani that may be subjected to a private or public sale for satisfaction of

Plaintiff's judgment against Surinder Multani: 1) Furniture and Household Effects (including audio, video, and computer equipment); 2) Books, Pictures, and other Art Objects (including stamp, coin, record, tape, compact disc, and other collections or collectibles); 3) Wearing Apparel; 4) Jewelry; 5) Cash on Hand; and/or 6) Firearms and Sports, Photographic, and other Equipment.  Such personal property is located at 302 Midwest Club, Oak Brook, Illinois 60523 and/or 24 Bright Ridge Drive, Schaumburg, Illinois 60194.

9.     Good cause exists for enforcement of the judgment by a public judicial sale of the above-described property instead of by execution proceedings.

10.     The real estate of Surinder Multani commonly referred to as 24 Bright Ridge Drive, Schaumburg, Illinois 60194 is indivisible and cannot be divided without materially impairing its value and the value of the Plaintiff's lien thereon.

11.     There are no genuine issues of material fact regarding the Plaintiff's request for judicial sale of Defendant Surinder Multani's real and personal property.  The Plaintiff is entitled to an Order of judicial sale of Surinder Multani's property as a matter of law.

Therefore, IT IS ORDERED that:

1.     The United States Marshall for this district shall sell as a whole to the highest bidder in cash Defendant's realty commonly referred to as 24 Bright Ridge Drive, Schaumburg, Illinois 60194 at a public sale.  The United States Marshall shall take possession of the Defendant Surinder Multani's personal property as described above.  The United States Marshall shall sell in units to the highest bidder in cash such personal property at a public sale.  The public sale of the realty and personal property shall be held pursuant to the discretion of the United States Marshall either: 1) at the Circuit Court of Cook County, Richard J. Daley Center, 50 West Washington, Chicago, Illinois 60602; or 2) upon the premises.

2.      The public sale of the real and personal property is to be preceded by publication of notice thereof by the United States Marshall in which notice the property is to be described as above; the notice is to be published consecutively once a week for not less than four (4) weeks in the Chicago Tribune, a newspaper regularly issued and having a general circulation in this judicial district, where the property of Defendant Surinder Multani that is to be sold is situated.

3.      The money from the sale of the property is to be applied first to the payment of the costs of the sale (including the United States Marshall's commission, fees, and expenses); next to the costs of this suit; then any remaining proceeds of the sale shall be held by the United States Marshall pending further order of this Court.

4.      Following completion of the sale, subject to its confirmation by the Court, the United States Marshall shall file a prompt report of sale, showing compliance with this Order.

5.      Jurisdiction is retained for such further orders and proceedings as may be necessary.

DATED, this the _____ day of _____, 2008.


_____
JUDGE, UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

Tendered by:

THOMAS M. FALKENBERG
WILLIAMS MONTGOMERY & JOHN LTD.
20 North Wacker Drive, Suite 2100
Chicago, Illinois 60606-3094
Telephone: (312) 443-3200

-and-

HARNED, BACHERT & DENTON, LLP
324 East Tenth Avenue
Post Office Box 1270
Bowling Green, Kentucky  42102-1270
Telephone:  (270) 782-3938

/s/ Scott A. Bachert
SCOTT A. BACHERT