**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
CASE NUMBER 08-CV-1722

GD DEAL HOLDINGS, LLC                                                    PLAINTIFF

v.

SURINDER MULTANI, et al.                                              DEFENDANTS

**MOTION FOR DEFAULT JUDGMENT AND**
**ENTRY OF CHARGING ORDER AGAINST**
**JUDGMENT DEBTOR'S INTEREST IN ABBE PROPERTIES, LLC**

Comes now the Plaintiff, GD Deal Holdings, LLC ("GD Deal Holdings"), by and through

counsel, and, pursuant to FED. R. CIV. P. 54,  FED. R. CIV. P. 69, and 805 ILCS 180/30-20, for its

Motion for Default Judgment and Entry of Charging Order Against Judgment Debtor's Interest in

ABBE Properties, LLC ("ABBE Properties"), states as follows:

1.      On May 11, 2007, the United States District Court for the Western District of

Kentucky granted a judgment to GD Deal Holdings against Surinder Multani for the recovery of

$10,048,295.12 with interest thereon at the judgment rate of 4.9% per annum from the date of

judgment until paid.

2.      On September 4, 2007, GD Deal Holdings registered the judgment in the United

States District Court for the Northern District of Illinois, Case Number 1:07-cv-04965.

3.      GD Deal Holdings is informed, and on the basis of such information and belief

alleges, that Surinder Multani is a member of ABBE Properties.  A copy of an Operating Agreement

for ABBE Properties signed by Surinder Multani is attached hereto as "Exhibit A".  A copy of a

printout from the Illinois Secretary of State's website demonstrating that Surinder Multani is the

registered agent for service of process for ABBE Properties is attached hereto as "Exhibit B".

4.     ABBE Properties was served with process on April 11, 2008, and has failed to file responsive pleadings herein within twenty (20) days thereafter, said Defendant being in default.  A copy of an Affidavit of Service on ABBE Properties is attached hereto as "Exhibit C".

5.     GD Deal Holdings is entitled, under FED. R. CIV. P. 69 and 805 ILCS 180/30-20, to a charging order against the interest of Surinder Multani in ABBE Properties.

6.     The instant Motion is based on the Affidavit of counsel for GD Deal Holdings, attached hereto as "Exhibit D", and all the pleadings, records and papers on file in this action.

WHEREFORE, the Plaintiff, GD Deal Holdings, LLC, requests:

1.     An Order requiring ABBE Properties to produce a copy of all agreements concerning Surinder Multani's interest and the interest of other members in ABBE Properties, together with evidence showing the interest of Surinder Multani in the income of ABBE Properties;

2.     A charging order against Surinder Multani's interest in ABBE Properties or any other entity or joint venture in which Surinder Multani has an interest; and

3.     Such further relief, at law or in equity, that the Court deems just and proper.

This day, July 23, 2008.

THOMAS M. FALKENBERG
WILLIAMS MONTGOMERY & JOHN LTD.
20 North Wacker Drive, Suite 2100
Chicago, Illinois 60606-3094
Telephone: (312) 443-3200

-and-

HARNED, BACHERT & DENTON, LLP
324 East Tenth Avenue
Post Office Box 1270
Bowling Green, Kentucky  42102-1270
Telephone:  (270) 782-3938

/s/ Scott A. Bachert
SCOTT A. BACHERT

<u>CERTIFICATION</u>:

   This is to certify that a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court this day, July 23, 2008, by using the CM/ECF system, which will send a notice of electronic filing to the following:

Hon. Lucia Nale
Hon. Diane Renae Sabol                    Hon. Robert T. Kuehl
Hon. Nicole J. Highland                   WELTMAN, WEINBERG & REIS CO., L.P.A.
MAYER BROWN LLP                           180 N. LaSalle Street, Suite 2400
71 South Wacker Drive                     Chicago, Illinois 60601
Chicago, Illinois 630606-4637


   This is to certify that a true and correct copy of the foregoing document was this day, July 23, 2008, placed in the US Mail, postage prepaid, addressed to the following:

Hon. Leroy Simms                          Sapphire Supply, LLC
6061 Savoy Drive                          c/o: Surinder Multani, Registered Agent
Houston, Texas 77036                      2015 S. Arlington Hts. Rd. #120
                                          Arlington Heights, Illinois 60005
Hon. James O. Stola
3701 West Fullerton Avenue                JGG Investments, LLC
Chicago, Illinois 60647                   c/o: Kishor Shah, Registered Agent
                                          5 Whippoorwill Court
Surinder Multani                          Roselle, Illinois 60172
302 Midwest Club
Oak Brook, Illinois 60523                 ABBE Capital and Leasing, LLC
                                          c/o: Surinder Multani, Registered Agent
Safanpreet Multani                        2015 S. Arlington Hts. Rd. #120
302 Midwest Club                          Arlington Heights, Illinois 60005
Oak Brook, Illinois 60523
                                          ABBE Management Group, LLC
Surinder Multani                          c/o: Robert S. Luce, Registered Agent
24 Bright Ridge Drive                     399 Quentin Rd. Ste. A
Schaumburg, Illinois 60194                Palatine, Illinois 60067

Safanpreet Multani                        Babaji PS, LLC
24 Bright Ridge Drive                     c/o: Narendra Bhalla, Registered Agent
Schaumburg, Illinois 60194                1718 Fry Road, Suite 415
                                          Houston, Texas 77084
ABBE Properties, LLC
c/o: Surinder Multani, Registered Agent   Capital Access & Investments, LLC
2015 S. Arlington Hts. Rd. #120           c/o: Narendra Bhalla, Registered Agent
Arlington Heights, Illinois 60005         1718 Fry Road, Suite 415
                                          Houston, Texas 77084

G & S Portage, Inc.
c/o: Ajai Agnihotri, Registered Agent
1856 Samuelson Road
Portage, Indiana 46368

/s/ Scott A. Bachert
SCOTT A. BACHERT

*11 - 3690/80*

**Operating Agreement of ABBE PROPERTIES LLC**
**An Illinois Limited Liability Company**
**Effective as of May 15, 2003**

## TABLE OF CONTENTS

*To: Ellen Mooney*

*From: Bob Shanahan*

*Re: Singh*

*FEIN 11 - 3690180*

ARTICLE 1 DEFINITION

ARTICLE 2  FORMATION OF COMPANY

    2.1    Formation
    2.2    Name
    2.3    Principal Place of Business
    2.4    Registered Office and Registered Agent
    2.5    Term

ARTICLE 3  BUSINESS OF COMPANY

ARTICLE 4  NAMES AND ADDRESSES OF MEMBERS

ARTICLE 5  RIGHTS AND DUTIES OF MANAGERS

    5.1    Management
    5.2    Number, Tenure and Qualifications
    5.3    Certain Powers of Managers
    5.4    Members Have No Authority to Bind
    5.5    Liability of Certain Acts
    5.6    Managers Have No Exclusive Duty to Company
    5.7    Bank Accounts
    5.8    Indemnity of the Managers, Employees and Other Agents
    5.9    Resignation
    5.10    Removal
    5.11    Vacancies
    5.12    Salaries
    5.13    Meetings
    5.14    Place of Meetings
    5.15    Notice of Meetings
    5.16    Action by Managers Without a Meeting
    5.17    Waiver of Notice

11/09/05

003958

EXHIBIT A

5.19    Telephonic Meetings
5.20    Officers

ARTICLE 6    RIGHTS AND OBLIGATIONS OF MEMBERS

6.1    Limitation of Liability
6.2    Company Debt Liability
6.3    List of Members
6.4    Approval of Sale of All Assets
6.5    Company Books
6.6    Priority and Return of Capital
6.7    Liability of a Member to the Company

ARTICLE 7    MEETINGS OF MEMBERS

7.1    Meetings
7.2    Place of Meetings
7.3    Notice of Meeting
7.4    Meeting of All Members
7.5    Record Date
7.6    Quorum
7.7    Manner of Acting
7.8    Proxies
7.9    Action by Members Without a meeting
7.10    Waiver of Notice
7.11    Telephonic Meetings

ARTICLE 8    CONTRIBUTIONS TO THE COMPANY AND CAPITAL ACCOUNTS

8.1    Members' Capital Contributions
8.2    Additional Contributions
8.3    Capital Accounts
8.4    Withdrawal or Reduction of Members' Contributions to Capital

ARTICLE 9    ALLOCATIONS, INCOME TAX, DISTRIBUTIONS, ELECTIONS,
             AND REPORTS

9.1    Allocations of Profits and Losses from Operations
9.2    Special Allocations to Capital Accounts
9.3    Distributions
9.4    Limitation upon Distributions
9.5    Accounting Principles
9.6    Interest on and Return of Capital Contributions

003959

9.7     Loans to Company
9.8     Accounting Period
9.9     Records, Audits, and Reports
9.10    Returns and Other Elections
9.11    Tax Matters Partner

ARTICLE 10 TRANSFERABILITY

10.1    General
10.2    Right of First Refusal
10.3    Transferee Not Member in Absence of Unanimous Consent

ARTICLE 11  ADDITIONAL MEMBERS

ARTICLE 12  DISSOLUTION AND TERMINATION

12.1    Dissolution
12.2    Winding Up, Liquidation, and Distribution of Assets
12.3    Articles of Dissolution
12.4    Effect of Filing of Articles of Dissolution
12.5    Return of Contribution Nonrecourse to Other Members

ARTICLE 13  MISCELLANEOUS PROVISIONS

13.1    Notices
13.2    Books of Account and Records
13.3    Application of Illinois Law
13.4    Waiver of Action for Partition
13.5    Amendments
13.6    Execution of Additional Instruments
13.7    Construction
13.8    Headings
13.9    Waivers
13.10   Rights and Remedies Cumulative
13.11   Severability
13.12   Heirs, Successors, and Assigns
13.13   Creditors
13.14   Counterparts

iii

003960

13.15  Entire Agreement
13.16  Joint Preparation
13.17  Incorporation of Exhibits, Annexes & Schedules

EXHIBIT A
EXHIBIT B

003961

# ARTICLE 1

## DEFINITIONS

This Operating Agreement is made and entered into as of May 15, 2003, by and between the Members, whose signatures appear on the signature page hereof.

## WITNESSETH:

**WHEREAS,** the Members have caused to be filed Articles of Organization for Abbe Properties LLC with the Secretary of State of Illinois on or about May 15, 2005.

**NOW, THEREFORE,** the parties agree as follows:

1.1  **Definitions.** The following terms used in this Operating Agreement shall have the following meanings:

(a)  "Act" shall mean the Illinois Limited Liability Company Act at 805 ILCS 180/1-5, et seq.

(b)  "Articles of Organization" shall mean the Articles of Organization of Abbe Properties LLC as filed with the Secretary of State of Illinois, as amended from time to time.

(c)  "Capital Account" as of any given date shall mean the Capital Contribution to the Company by a Member as adjusted up to such date pursuant to Article 8.

(d)  "Capital Contribution" shall mean any contribution to the capital of the Company in cash or property by a Member whenever made. "Initial Capital Contribution" shall mean the initial contribution to the capital of the Company pursuant to this Operating Agreement.

(e)  "Code" shall mean the Internal Revenue Code of 1986 or corresponding provisions of subsequent superseding federal revenue laws.

(f)  "Company" shall refer to Abbe Properties LLC.

- 1 -

(g)    "Deficit Capital Account" shall mean with respect to any Member, the deficit balance, if any, in such member's Capital Account as of the end of the taxable year, after giving effect to the following adjustments:

(i)    credit to such Capital Account any amount which such Member is obligated to restore under Section1.704-1(b)(2)(ii)(c) of the Treasury Regulations, as well as any addition thereto pursuant to the next to last sentence of Sections 1.704-2(g)(1) and (i)(5) of the Treasury Regulations, after taking into account thereunder any changes during such year in partnership minimum gain (as determined in accordance with Section 1.704-2(d) of the Treasury Regulations) and in the minimum gain attributable to any partner for nonrecourse debt (as determined under Section 1.704-2(I)(3) of the Treasury Regulations); and

(ii)    debit to such Capital Account the items described in Sections 1.704-1(b)(2)(ii)(d)(4),(5), and (6) of the Treasury Regulations.

This definition of Deficit Capital Account is intended to comply with the provisions of Treasury Regulation Sections 1.704-1(b)(2)(ii)(d) and 1.704-2, and will be interpreted consistently with those provisions.

(g)    "Distributable Cash" shall mean all cash, revenues and funds received by the Company from Company operations, less the sum of the following to the extent paid or set aside by the Company: (i) all principal and interest payments on indebtedness of the Company and all other sums paid to lenders; (ii) all cash expenditures incurred in the normal operation of the Company's business; (iii) such reserves as the Members deem reasonably necessary for the proper operation of the Company's business.

(i)    "Economic Interest" shall mean a Member's or Economic Interest Owner's share of one or more of the Company's Net Profits, Net Losses and distributions of the Company's assets pursuant to this Operating Agreement and the Act, but shall not include any right to participate in the management or affairs of the Company, including, the right to vote on, consent to, or otherwise participate in any decision of the Members.

(j)    "Economic Interest Owner" shall mean the owner of an Economic Interest who is not a Member.

(k)    "Entity" shall mean any general partnership, limited partnership, limited liability company, corporation, joint venture, trust, business trust, cooperative, association, foreign trust or foreign business organization.

(l)    "Gifting Member" shall mean any Member or Economic Interest Owner who gifts, bequeaths, or otherwise transfers for no consideration (by operation of law or otherwise, except with respect to bankruptcy) all or any part of its Membership Interest or Economic Interest.

-2-

(m)   "Interest Holder" shall mean either a Member holding an Economic Interest or an Economic Interest Owner.

(n)   "Majority Interest" shall mean one or more Interests of Members which in the aggregate exceed 50% of all Percentage Interests.

(o)   "Manager" shall mean one or more managers. For the purposes hereof, the Manager of the Company shall be Ms. Safanpreet Kaur Multani. References to the Manager in the singular or as him, her, it, itself, or other like references shall also, where the context so requires, be deemed to include the plural or the masculine or feminine reference, as the case may be.

(p)   "Member" shall mean each of the parties who executes a counterpart of this Operating Agreement as a Member and each of the parties who may hereafter become Members. If a Person is a Member immediately prior to the purchase or other acquisition by such person of an Economic Interest, such Person shall have all the rights of a member with respect to such purchased or otherwise acquired Membership Interest or Economic Interest, as the case may be.

(q)   "Membership Interest" shall mean a Member's entire interest in the Company including such Member's Economic Interest and the right to participate in the management of the business and affairs of the Company, including the right to vote on, consent to, or otherwise participate in any decision or action of or by the Members granted pursuant to this Operating Agreement and the Act.

(r)   "Net Profits" and "Net Losses" shall mean the income, gain, loss, deductions, and credits of the Company in the aggregate or separately stated, as appropriate, determined in accordance with generally accepted accounting principles employed under the cash method of accounting at the close of each fiscal year on the Company's tax return filed for federal income tax purposes.

(s)   "Operating Agreement" shall mean this Operating Agreement as originally executed and as amended from time to time.

(t)   "Percentage Interest" shall mean, for any member, the percentage interest in the Company as set forth on Exhibit A, as may be changed from time to time by the unanimous vote of the members.

(u)   "Persons" shall mean any individual or entity, and the heirs, executors, administrators, legal representatives, successors, and assigns of such "Person" where the context so permits.

003964

      (v)     "Reserves" shall mean funds set aside or amounts allocated to reserves which shall be maintained in amounts deemed sufficient by the Members for working capital and to pay taxes, insurance, debt service, or other costs or expenses incident to the ownership or operation of the Company's business.

      (w)     "Selling Member" shall mean any Interest Holder that sells, assigns, pledges, hypothecates or otherwise transfers for consideration all or any portion of its Membership Interest or Economic Interest.

      (x)     Transferring Member" shall collectively mean a Selling Member and a Gifting Member.

      (y)     "Treasury Regulations" shall include proposed, temporary and final regulations promulgated under the Code.

      (z)     "Withdrawal Event" shall occur upon the death, retirement, resignation, expulsion, bankruptcy, or dissolution of a Member, or the occurrence of any other event that terminates the continued membership of a Member in the Company.

## ARTICLE 2

## FORMATION OF COMPANY

      2.1     Formation.     Abbe Properties LLC has been organized as an Illinois Limited Liability Company by executing and delivering Articles of Organization to the Illinois Secretary of State in accordance with and pursuant to the Act.

      2.2     Name.     The name of the Company is Abbe Properties LLC.

      2.3     Principal Place of Business. The principal place of business of the Company within the State of Illinois shall be 2015 S. Arlington Heights Road, Suite 120, Arlington Heights, Illinois 60005. The Company may locate its places of business and registered office at any other place or places as the Members may deem advisable.

      2.4     Registered Office and Registered Agent. The Company's initial registered office shall be at the office of its registered agent at 2015 S. Arlington Heights Road, Suite 120, Arlington Heights, Illinois 60005 and the name of its initial registered agent shall be Surinder P. S. Multani. The registered office and registered agent may be changed by filing the address of the new registered office and/or the name of the new registered agent with the Illinois Secretary of State pursuant to the Act.

- 4 -

2.5     Term. The term of this Agreement shall be fifty one (51) years from the date of filing of Articles of Organization with the Illinois Secretary of State, unless the Company is earlier dissolved in accordance with either the provisions of this Operating Agreement or the Act.

## ARTICLE 3

## BUSINESS OF COMPANY

The business of the Company shall be:

3.1     The conduct of any and all purposes for which a limited liability company may be organized under the business laws of the State of Illinois under the name "Abbe Properties LLC".

3.2     To accomplish any lawful business whatsoever, or which shall at any time appear conducive to or expedient for the protection or benefit of the Company and its assets.

## ARTICLE 4

## NAMES AND ADDRESSES OF MEMBERS

The names and addresses of the Members are as follows:

| NAME | ADDRESS |
| --- | --- |
| Surinder P. S. Multani as Trustee of the Japi Singh Multani Irrevocable Trust | c/o 2015 South Arlington Heights Road Suite 120, Arlington Heights, IL 60005 |
| Surinder P. S. Multani as Trustee of the Gurpriya Kaur Multani Irrevocable Trust | c/o 2015 South Arlington Heights Road Suite 120, Arlington Heights, IL 60005 |
| Surinder P. S. Multani as Trustee of the Gurtap Singh Multani Irrevocable Trust | c/o 2015 South Arlington Heights Road Suite 120, Arlington Heights, IL 60005 |
| Safanpreet Kaur Multani | c/o 2015 South Arlington Heights Road Suite 120, Arlington Heights, IL 60005 |
| Surinder P. S. Multani | c/o 2015 South Arlington Heights Road Suite 120, Arlington Heights, IL 60005 |

- 5 -

003966

ARTICLE 5

RIGHTS AND DUTIES OF THE MANAGERS

5.1    Management. The business and affairs of the Company shall be managed by its Manager. The Manager shall direct, manage and control the business of the Company. Except for situations in which the approval of the Members is expressly required by this Operating Agreement or by non-waivable provisions of the Act, the Manager shall have full and complete authority, power and discretion to manage and control the business, affairs and properties of the Company, to make all decisions regarding those matters and to perform any and all other acts or activities customary or incident to the management of the Company's business. At any time when there is more than one Manager, the Managers must agree on any action permitted to be taken by the Managers.

5.2    Number, Tenure and Qualifications. The Company shall initially have one (1) Manager who is set forth in Exhibit A. The number of Managers of the Company shall be fixed from time to time by the affirmative vote of Members holding at least a majority of all Percentage Interests in the Company, but in no instance shall there be less than one Manager. Each Manager shall hold office until his successor shall have been elected and qualified. Managers shall be elected by the affirmative vote of Members holding at least a Majority Interest. Managers need not be Members of the Company.

5.3    Certain Powers of the Manager(s). Without limiting the generality of Section 5.1, the Manager shall have power and authority, on behalf of the Company:

(a)    To acquire property from any Person as the Manager may determine, whether or not such Person is directly or indirectly affiliated or connected with any Manager or Member.

(b)    To borrow money for the Company from banks, other lending institutions, the Manager(s) Members, or affiliates of the Manager(s) or Members on such terms as the Manager(s) deems appropriate, and in connection therewith, to hypothecate, encumber and grant security interests in the assets of the Company to secure repayment of the borrowed sums. No debt shall be contracted or liability incurred by or on behalf of the Company except by the Manager(s), or to the extent permitted under the Act, by agents or employees of the Company expressly authorized to contract such debt or incur such liability by the Manager(s).

- 6 -

003967

(c)     To purchase liability and other insurance to protect the Company's property and business;

(d)     To hold and own Company real and personal properties in the name of the Company;

(e)     To invest Company funds in time deposits, short-term governmental obligations, commercial paper or other investments;

(f)     Upon the affirmative vote of the Members holding at least a majority of all Percentage Interests, to sell or otherwise dispose of all or substantially all of the assets of the Company as part of a single transaction or plan as long as such disposition is not in violation of or a cause of a default under any other agreement to which the Company may be bound;

(g)     To execute on behalf of the Company all instruments and documents, including, without limitation, checks; drafts; notes and other negotiable instruments; mortgages or deeds of trust; security agreements; financing statements; documents providing for the acquisition, mortgage or disposition of the Company's property; assignments, bills of sale; leases; and any other instruments or documents necessary to the business of the Company;

(h)     To employ accountants, legal counsel, managing agents or other experts to perform services for the Company;

(i)     To enter into any and all other agreements on behalf of the Company, in such forms as the Manager(s) may approve; and

(j)     To do and perform all other acts as may be necessary or appropriate to the Conduct of the Company's business.

5.4     Members Have No Authority To Bind. Unless authorized to do so by this Operating Agreement or by the Manager(s) of the Company, no attorney-in-fact, employee or other agent of the Company shall have any power or authority to bind the Company in any way, to pledge its credit or to render it liable for any purpose. No Member shall have any power or authority to bind the Company, unless the Member has been authorized by the Manager(s) to act as an agent of the Company in accordance with the previous sentence.

003968

5.5    Liability for Certain Acts. Each Manager shall perform his duties as Manager in good faith, in a manner he reasonably believes to be in the best interests of the Company, and with such care as an ordinarily prudent person in a like position would use under similar circumstances. A Manager shall not be liable to the Company or to any Member for any loss or damage sustained by the Company or any Member, unless the loss or damage shall have been the result of fraud, deceit, gross negligence, willful misconduct or a wrongful taking by the Manager(s).

5.6    Managers Have No Exclusive Duty to Company. A Manager shall not be required to manage the Company as his sole and exclusive function and he may have other business interests and engage in activities in addition to those relating to the Company. Neither the Company nor any member shall have any right, by virtue of this Operating Agreement, to share or participate in such other investments or activities of the Manager or to the income or proceeds derived therefrom.

5.7    Bank Accounts. The Manager(s) may from time to time open bank accounts in the name of the Company, and the Manager shall be the sole signatory thereon, unless all Members determine otherwise.

5.8    Indemnity of the Managers, Employees and Other Agents. Provided that Members owning a Majority Interest approve, the Company shall, to the maximum extent permitted under Section 15-10 of the Act, indemnify and make advances for expenses to Managers, its employees, and other agents.

5.9    Resignation. Any Manager of the Company may resign at any time by giving written notice to the Members of the Company. The resignation of any Manager shall take effect upon receipt of notice thereof or at such later date specified in such notice; and, unless otherwise specified therein, the acceptance of such resignation shall not be necessary to make it effective. The resignation of a Manager who is also a Member shall not affect the Manager's rights as a Member and shall not constitute a withdrawal of a Member.

5.10    Removal. At a meeting called expressly for that purpose, all or any lesser number of Managers may be removed at any time, with or without cause, by the affirmative vote of Members holding a Majority Interest. The removal of a Manager who is also a Member shall not affect the Manager's rights as a Member and shall not constitute a withdrawal of a Member.

- 8 -

003969

5.11    Vacancies. Any vacancy occurring for any reason in the number of Managers of the Company may be filled by the affirmative vote of Members holding a Majority Interest. Any Manager's position to be filled by reason of an increase in the number of Managers shall be filled by the election at a meeting of Members called for that purpose or by the Members' unanimous written consent. A Manager elected to fill a vacancy shall be elected for the unexpired term of his predecessor in office and shall hold office until the expiration of such term and until his successor shall be elected and qualified , or until his earlier death, resignation or removal.

5.12    Salaries. The salaries and other compensation of the Manager(s) shall be fixed from time to time by an affirmative vote of Members holding at least a Majority Interest, and no Manager shall be prevented from receiving such salary because he is also a Member of the Company.

5.13    Meetings. Meetings of the Managers, for any purpose or purposes, may be called by the Tax Matters Partner or by any Manager. Action to be taken by the Managers shall be by simple majority of all the Managers.

5.14    Place of Meetings. The Tax Matters partner may designate any place, either within or outside the State of Illinois, as the place of meeting for any meeting of the Managers. If no designation is made, or if a special meeting be otherwise called, the place of meeting shall be the principal place of business of the Company in the State of Illinois.

5.15    Notice of Meetings. Except as otherwise provided in this Agreement, written notice stating the place, day and hour of the meeting and the purpose or purposes for which the meeting is called shall be delivered not less than ten (10) nor more than thirty (30) days before the date of the meeting, either personally or by mail, by or at the direction of the Tax Matters Partner or Manager calling the meeting, to each Manager entitled to vote at such meeting. If mailed, such notice shall be deemed to be delivered two calendar days after being deposited in the United States mail, addressed to the Manager at his or her address as it appears on the books of the Company, with postage thereon prepaid.

5.16    Meeting of All Managers. If all of the Managers shall meet at any time and place, either within or outside of the State of Illinois, and consent to the holding of a meeting at such time and place, such meeting shall be valid without call or notice, and at such meeting lawful action may be taken.

003970

5.17   Action by Managers Without a Meeting. Action required or permitted to be taken at a meeting of Managers may be taken without a meeting if the action is evidenced by one or more written consents describing the action taken, signed by each Manager entitled to vote and delivered to the tax Matters Partner for inclusion in the minutes or for filing with the Company records. Action taken under this Section is effective when all Managers entitled to vote have signed the consent, unless the consent specifies a different effective date.

5.18   Waiver of Notice. When any notice is required to be given to any Manager, a waiver thereof in writing signed by the person entitled to such notice, whether before, at, or after the time stated therein, shall be equivalent to the giving of such notice.

5.19   Telephonic Meetings. A Manager may participate in a meeting of Managers by means of conference telephone or similar communications equipment enabling all Managers participating in the meeting to hear one another. Participation in a meeting pursuant to this section shall constitute presence in person at such meeting.

5.20   Officers.

(a)   Election of Officers. The officers of the Company shall be a President, a Secretary and a Treasurer. The Company also may have, at the discretion of the Managers, one or more vice-presidents, one or more assistant secretaries, one or more assistant financial officers, and such other officers as may be appointed in accordance with the provisions of Section 5.20(c). Any number of offices may be held by the same person.

(b)   Election.   The officers of the Company, except such officers as may be appointed in accordance with the provisions of Section 5.20(c), shall be chosen by majority vote of the Managers, and each shall hold his or her office until he or she shall resign or shall be removed by the Managers or otherwise disqualified to serve, or his or her successor shall be elected and qualified.

(c)   Subordinate Officers. The Manager(s) may appoint, and may empower the President to appoint, such other officers as the business of the Company may require, each of whom shall hold office for such period, have such authority and perform such duties as the appointing authority may designate, subject to any limitations imposed by resolution of the Manager(s).

(d)   Removal. Any officer may be removed, either with or without cause, by the Manager(s) or by a majority vote of the Managers, except in case of an officer chosen by the managers, by any officer upon whom such power of removal may be conferred by the Manager(s) (subject, in each case, to the rights, if any, of an officer under any contract of employment).

-10-

003971

(e)     Resignation. An officer may resign at any time by giving notice to the Manager(s) or to the President or to the Secretary of the Company, without prejudice, however, to the rights, if any, of the Company under any contract to which such officer is a party. Any such resignation shall take effect at the date of the receipt of such notice or any later time specified therein; and, unless otherwise specified therein, the acceptance of such resignation shall not be necessary to make it effective.

(f)     Vacancies. A vacancy in any office because of death, resignation, removal, disqualification or any other cause shall be filled in the manner prescribed in this Agreement for regular appointments to such office.

(g)     Salaries. The salaries of all officers and agents of the Company shall be fixed by the Manager, or if applicable, a majority vote of the Managers, excluding, however, the vote of any interested Manager who may also serve as an officer of the Company. In such situations, the "majority vote of the Managers" shall mean the approval of the remaining Manager(s) representing Members who collectively hold more than 50% of the Percentage Interests entitled to vote on the matter.

(h)     Initial Officers. Effective as of the date hereof and until their respective successors are nominated and appointed, the following persons shall hold the offices and officer titles as set opposite their name:

Ms. Safanpreet Kaur Multani - President, Secretary Treasurer and Tax
Matters Partner

## ARTICLE 6

## RIGHTS AND OBLIGATIONS OF MEMBERS

6.1     Limitation of Liability. Each member's liability shall be limited as set forth in this Operating Agreement, the Act, and other applicable law.

6.2     Company Debt Liability. A Member will not be personally liable for any debts or losses of the Company beyond his respective Capital Contributions and any obligation of the Member under Sections 8.1 and 8.2 to make Capital Contributions, except as provided in Section 6.7 or as otherwise required by law.

6.3     List of Members. Upon the written request of any Member, the Tax Matters Partner shall provide a list showing the names, address, and Membership Interests and economic Interests of all Members. ·

003972

6.4     Approval of Sale of All Assets. The Members shall have the right, by the affirmative vote of members holding at least a majority of all percentage Interests, to approve the sale, exchange, or other disposition of all, or substantially all, of the Company's assets which is to occur as part of a single transaction or plan.

6.5     Company Books. The Tax Matters Partner shall maintain and preserve, during the term of the Company, the accounts, books, and other relevant Company documents described in Section 9.9. Upon reasonable written request, each member and Economic Interest Owner shall have the right, at a time during ordinary business hours, as reasonably determined by the Tax Matters Partner to inspect and copy, at the requesting Interest Holder's expense, the Company documents identified in Section 1-40 of the Act, and such other documents as the Tax Matters Partner, in his discretion, deems appropriate.

6.6     Priority and Return of Capital. Except as may be expressly provided in Article 9, no Interest Holder shall have priority over any other Interest Holder, either as to the return of Capital Contributions or as to Net Profits, Net Losses, or distributions; provided that this Section shall not apply to loans a Member has made to the Company.

6.7     Liability of a Member to the Company. A Member who receives a distribution or the return in whole or in part of its contribution is liable to the Company only to the extent provided by the Act.

## ARTICLE 7

## MEETINGS OF MEMBERS

7.1     Meetings. Meetings of the Members, for any purpose or purposes, may be called by any Member or Members holding at least 10% of the Percentage Interests, or by the Tax Matters Partner.

7.2     Place of Meetings. The Member(s) calling the meeting may designate any place, either within or outside the State of Illinois, as the place of meeting for any meeting of the Members. If no designation is made, or if a special meeting be called by the Tax Matters Partner or otherwise called, the place of meeting shall be the principal place of business of the Company in the State of Illinois.

- 12 -

7.3     Notice of Meetings. Except as provided in Section 7.4, written notice stating the place, day, and hour of the meeting and the purpose or purposes for which the meeting is called shall be delivered not less than ten (10) days nor more than thirty (30) days before the date of the meeting, either personally or by mail, by or at the direction of the Member or Members calling the meeting, to each Member entitled to vote at such meeting. If mailed, such notice shall be deemed to be delivered two calendar days after being deposited in the United States mail, addressed to the Member at its address as it appears on the books of the company, with postage thereon prepaid.

7.4     Meeting of All Members. If all of the Members shall meet at any time and place, either within or outside of the State of Illinois, and consent to the holding of a meeting at such time and place, such meeting shall be valid without call or notice, and at such meeting lawful action may be taken.

7.5     Record Date. For the purpose of determining Members entitled to notice of or to vote at any meeting of Members or any adjournment thereof, or Members entitled to receive payment of any distribution, or in order to make a determination of Members for any other purpose, the date on which notice of the meeting is mailed or the date on which the resolution declaring such distribution is adopted, as the case may be, shall be the record date for such determination of Members. When a determination of Members entitled to vote at any meeting of Members has been made as provided in this Section, such determination shall apply to any adjournment thereof.

7.6.    Quorum. Members holding at least two thirds (2/3) of all Percentage Interests, represented in person or by proxy, shall constitute a quorum at any meeting of Members. In the absence of a quorum at any such meeting, a majority of the Percentage Interests so represented may adjourn the meeting from time to time for a period not to exceed sixty days without further notice. However, if the adjournment is for more than sixty days, or if after the adjournment a new record date is fixed for the adjourned meeting, a notice of the adjourned meeting shall be given to each Member of record entitled to vote at the meeting. At such adjourned meeting at which a quorum shall be present or represented, any business may be transacted which might have been transacted at the meeting as originally noticed. The Members present at a duly organized meeting may continue to transact business until adjournment, notwithstanding the withdrawal during such meeting of that number of Percentage Interests whose absence would cause loss of a quorum.

003974

7.7     Manner of Acting. If a quorum is present, the affirmative vote of Members holding a Majority Interest shall be the act of the Members, unless the vote of a greater or lesser proportion or number is otherwise required by the Act, by the Articles of Organization, or by the Operating Agreement. Unless otherwise expressly provided herein or required under applicable law, only Members who have a Membership Interest may vote or consent upon any matter and their vote or consent, as the case may be, shall be counted in the determination of whether the matter was approved by the Members.

7.8     Proxies. At meetings of Members, a Member may vote in person or by proxy executed in writing by the Member or by a duly authorized attorney-in-fact. Such proxy shall be filed with the Tax Matters Partner before or at the time of the meeting. No proxy shall be valid after eleven months from the date of its execution, unless otherwise provided in the proxy.

7.9     Action by Members Without a Meeting. Action required or permitted to be taken at a meeting of Members may be taken without a meeting if the action is evidenced by one or more written consents describing the action taken, signed by each member entitled to vote, and delivered to the Tax Matters Partner for inclusion in the minutes or for filing with the Company records. Action taken under this Section is effective when all Members entitled to vote have signed the consent, unless the consent specifies a different effective date.

7.10    Waiver of Notice. When any notice is required to be given to any Member, a waiver thereof win writing signed by the person entitled to such notice, whether before, at, or after the time stated therein, shall be equivalent to the giving of such notice.

7.11    Telephonic Meetings. A Member may participate in a meeting of Members by means of conference telephone or similar communications equipment enabling all Members participating in the meeting to hear one another. Participation in a meeting pursuant to this section shall constitute presence in person at such meeting.

ARTICLE 8

CONTRIBUTIONS TO THE COMPANY AND CAPITAL ACCOUNTS

8.1     Members' Capital Contributions. Each Member shall contribute such amount as is set forth in Exhibit A hereto as its share of the Initial Capital Contribution.

- 14 -

8.2     Additional Contributions. A Member shall be required to make such additional Capital Contributions as shall be determined by Members owning a Majority Interest from time to time to be reasonably necessary to meet the expenses and obligations of the Company. After the making of any such determination, the Tax Matters Partner shall give written notice to each Member of the amount of required additional contribution, and each Member shall deliver to the Company its pro rata share thereof (in proportion to the respective Percentage Interest of the Member on the date such notice is given) no later than thirty days following the date such notice is given. None of the terms, covenants, obligations, or rights contained in this Section 8.2 is or shall be deemed to be for the benefit of any person or entity other than the Members and the Company, and no such third person shall under any circumstances have any right to compel any actions or payments by the Tax Matters Partner and/or the Members.

8.3     Capital Accounts.

(a) A separate Capital Account will be maintained for each Member. Each Member's Capital Account will be increased by (1) the amount of money contributed by such Member to the Company; (2) the fair market value of property contributed by such Member to the Company (net of liabilities secured by such contributed property that the Company is considered to assume or take subject to under Code Section 752); (3) allocations to such Member of Net Profits and Net Losses; and (4) allocations to such Member of income described in Code Section 705(a)(1)(B). Each Member's Capital Account will be decreased by (1) the amount of money distributed to such Member by the Company; (2) the fair market value of property distributed to such member by the Company (net of liabilities secured by such distributed property that such member is considered to assume or take subject to under Code Section 752); (3) allocations to such Member of expenditures described in Code Section 705(a)(2)(B); and (4) allocations to the account of such Member of Company loss and deduction as set forth in such Regulations, taking into account adjustments to reflect book value.

(b) In the event of a permitted sale or exchange of a Membership Interest or Economic Interest in the Company, the Capital Account of the transferor shall become the Capital account of the transferee to the extent it relates to the transferred Membership Interest or Economic Interest in accordance with Section 1.704-1(b)(2)(iv) of the Treasury Regulations.

- 15 -

(c) The manner in which Capital Accounts are to be maintained pursuant to this Section 8.3 is intended to comply with the requirements of Code Section 704(b) and the Treasury Regulations promulgated thereunder. If the Company determines that the manner in which Capital Accounts are to be maintained pursuant to the preceding provisions of this Section 8.3 should be modified in order to comply with Code Section 704(b) and the Treasury Regulations, then notwithstanding anything to the contrary contained in the preceding provisions of this Section 8.3, the method in which Capital Accounts are maintained shall be so modified; provided, however, that any change in the manner maintaining Capital Accounts shall not materially alter the economic agreement between or among the Members as set forth in the Operating Agreement.

(d) Upon liquidation of the Company (or any Member's Membership Interest or Economic Interest Owner's Economic Interest), liquidating distributions will be made in accordance with the positive Capital Account balances of the Members and Economic Interest Owners, as determined after taking into account all Capital Account adjustments for the Company's taxable year during which the liquidation occurs. Liquidation proceeds will be paid within sixty days of the end of the taxable year (or, if later, within one hundred twenty days after the date of the liquidation). The company may offset damages for breach of this Operating Agreement by an Interest Holder whose interest is liquidated (either upon the withdrawal of the Member of the liquidation of the Company) against the amount otherwise distributable to such Member.

(e) Except as otherwise required in the Act (and subject to Section 8.1 and 8.2), no Interest Holder shall have any liability to restore all or any portion of a deficit balance in such Interest Holder's Capital Account.

(f) In the event of the advance of any loan(s) to the Company by any Member, the repayment of such loan(s) shall be made from such Member's share of operating revenues.

8.4     Withdrawal or Reduction of Members' Contributions to Capital.

(a) A Member shall not receive out of the Company's property any part of its Capital Contribution until all liabilities of the Company, except liabilities to Members on account of their Capital Contributions, have been paid or there remains property of the Company sufficient to pay them.

(b) A Member, irrespective of the nature of its Capital Contribution, has only the right to demand and receive cash in return for its Capital Contribution.

- 16 -

003977

ARTICLE 9

ALLOCATIONS, INCOME TAX, DISTRIBUTIONS,
ELECTIONS, AND REPORTS

9.1    Allocations of Profits and Losses from Operations. The Net Profits and
Net Losses of the Company for each fiscal year will be allocated as follows:

Member Allocation

| NAME | PERCENTAGE |
|---|---|
| Surinder P. S. Multani as Trustee of the Japi Singh Multani Irrevocable Trust | 16.666% |
| Surinder P. S. Multani as Trustee of the Gurpriya Kaur Multani Irrevocable Trust | 16.666% |
| Surinder P. S. Multani as Trustee of the Gurtap Singh Multani Irrevocable Trust | 16.666% |
| Ms. Safanpreet Kaur Multani | 40% |
| Mr. Surinder P. S. Multani | 10% |

9.2    Special Allocations to Capital Accounts. Notwithstanding Section 9.1 hereof:

(a) No allocations of loss, deduction, and/or expenditures described in Code Section 705(a)(2)(B) shall be charged to the Capital Account of any Member if such allocation would cause such member to have a Deficit Capital Account. The amount of the loss, deduction, and/or Code Section 705(a)(2)(B) expenditure that would have caused a Member to have a Deficit Capital Account shall instead be charged to the Capital account of any Members that would not have a Deficit Capital Account as a result of the Treasury Regulations shall be allocated to the Members' Capital Accounts in accordance with Section 1.704-2(i) of the Treasury Regulations.

(b) Beginning in the first taxable year in which there are allocations of "nonrecourse deductions" (as described in Section 1.704-2(b) of the Treasury Regulations) such deductions shall be allocated to the Members in accordance with, and as a part of, the allocations of Company profit or loss for such period.

- 17 -

(c) In accordance with Code Section 704(c)(1)(A) and Section 1.704-1(b)(2)(i)(iv) of the Treasury Regulations, if a Member within five years of being contributed, then, except as provided in Code Section 704(c )(2), the contributing Member shall be treated as recognizing gain or loss from the sale of such property in an amount equal to the gain or loss that would have been allocated to such Member under Code Section 704(c )(1)(A) if the property had been sold at its fair market value at the time of the distribution.

(d) Pursuant to Code Section 704(c )(1)(B), if any contributed property is distributed by the Company other than to the contributing Member within five years of being contributed, then, except as provided in Code Section 704(c )(2), the contributing Member shall be treated as recognizing gain or loss from the sale of such property in an amount equal to the gain or loss that would have been allocated to such Member under Code Section 704(c)(1)(A) if the property had been sold at its fair market value at the time of the distribution.

(e) In the case of any distribution by the Company to an Interest Holder, such Interest Holder shall be treated as recognizing gain in an amount equal to the lesser of:

(i) the excess (if any) of (A) the fair market value of the property (other than money) received in the distribution over (B) the adjusted basis of such Member's Membership Interest or Economic Interest Owner's Economic Interest in the Company immediately before the distribution reduced (but not below zero) by the amount of money received in the distribution, or

(ii) the Net Precontribution Gain (as defined in Code Section 737(b) of the Inerest Holder. The Net Precontribution gain means the net gain (if any) which would have been recognized by the distributee Interest Holder under Code Section 704(c)(1)(B) of all property which (a) had been contributed to the Company within five years of the distribution, and (b) is held by the Company immediately before the distribution, if such property had been distributed by the Company to another Interest Holder. If any portion of the property distributed consists of property that had been contributed by the distributee Interest Holder to the Company, then such property shall not be taken into account under this Section 9.2(i) and shall not be taken into account in determining the amount of the Net PreContribution Gain. If the property distributed consists of an interest in an entity, the preceding sentence shall not apply to the extent that the value of such interest is attributable to the property contributed to such entity after such interest had been contributed to the Company.

- 18 -

003979

(f)     In connection with a Capital Contribution of money or other property (other than a de minimis amount) by a new or existing Interest Holder as a consideration for an Economic Interest or Membership Interest, or in connection with the liquidation of the Company or a distribution of money or other property (other than a de minimis amount) by the Company to a retiring Interest Holder (as consideration for an Economic Interest or Membership Interest), the Capital Accounts of the members shall be adjusted to reflect a revaluation of Company property (including intangible assets) in accordance with Treasury Regulation Section 1.704(1(b)(2)(iv)(f). If, under Section 1.704-1 (b) (2) (iv) (f) of the Treasury Regulations, Company property that has been revalued is properly reflected in the Capital Accounts and on the books of the Company at a book value that differs from the adjusted tax basis of such proper6ty, then depreciation, depletion, amortization, and gain or loss with respect to such property shall be shared among the Members in a manner that takes account of the variations between the adjusted tax basis and fair market value of property contributed to the Company are taken into account in determining the Members' shares of tax items Under Code Section 704(c).

(g)     All recapture of income tax deductions resulting from the sale or disposition of Company property shall be allocated to the Member or Members to whom the deduction that gave rise to such recapture was allocated hereunder to the extent that such Member is allocated any gain from the sale or other disposition of such property.

(h)     Any credit or charge to the Capital Accounts of the Members pursuant to Sections 9.2(b) (c), and/or (d), hereof shall be taken into account in computing subsequent allocations of profits and losses pursuant to Section 9.1, so that the net amount of any items charged or credited to Capital Accounts pursuant to Sections 9.1 and 9.2 shall to the extent possible, be equal to the net amount that would have been allocated to the Capital Account of each member pursuant to the provisions of this Article 9. If the special allocations required by Section 9.2(b), (c), and/or (d), had not occurred.

9.3     Distributions. Except as provided in Section 8.3(d), a Member has no right to demand and receive any distribution in a form other than cash. All distributions of cash or other property shall be made to the Members pro rata in proportion to the respective Percentage Interests of the Members on the record date of such distribution. Except as provided in Section 9.4, all distributions of Distributable Cash and property shall be made at such time as determined by the Members. All amounts withheld pursuant to the Code or any provisions of state or local tax law with respect to any payment or distribution to the members from the Company shall be treated as amounts distributed to the relevant Member or Members pursuant to this Section 9.3.

- 19 -

9.4   Limitation upon Distributions.

(a) No distributions or return of contributions shall be made and paid if, after the distribution or return of distribution is made either

(i)  the Company would be insolvent; or

(ii) the net assets of the Company would be less than zero.

(b)   The Members may base a determination that a distribution or return of contribution may be made under Section 9.4(a) in good faith reliance upon a balance sheet and profit and loss statement of the Company represented to be correct by the person having charge of its books of account or certified by an independent public or certified public accountant or firm of accountants to fairly reflect the financial condition of the Company.

9.5   Accounting Principles. The profits and losses of the Company shall be determined in accordance with generally accepted accounting principles applied on a consistent basis using the cash method of accounting.

9.6   Interest on Return of Capital Contributions. No member shall be entitled to interest on its Capital Contribution or to return of its Capital Contribution.

9.7   Loans to Company. Nothing in this Operating Agreement shall prevent any Member from making secured or unsecured loans to the Company by agreement with the Company.

9.8   Accounting Period. The Company's accounting period shall be the calendar year ("Fiscal Year").

9.9   Records, Audits, and Reports. At the expense of the Company, the Tax Matters Partner shall maintain records and accounts of the operations and expenditures of the Company. At a minimum the Company shall keep at its principal place of business the following records:

(a)   A current list of the full name and last known address of each Member and Economic Interest Owner setting forth the amount of cash each Member and Economic Interest Owner has contributed, a description and statement of the agreed value of the other property or services each Member and Economic Interest Owner has contributed or has agreed to contribute in the future, and the date on which each became an Interest Holder;

- 20 -

003981

(b) A copy of the Articles of Organization of the Company and all amendments thereto, together with executed copies of any powers of attorney pursuant to which any amendment has been executed;

(c) Copies of the Company's federal, state, and local income tax returns and reports, if any, for the three most recent years;

(d) Copies of the Company's currently effective written Operating Agreement, and copies of any financial statements of the Company for the three most recent years;

(e) Minutes of every meeting;

(f) Any written consents obtained from Members for actions taken by Members without a meeting; and

(g) Unless contained in the Articles of Organization or the Operating Agreement, a writing prepared by the Tax Matters Partner setting out the following:

(i) The times at which or events on the happening of which any additional contributions agreed to be made by each Member and Economic Interest Owner are to be made.

(ii) Any right of an Interest Holder to receive distributions that include a return of all or any part of the Interest Holder's contributions.

(iii) Any power of an Interest Holder to grant the right to become an assignee of any part of the Interest Holder's interest, and the terms and conditions of the power.

9.10 Returns and Other Elections. The Tax Matters Partner shall cause the preparation and timely filing of all tax returns required to be filed by the Company pursuant to the Code and all other tax returns deemed necessary and required in each jurisdiction in which the Company does business. Copies of such returns, or pertinent information therefrom, shall be furnished to the Members within a reasonable time after the end of the Company's fiscal year upon the Members' written request. All elections permitted to be made by the Company under federal or state laws shall be made by the Tax Matters Partner in his sole discretion. Provided that the Tax Matters Partner shall make any tax election requested by Members owning a Majority Interest.

003982

9.11    Tax Matters Partner. Ms. Safanpreet Kaur Multani is designated the "Tax Matters Partners" (as defined in Code Section 6231), and is authorized and required to represent the Company (at the Company's expense) in connection with all examinations of the Company's affairs by tax authorities, including, without limitation, administrative and judicial proceedings, and to expend Company funds for professional services and costs associated therewith. The Members agree to cooperate with each other and to do or refrain from doing any and all things reasonably required to conduct such proceedings.

## ARTICLE 10

## TRANSFERABILITY

10.1    General. Except as otherwise specifically provided herein, no Interest Holder shall have the right, as to all or any part of its Membership Interest or Economic Interest to:

(a)    sell, assign, pledge, hypothecate, transfer, exchange, or otherwise transfer for consideration, (collectively, "sell");

(b)    gift, bequeath, or otherwise transfer for no consideration (whether or not by operation of law, except in the case of bankruptcy); or

(c)    permit any transfer by reason of death of any equity holder or dissolution of marriage of any equity holder.

10.2    Right of First Refusal

(a)    If a selling Member desires to sell all or any portion of its Membership Interest or Economic Interest in the Company to a third party purchaser, the selling Member shall obtain from such third party purchaser a bona fide written offer to purchase such interest, stating the terms and conditions upon which the purchase is to be made and the consideration offered. The selling Member shall give written notification to the remaining Members, by certified mail or personal delivery, of its intention to so transfer such interest furnishing to the remaining Members a copy of the written offer to purchase such interest, and the name and business and personal addresses of the proposed transferee.

- 22 -

003983

(b)      Primary Option to Purchase. Within 35 days of the receipt of the notice of intention to transfer a Percentage Interest by the last of the Members to receive such notice, each remaining Member may exercise an option to purchase that proportion of the Percentage Interest proposed to be transferred which equals the proportion which the Percentage Interest owned by such remaining Member at the time of his receipt of the notice is of the total of the Percentage Interests then owned by all the remaining Members. The purchase option granted in this paragraph is herein referred to as the "Primary Option".

(c)      Secondary Option to Purchase. If a Member fails to exercise a Primary Option granted to him to purchase the Percentage Interest proposed to be transferred, each remaining Member who is granted and who exercises a Primary Option may, within ten days after the expiration of the 35-day option period provided for above, exercise an option to purchase the Percentage Interest with respect to which such Member has failed to exercise his Primary Option (hereinafter "the Option Interest"). In the case of a single remaining Member, his option shall be to purchase all of the Option Interest. In the case of two or more remaining Members, each such remaining Member's option shall be to purchase the portion of Option Interest which bears the same proportion to the total Option Interest as the Percentage Interest owned by each such remaining Member at the time of receipt of the notice provided for above bears to the total Percentage Interest then owned by all such remaining Members; provided that all such remaining Members may, by agreement among themselves, determine the proportions in which some or all of their number may exercise the option granted in this paragraph. The purchase option granted by this paragraph is referred to as the "Secondary Option".

(d)      In the event the remaining Members (or any one or more of the remaining Members) give written notice to the selling Member of their desire to exercise this right of first refusal and to purchase all of the selling Member's interest in the Company which the selling Member desires to sell upon the same terms and conditions as are stated in the aforesaid written offer to purchase, the remaining Members shall have the right to designate the time, date, and place of closing, provided that the date of closing shall be within sixty days after written notification to the Selling Member of the remaining Member or Members' election to exercise their right of the first refusal.

(e)      As a condition to the Company recognizing the effectiveness of either the purchase of the Selling Member's interest in the Company by a third party purchaser or the gift of an interest in the Company (including an Economic Interest), (subject to Section 10.3) substitution of a new Member, the remaining Members may

- 23 -

003984

require the Selling Member, Gifting Member or the proposed purchaser, donee or successor-in-interest, as the case may be, to execute, acknowledge, and deliver to the remaining Members such instruments of transfer, assignment and assumption and such other certificates, representations and documents, and to perform all such other acts which the remaining Members may deem necessary or desirable to:

(i) verify the purchase, gift, or transfer, as the case may be;

(ii) confirm that the person desiring to acquire an interest in the Company, or to be admitted as a Member, has accepted, assumed, and agreed to be subject and bound by all of the terms, obligations, and conditions of the Operating Agreement, (whether such Person is to be admitted as a new Member or an Economic Interest Owner);

(iii) maintain the status of the Company as a partnership for federal tax purposes; and

(iv) assure compliance with any applicable state and federal laws including securities laws and regulations.

(f)    Any sale or gift of a Membership Interest or Economic Interest or admission of a Member in compliance with this Article 10 shall be deemed effective as of the last day of the calendar month in which the remaining Members' consent thereto was given, or, if no such consent was required pursuant to Section 10.2(e), then on such date that the donee or successor interest complies with the conditions set forth in Section 10.2 (c ). The Selling Member agrees, upon request of the remaining Members, to execute such certificates or other documents and to perform such other acts as may be reasonably requested by the remaining Members from time to time in connection with such sale, transfer, assignment, or substitution. The Selling Member hereby indemnifies the Company and the remaining Members against any and all loss, damage, or expense (including, without limitation, tax liabilities or loss of tax benefits) arising directly or indirectly as a result of any transfer or purported transfer in violation of this Article 10.

10.3    Transferee Not Member in Absence of Unanimous Consent.

(a)    Notwithstanding anything contained herein to the contrary (including, without limitation, Section 10.2 hereof), if all of the remaining Members do not approve by unanimous written consent of the proposed sale or gift of the Transferring Member's Membership Interest or Economic Interest to a transferee or donee which is not

003985

a Member immediately prior to the sale or gift, then the proposed transferee or donee shall have no right to participate in the management of the business and affairs of the Company or to become a member. The transferee or donee shall be merely an Economic Interest Owner. No transfer of a Member's interest in the Company (including any transfer of the Economic Interest or any other transfer that has not been approved by unanimous written consent of the Members) shall be effective unless and until written notice (including the name and address of the proposed transferee or donee and the date of such transfer) has been provided t the Company and the non transferring Member(s)

(b)  Upon and contemporaneously with any sale or gift of a Transferring Member's Economic Interest in the Company which does not at the same time transfer the balance of the rights associated with the Economic Interest transferred by the Transferring Member (including, without limitation, the rights of the Transferring Member to participate in the management of the business and affairs of the Company), all remaining rights and interest that were owned by the Transferring Member immediately prior to such sale or gift or that were associated with the transferred Economic Interest shall immediately lapse until either (1) the remaining Members, by unanimous consent, reinstate such rights to the Economic Interest Owner who did not previously obtain the unanimous written consent of the Members or (2) upon the remaining Members, by unanimous written consent, reinstating such rights to a successor or transferee of such Economic Interest Owner.

## ARTICLE II

## ADDITIONAL MEMBERS

11.1  From the date of the formation of the Company, any Person or Entity acceptable to the Members by a majority vote thereof may become a Member in this Company either by the issuance by the Company of Membership Interests for such consideration as the Members by their votes shall determine, or as a transferee of a member's Membership Interest or any portion thereof, subject to the terms and conditions of this Operating Agreement. No new Members shall be entitled to any retroactive allocation of losses, income, or expense deductions incurred by the Company. The Tax Matters Partner may, at his option, at the time a member is admitted, close the Company books (as though the Company's tax year has ended) or make pro rata allocations of loss, income, and expense deductions to a new Member for that portion of the Company's tax year in which a Member was admitted in accordance with the provisions of Code Section 706(d) and the Treasury Regulations promulgated thereunder.

- 25 -

003986

## ARTICLE 12

### DISSOLUTION AND TERMINATION

12.1   Dissolution

(a)   The Company shall be dissolved upon the occurrence of any of the following events:

(i)   When the period fixed for the duration of the Company shall expire pursuant to Section 2.5 hereof;

(ii)   by the unanimous written agreement of all Members; or

(iii)   upon the happening of a Withdrawal Event, unless the business of the Company is continued by the consent of all the remaining Members within ninety days after the Withdrawal Event.

(b)   Notwithstanding anything to the contrary in this Operating Agreement, if a Member or Members owning Percentage Interests which in the aggregate constitute not less than two thirds (2/3) of the Percentage Interest vote to dissolve the Company at a meeting of the Company pursuant to Article 7, then all of the Members shall agree in writing to dissolve the Company on the date agreed upon or in the event of no agreement, as soon as possible, but in any event not more than thirty days thereafter.

(c)   If a Member who is an individual dies or a court of competent jurisdiction adjudges him to be incompetent to manage his person or his property, the Member's executor, administrator, guardian, conservator, or other legal representative may exercise all of the Member's rights for the purpose of settling his estate or administering his property.

(d)   A Member shall not take any voluntary action that directly causes a Withdrawal Event. Unless otherwise approved by Members owning a Majority Interest, a Member who resigns (a "Resigning Member") or whose Membership Interest is otherwise terminated by virtue of a Withdrawal Event, regardless of whether such Withdrawal Event was the result of a voluntary act by such Member, shall not be entitled to receive any distributions in excess of those distributions to which such Member would have been entitled had such Member remained a Member. Except as otherwise expressly provided herein, a Resigning Member shall immediately become an Economic Interest Owner. Damages for breach of this Section 12.1(d) shall be monetary damages only (and not specific performance), and such damages may be offset against distributions by the Company to which the Resigning Member would otherwise be entitled.

- 26 -

003987

12.2    Winding Up, Liquidation, and Distribution of Assets

(a)    Upon dissolution, an accounting shall be made by the Company's independent accountants of the accounts of the Company and of the Company's assets liabilities, and operations, from the date of the last previous accounting until the date of dissolution. The Members shall immediately proceed to wind up the affairs of the Company.

(b)    If the Company is dissolved and its affairs are to be wound up, the Members shall:

(i)    Sell or otherwise liquidate all of the Company's assets as promptly as practicable (except to the extent the Members may determine to distribute any assets to the Members in kind),

(ii)    Allocate any profit or loss resulting from such sales to the Members' and Economic Interest Owners' capital Accounts in accordance with Article 9 hereof,

(iii)    Discharge all liabilities of the Company, including liabilities to Members and Economic Interest Owners who are creditors, to the extent otherwise permitted by law, other than liabilities to Members and Economic Interest Owners for Distributions, and establish such Reserves as may be reasonably necessary to provide for contingent liabilities of the Company (for purposes of determining the Capital Accounts of the Members and Economic Interest Owners, the amounts of such Reserves shall be deemed to be an expense of the Company),

(iv)    Distribute the remaining assets in the following order:

(1)    If any assets of the Company are to be distributed in kind, the net fair market value of such assets as of the date of dissolution shall be determined by independent appraisal or by agreement of the Members. Such assets shall be deemed to have been sold as of the date of dissolution for their fair market value, and the Capital Accounts of the Members and Economic Interest Owners shall be adjusted pursuant to the provisions of Article 9 and Section 8.3 of this Operating Agreement to reflect such deemed sale.

- 27 -

(2) The positive balance (if any) of each Member's and Economic Interest Owner's Capital Account (as determined after taking into account all Capital Account adjustments of the Company's taxable year during which the liquidation occurs) shall be distributed to the Members, either in cash or in kind, as determined by the Members, with any assets distributed in kind being valued for this purpose at their fair market value as determined pursuant to Section 12.2(b)(i). Any such distributions to the Members in respect of their Capital Accounts shall be made in accordance with the time requirements set forth in Section 1.704-1(b)(2)(ii)(b)(2) of the Treasury Regulations.

(c) Notwithstanding anything to the contrary in this Operating Agreement, upon a liquidation within the meaning of Section 1.704-1(b)(2)(ii)(g) of the Treasury Regulations, if any Member has a Deficit Capital Account (after giving effect to all contributions, distributions, allocation, and other Capital Account adjustments for all taxable years, including the year during which such liquidation occurs), such Member shall have no obligation to make any Capital Contribution, and the negative balance of such Member's Capital Account shall not be considered a debt owed by such member to the Company or to any other Person for any purpose whatsoever.

(d) Upon completion of the winding up, liquidation and distribution of the assets, the Company shall be deemed terminated.

(e) The Members shall comply with all requirements of applicable law pertaining to the winding up of the affairs of the Company and the final distribution of its assets.

12.3 Articles of Dissolution. When all debts, liabilities, and obligations of the Company have been paid and discharged or adequate provisions have been made therefor and all of the remaining property and assets of the Company have been distributed, articles of dissolution as required by the Act, shall be executed in duplicate and filed with the Illinois Secretary of State.

12.4 Effect of Filing of Articles of Dissolution. Upon the filing of articles of dissolution with the Illinois Secretary of State, the existence of the Company shall cease, except for the purpose of suits, other proceedings and appropriate action as provided in the Act. The Members shall have authority to distribute any Company property discovered after dissolution, convey real estate and take such other action as may be necessary on behalf of and in the name of the Company.

003989

12.5  Return of Contribution Nonrecourse to Other Members. Except as provided by law or as expressly provided in this Operating Agreement, upon dissolution, each Member shall look solely to the assets of the Company for the return of its Capital Contribution. If the Company property remaining after the payment or discharge of the debts and liabilities of the Company is insufficient to return the cash contribution of one or more Members, such Member or Members shall have no recourse against any other Member, except as otherwise provided by law.

## ARTICLE 13

## MISCELLANEOUS PROVISIONS

13.1  Notices. Any notice, demand, or communication required or permitted to be given by any provision of this Operating Agreement shall be deemed to have been sufficiently given or served for all purposes if (1) either by actual delivery of the notice into the hands of the parties thereunto entitled; (2) or by the mailing of the notice in the U.S. mail, certified mail, return receipt requested; or (3) sent by nationally recognized, overnight delivery service, addressed to the Member's and/or Company's address, as appropriate, which is set forth in this Operating Agreement. The notice shall be deemed to be received in case (1) on the date of its actual receipt by the party entitled thereto and in case (2) or (3) on the date of its mailing or deposit with such delivery service. The failure or refusal of any party to accept any notice given pursuant to this paragraph shall be conclusively deemed receipt thereof and knowledge of its contents.

13.2  Books of Account and Records. Proper and complete records and books of account shall be kept or shall be caused to be kept by the Managers in which shall be entered fully and accurately all transactions relating to the Company's business in such detail and completeness as is customary and usual for businesses of the type engaged in by the Company. Such books and records shall be maintained as provided in Section 9.9. The books and records shall at all times be maintained at the principal place of business of the Company or at such other location as the Managers may determine.

13.3  Application of Illinois Law. This Operating Agreement and its interpretation shall be governed exclusively by its terms and by the laws of the State of Illinois, and specifically the Act.

13.4  Waiver of Action for Partition. Each Member and Economic Interest Owner irrevocably waives during the term of the Company any right that it may have to maintain any action for the partition with respect to the property of the Company.

- 29 -

003990

13.5    Amendments. This Operating Agreement may not be amended except in writing by the affirmative vote of Members holding at least two thirds (2/3) of all Percentage Interests. Any amendment changing the Percentage Interests of the Members requires the unanimous vote of the Members.

13.6    Execution of Additional Instruments. Each Member hereby agrees to execute such other and further statements of interests and holdings, designations and other instruments necessary to comply with any laws, rules, or regulations.

13.7    Construction. Whenever the singular number is used in this Operating Agreement and when required by the context, the same shall include the plural and vice versa, and the masculine gender shall include the feminine and neuter genders and vice versa.

13.8    Holdings. The headings in this Operating Agreement are inserted for convenience only and are in no way intended to describe, interpret, define, or limit the scope, extent, or intent of this Operating Agreement or any provision hereof.

13.9    Waivers. The failure of any party to seek redress for default of or to insist upon the strict performance of any covenant or condition of this Operating Agreement shall not prevent a subsequent act, which would have originally constituted a default, from having the effect of an original default.

13.10   Rights and Remedies Cumulative. The rights and remedies provided by this Operating Agreement are cumulative and the use of any one right or remedy by any party shall not preclude or waive the right to use any other remedy. Said rights and remedies are given in addition to any other legal rights the parties may have.

13.11   Severability. If any provision of this Operating Agreement or the application thereof to any person or circumstance shall be invalid, illegal or unenforceable to any extent, the remainder of this Operating Agreement and the application thereof shall not be affected and shall be enforceable to the fullest extent permitted by law.

13.12   Heirs, Successors, and Assigns. Each and all of the covenants, terms, provisions, and agreements herein contained shall be binding upon and inure to the benefit of the parties hereto and, to the extent permitted by this Operating Agreement, their respective heirs, legal representatives, successors, and assigns.

13.13   Creditors. None of the provisions of this Operating Agreement shall be for the benefit of or enforceable by any creditors of the Company.

- 30 -

003991

13.14   Counterparts. This Operating Agreement may be executed in counterparts, each of which shall be deemed an original but all of which shall constitute one and the same instrument.

13.15   Entire Agreement. This Operating Agreement supersedes all agreements previously made between the parties relating to its subject matter. There are no other understandings or agreements between them. It contains the entire agreement of the parties. It may not be changed orally but only by an agreement in writing signed by the party against whom enforcement of any waiver, change, modification, extension, or discharge is sought.

13.16   Joint Preparation. The Parties have participated jointly in the negotiation and drafting of this Agreement. In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the Parties and no presumption or burden of proof shall arise favoring or disfavoring any party by virtue of the authorship of any of the provisions of this Agreement.

13.17   Incorporation of Exhibits, Annexes, and Schedules. The Exhibits, Annexes, and Schedules identified in this Agreement are incorporated herein by reference and made a part hereof.

IN WITNESS WHEREOF, the parties hereto have caused their signatures, or the signatures of their duly authorized representatives, to be set forth below on the day and year first above written.

By:_____
Name: Surinder P. S. Multani as Trustee of the
Gurpriya Kaur Multani Irrevocable Trust


By:_____
Name: Surinder P. S. Multani as Trustee of the Japi
Singh Multani Irrevocable Trust


By:_____
Name: Surinder P. S. Multani as Trustee of the
Gurtap Singh Multani Irrevocable Trust

- 31 -

003992

By:_____
Name: Safanpreet Kaur Multani

By:_____
Name: Surinder P. S. Multani

- 32 -

003993

EXHIBIT A
to
Operating Agreement
for
ABBE PROPERTIES LLC

MEMBERS

| Name | Description of Contribution | Amount | % |
|---|---|---|---|
| Surinder P. S. Multani as Trustee of the Japi Singh Multani Irrevocable Trust | Cash | 166.66 | 16.666% |
| Surinder P. S. Multani as Trustee of the Gurpriya Kaur Multani Irrevocable Trust | Cash | 166.66 | 16.666% |
| Surinder P. S. Multani As Trustee of the Gurtap Singh Multani Irrevocable Trust | Cash | 166.66 | 16.666% |
| Safanpreet Kaur Multani | Cash | 400.00 | 40% |
| Surinder P. S. Multani | Cash | 100.00 | 10% |

MANAGER

Safanpreet Kaur Multani

INSERT NO.1 page 5

NAME AND ADDRESS OF EACH MEMBER

Surinder P. S. Multani as Trustee of the Japi Singh Multani Irrevocable Trust c/o 2015 South Arlington Heights Road, Suite 120, Arlington Heights, Illinois 60005

Surinder P. S. Multani as Trustee of the Gurpriya Kaur Multani Irrevocable Trust c/o 2015 South Arlington Heights Road, Suite 120, Arlington Heights, Illinois 60005

Surinder P. S. Multani as Trustee of the Gurtap Singh Multani Irrevocable Trust c/o 2015 South Arlington Heights Road, Suite 120, Arlington Heights, Illinois 60005.

Safanpieet Kaur Multani c/o 2015 South Arlington Heights Road, Suite 120, Arlington Heights, Illinois 60005.

Surinder P. S. Multani c/o 2015 South Arlington Heights Road, Suite 120, Arlington Heights, Illinois 60005.

INSERT NO. 1 AT PAGE 17

Surinder P. S. Multani as Trustee of the Japi Singh Multani Irrevocable Trust and under his percentage it will be 16.666%

Surinder P. S. Multani as Trustee of the Gurpriya Kaur Multani Irrevocable Trust and under the percentage it will be 16.666%.

Surinder P. S. Multani as Trustee of the Gurtap Singh Multani Irrevocable Trust and under the percentage it will be 16.666%.

INSERT NO. 1-31 FIRST SIGNATURE LINE By:Surinder P.S. Multani as Trustee of the Gurpriya Kaur Multani Irrevocable Trust.
Next Signature Line by: Surinder P. S. Multani as Trustee of the Japi Singh Multani Irrevocable Trust
Next Signature Line By: Name: Surinder P.S. Multani as Trustee of the Gurtap Singh Multani Irrevocable Trust
Next Signature Line By: Name: Safanpieet Kaur Multani
Last Signature Line by: Name: Surinder P. S. Multani

INSERT 1 FOR EXHIBIT A TO THE OPERATING AGREEMENT

FIRST NAME Surinder P. S. Multani as Trustee of the Japi Singh Multani Irrevocable Trust percentage should be 16.666%

Surinder P. S. Multani as Trustee of the Gurpriya Kaur Multani Irrevocable Trust cash stays the same and the amount is 166.66 percentage is 10%

Then Surinder P.S. Multani as Trustee of the Gurtap Singh Multani Irrevocable Trust

13.14  Counterparts. This Operating Agreement may be executed in counterparts, each of which shall be deemed an original but all of which shall constitute one and the same instrument.

13.15  Entire Agreement. This Operating Agreement supersedes all agreements previously made between the parties relating to its subject matter. There are no other understandings or agreements between them. It contains the entire agreement of the parties. It may not be changed orally but only by an agreement in writing signed by the party against whom enforcement of any waiver, change, modification, extension, or discharge is sought.

13.16  Joint Preparation. The Parties have participated jointly in the negotiation and drafting of this Agreement. In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the Parties and no presumption or burden of proof shall arise favoring or disfavoring any party by virtue of the authorship of any of the provisions of this Agreement.

13.17  Incorporation of Exhibits, Annexes, and Schedules. The Exhibits, Annexes, and Schedules identified in this Agreement are incorporated herein by reference and made a part hereof.

IN WITNESS WHEREOF, the parties hereto have caused their signatures, or the signatures of their duly authorized representatives, to be set forth below on the day and year first above written.

By: _____
Name: Surinder P. S. Multani as Trustee of the
Gurpriya Kaur Multani Irrevocable Trust

By: _____
Name: Surinder P. S. Multani as Trustee of the Japi
Singh Multani Irrevocable Trust

By: _____
Name: Surinder P. S. Multani as Trustee of the
Gurtap Singh Multani Irrevocable Trust

- 31 -

003997

By:_____

Name: Safanpreet Kaur Multani

By:_____

Name: Surinder P.S. Multani

003998



SERVICES      PROGRAMS      PRESS      PUBLICATIONS      DEPARTMENTS      CONTACT

## LLC FILE DETAIL REPORT

| | | | |
|---|---|---|---|
| Entity Name | ABBE PROPERTIES, LLC | File Number | 00919799 |
| Status | NGS | On | 05/01/2008 |
| Entity Type | LLC | Type of LLC | Domestic |
| File Date | 05/15/2003 | Jurisdiction | IL |
| Agent Name | SURINDER S. MULTANI | Agent Change Date | 05/15/2003 |
| Agent Street Address | 2015 S ARLINGTON HTS RD #120 | Principal Office | 2015 S ARLINGTON HTS RD #120 ARLINGTON HEIGHTS 60005 |
| Agent City | ARLINGTON HEIGHTS | Management Type | MBR |
| Agent Zip | 60005 | Dissolution Date | PERPETUAL |
| Annual Report Filing Date | 00/00/0000 | For Year | 2008 |
| Series Name | NOT AUTHORIZED TO ESTABLISH SERIES | | |

**Return to the Search Screen**

BACK TO CYBERDRIVEILLINOIS.COM HOME PAGE

EXHIBIT B

7/21/2008

IN THE UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF ILLINOIS

GD Deal Holdings, LLC

vs.    Surinder Multani, et al.

Case Number    08 CV 1722

### AFFIDAVIT OF SERVICE

I, Ronald Steffens, being first duly sworn on oath deposes and states that I am over the age of 18 years and not a party to this action, and on the 11 day of April, 2008, at 08:15 PM at 24 Bright Ridge, Schaumburg, IL 60194, did serve the following document(s):

**Summons and Complaint**

Upon:  **Abbe Properties, LLC**

By:  ☑ Personally serving to:  Surinder Multani

☐ leaving copies at the usual place of abode with:

a member of the household 13 years or upwards and informed that person of the contents thereof

☐ by mailing copies of said document(s) in a sealed envelope with postage fully prepaid to the defendant:

at 24 Bright Ridge, Schaumburg, IL 60194 on

| Description: | Sex | **Male** | Race | **Middle Eastern** | Approximate Age | **56** |
|---|---|---|---|---|---|---|
| | Height | **5'10** | Weight | **160** | Hair Color | **Black** |

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this affidavit of service are true and correct.

Further the Affiant Sayeth Naught:

Ronald Steffens
United Processing, Inc.
55 West Wacker Drive, 9th Floor
Chicago, IL 60601
IL License #117-001101

EXHIBIT C

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### CASE NUMBER 08-CV-1722

GD DEAL HOLDINGS, LLC                                    PLAINTIFF

v.

SURINDER MULTANI, et al.                                 DEFENDANTS

### AFFIDAVIT OF SCOTT A. BACHERT

Scott A. Bachert, being sworn, deposes and says:

1.    He is attorney for GD Deal Holdings, LLC, Plaintiff and judgment creditor in the above-entitled action, and makes this Affidavit in support of Plaintiff's foregoing Motion for Default Judgment and Entry of Charging Order Against Judgment Debtor's Interest in ABBE Properties, LLC.

2.    On May 11, 2007, the United States District Court for the Western District of Kentucky granted a judgment to GD Deal Holdings against Surinder Multani for the recovery of $10,048,295.12 with interest thereon at the judgment rate of 4.9% per annum from the date of judgment until paid.

3.    On September 4, 2007, GD Deal Holdings registered the judgment in the United States District Court for the Northern District of Illinois, Case Number 1:07-cv-04965.

4.    The judgment remains outstanding and unsatisfied.

5.    Affiant is informed and believes, and on that basis alleges, that Surinder Multani is a member of ABBE Properties, LLC and the interest of Surinder Multani may properly be charged with the unpaid judgment in this action.

6.    ABBE Properties, LLC was served with process on April 11, 2008.

7.    ABBE Properties, LLC has failed to file responsive pleadings herein.

EXHIBIT D

8.    Affiant has received no pleadings or papers from ABBE Properties, LLC.

This the 23rd day of _____ July _____, 2008.

_____
SCOTT A. BACHERT

COMMONWEALTH OF KENTUCKY    )
                                                          )
COUNTY OF WARREN                      )

    Subscribed, sworn to and acknowledged before me by Scott A. Bachert, on this the 23rd day of _____ July _____, 2008.

_____
Sheila Stephens
NOTARY PUBLIC
My Commission Expires: 8/25/09

2

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
CASE NUMBER 08-CV-1722

GD DEAL HOLDINGS, LLC                                                                 PLAINTIFF

<u>**DEFAULT JUDGMENT AS AGAINST ABBE PROPERTIES, LLC**</u>
vs.                       <u>**AND ORDER ENTERING CHARGING ORDER**</u>

SURINDER MULTANI, et al.                                                          DEFENDANTS

** ** **

This matter having come before the Court on GD Deal Holdings, LLC's Motion for Default

Judgment and Entry of Charging Order Against Judgment Debtor's Interest in ABBE Properties,

LLC, the Court finds as follows:

1.      On May 11, 2007, the United States District Court for the Western District of

Kentucky granted a judgment to GD Deal Holdings against Surinder Multani for the recovery of

$10,048,295.12 with interest thereon at the judgment rate.

2.      On September 4, 2007, GD Deal Holdings registered the judgment in the United

States District Court for the Northern District of Illinois, Case Number 1:07-cv-04965.

3.      The judgment has not been satisfied.

4.      GD Deal Holdings, LLC is entitled as a matter of right under 805 ILCS 180/30-20 to

a charging order against any interest of Surinder Multani in a limited liability company.  There is no

just reason for delay in entry of a charging order.

5.      Surinder Multani is a member of ABBE Properties, LLC.

6.      The records on file with the Illinois Secretary of State demonstrate that Surinder

Multani serves as ABBE Properties, LLC's registered agent.

7.      ABBE Properties, LLC was served with process and a copy of the Complaint on

April 11, 2008 and has failed to file responsive pleadings; therefore, being in default.

THEREFORE, IT IS ORDERED that the Plaintiff's Motion for Default Judgment is GRANTED.

IT IS FURTHER ORDERED by the Court that the interest of Surinder Multani as a member of ABBE Properties, LLC be and is hereby subjected to an encumbrance and charging order in favor of and for the benefit of GD Deal Holdings, LLC.

IT IS FURTHER ORDERED by the Court that ABBE Properties, LLC pay over to GD Deal Holdings, LLC such amounts as may from time to time become payable or distributable to Surinder Multani by reason of his interest in ABBE Properties, LLC.

IT IS FURTHER ORDERED by the Court that Surinder Multani pay to GD Deal Holdings, LLC such amounts as may from time to time become payable or distributable to Surinder Multani by reason of his interest in ABBE Properties, LLC.

IT IS FURTHER ORDERED by the Court that ABBE Properties, LLC produce, within fifteen (15) days of the date of this Order, a copy of all operating agreements for ABBE Properties, LLC and/or any other agreement controlling the interest of Surinder Multani, with such documents to be provided to GD Deal Holdings, LLC's attorney, together with evidence showing the value of the capital and/or income attributable to the interest of Surinder Multani in ABBE Properties, LLC and copies of any and all tax returns filed during the last three (3) years on behalf of ABBE Properties, LLC.

IT IS FURTHER ORDERED by the Court that ABBE Properties, LLC file with the Clerk of this Court, within fifteen (15) days of the date of this Order, a sworn statement reporting to the Court all amounts distributable or payable to Surinder Multani at the time of this Order.  In such sworn statement, ABBE Properties, LLC shall state the value at the time of entry of this Order of both the capital and income account attributable to Surinder Multani's interest in ABBE Properties, LLC.

Jurisdiction is retained for such further orders and proceedings as may be necessary.

DATED, this the _____ day of _____, 2008.


_____
JUDGE, UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS



Tendered by:

THOMAS M. FALKENBERG
WILLIAMS MONTGOMERY & JOHN LTD.
20 North Wacker Drive, Suite 2100
Chicago, Illinois 60606-3094
Telephone: (312) 443-3200

-and-

HARNED, BACHERT & DENTON, LLP
324 East Tenth Avenue
Post Office Box 1270
Bowling Green, Kentucky  42102-1270
Telephone:  (270) 782-3938

/s/ Scott A. Bachert
SCOTT A. BACHERT