**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
CASE NUMBER 08-CV-1722

GD DEAL HOLDINGS, LLC                                              PLAINTIFF

**REPLY OF GD DEAL HOLDINGS, LLC**
v.            **TO RESPONSE TO MOTION FOR ORDER OF SALE**

SURINDER MULTANI, et al.                                           DEFENDANTS

Comes now the Plaintiff, GD Deal Holdings, LLC, by and through counsel, and, pursuant to the Court's Order (Docket # 32) entered herein on June 16, 2008, for its Reply to Response to Motion for Order of Sale, states as follows:

1.      On May 11, 2007, the United States District Court for the Western District of Kentucky granted a judgment to GD Deal Holdings against Surinder Multani for the recovery of $10,048,295.12 with interest thereon at the judgment rate of 4.9% per annum from the date of judgment until paid.

2.      The judgment debtor Surinder Multani has not filed a supersedeas bond pursuant to FED. R. CIV. P. 62(d) or taken any other action to stay enforcement of the judgment.

3.      On September 4, 2007, GD Deal Holdings registered the judgment in the United States District Court for the Northern District of Illinois, Case Number 1:07-cv-04965.

4.      On October 9, 2007, GD Deal Holdings, LLC filed a Memorandum of Judgment in the real property records for the Office of the Cook County, Illinois Recorder of Deeds.

5.      The judgment debtor Surinder Multani owns significant assets located within the jurisdiction of this Court including: 1) real property located at 24 Bright Ridge Drive, Schaumburg, Illinois; 2) real property located at 302 Midwest Club, Oak Brook, Illinois; 3) interests in multiple limited liability companies and closely held corporations; and 4) substantial personal property assets.

6.    The judgment debtor Surinder Multani has significant financial transaction experience and is in the business of brokering bank debit and credit cards throughout Illinois, Wisconsin, Indiana, Michigan, Iowa, and occasionally other states.  A copy of a *Motion to Modify Terms of Bond* recently filed by Surinder Multani and demonstrating the extensive nature of his ongoing financial transfers is attached hereto as "Exhibit A" for the Court's consideration.  Further demonstrating the judgment debtor Surinder Multani's substantial financial transactions in multiple states are copies, attached hereto as "Exhibit B", of a *Superseding Indictment* recently filed in the United States District for the Southern District of Iowa and a *Criminal Complaint* recently filed in the United States District Court for the Northern District of Illinois.

7.    The judgment debtor Surinder Multani has ready access to substantial sums of cash. An *Appearance Bond* recently filed by Surinder Multani and demonstrating his access to significant liquid assets is attached hereto as "Exhibit C" for the Court's consideration.

8.    The judgment entered by the United States District Court for the Western District of Kentucky remains unsatisfied.

9.    On June 10, 2008, GD Deal Holdings, LLC filed a *Motion for Order of Sale* herein (Docket # 30).  Within the *Motion for Order of Sale*, GD Deal Holdings, LLC requests that certain assets comprising a portion of the judgment debtor Surinder Multani's real and personal property be liquidated for payment on the judgment pursuant to: 28 USC §§ 2001, 2002, and 2004; 28 USC 1962; FED. R. CIV. P. 69; and 735 ILL. COMP. STAT. 5/12-152.

10.    On June 16, 2008 the Court entered an Order (Docket # 32) granting all Defendants herein until July 16, 2008 to respond to the currently pending *Motion for Order of Sale*.

11.    On July 11, 2008, the Defendant Citibank, the holder of a mortgage on one of the judgment debtor Surinder Multani's real property assets, filed *Defendant Citibank's Response to*

*Plaintiff's Motion for Order of Sale* (Docket # 36).  Within *Defendant Citibank's Response to Plaintiff's Motion for Order of Sale*, Citibank states that it has no objection to GD Deal Holdings, LLC's *Motion for Order of Sale*.

12.     The judgment debtor Surinder Multani failed to file any response to the *Motion for Order of Sale* prior to the July 16, 2008 deadline for responses as set by the Court.

13.     On July 26, 2008, ten days after the deadline for filing any response to the *Motion for Order of Sale*, the judgment debtor Surinder Multani filed a general denial *Answer* (Docket # 50) to GD Deal Holdings, LLC's original *Complaint* (Docket # 1).

14.     To date, the judgment debtor Surinder Multani has filed no response to the *Motion for Order of Sale*.  The relief requested within the *Motion for Order of Sale* is available to a creditor of a judgment debtor under both Illinois and Federal law.   28 USC §§ 2001, 2002, and 2004; 28 USC 1962; FED. R. CIV. P. 69; and 735 ILL. COMP. STAT. 5/12-152.  As such, GD Deal Holdings, LLC submits that the *Motion for Order of Sale* should be granted.

WHEREFORE, GD Deal Holdings, LLC respectfully requests:

1.     That any Order be entered directing the sale of the judgment debtor Surinder Multani's real property located at 24 Bright Ridge Drive, Shaumburg, Illinois with the proceeds to be applied towards satisfaction of the mortgage debt thereon and the judgment debt owed to GD Deal Holdings, LLC;

2.     That an Order be entered directing the sale of the judgment debtor Surinder Multani's personal property with the proceeds to be applied towards satisfaction of the judgment debt owed to GD Deal Holdings, LLC; and

3.     Any and all further appropriate relief.

This day, July 30, 2008.

THOMAS M. FALKENBERG
WILLIAMS MONTGOMERY & JOHN LTD.
20 North Wacker Drive, Suite 2100
Chicago, Illinois 60606-3094
Telephone: (312) 443-3200

-and-

HARNED, BACHERT & DENTON, LLP
324 East Tenth Avenue
Post Office Box 1270
Bowling Green, Kentucky  42102-1270
Telephone:  (270) 782-3938

/s/ Scott A. Bachert
SCOTT A. BACHERT

CERTIFICATION:

This is to certify that a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court this day, July 30, 2008, by using the CM/ECF system, which will send a notice of electronic filing to the following:

Hon. Lucia Nale
Hon. Diane Renae Sabol
Hon. Nicole Joy Highland
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 630606-4637

Hon. Robert T. Kuehl
WELTMAN, WEINBERG & REIS CO., L.P.A.
180 N. LaSalle Street, Suite 2400
Chicago, Illinois 60601

Hon. James O. Stola
LAW OFFICE OF JAMES O. STOLA
3701 West Fullerton
Chicago, Illinois 60647

This is to certify that a true and correct copy of the foregoing document was this day, July 30, 2008, placed in the US Mail, postage prepaid, addressed to the following:

Hon. Leroy Simms
6061 Savoy Drive
Houston, Texas 77036

Babaji PS, LLC
c/o: Narendra Bhalla, Registered Agent
1718 Fry Road, Suite 415
Houston, Texas 77084

Capital Access & Investments, LLC
c/o: Narendra Bhalla, Registered Agent
1718 Fry Road, Suite 415
Houston, Texas 77084

G & S Portage, Inc.
c/o: Ajai Agnihotri, Registered Agent
1856 Samuelson Road
Portage, Indiana 46368


/s/ Scott A. Bachert
SCOTT A. BACHERT

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA,
v.
SURINDER MULTANI,
        also known as "Sam Multani")

No. 07CR655

## MOTION TO MODIFY TERMS OF BOND

    1. SURINDER MULTANI is engaged in a business of brokering bank debit and credit cards throughout Illinois, Wisconsin, Indiana, Michigan, Iowa, and occasionally other states which requires him to leave the jurisdiction of the Northern District of Illinois two to three times per week.

    2. The terms of the bond issued in the above cause require SURINDER MULTANI to report to pretrial services in order to leave the jurisdiction of the Northern District of Illinois which is time consuming for both defendant and pretrial services.

    Wherefore, Defendant SURINDER MULTANI moves this court to modify the terms of his bond to allow him to travel outside of the Northern District of Illinois to other parts of Illinois, Wisconsin, Iowa, Indiana, Michigan, and require him only to report should he need to to travel to a state other than those listed.

Respectfully submitted,

/s/ James O. Stola
JAMES O. STOLA

ATTORNEY NO. 51775
LAW OFFICE OF JAMES O. STOLA
3701 WEST FULLERTON AVENUE
CHICAGO, IL 60647
(773)342-1170
FAX: (773)342-1185
E-MAIL: JSTOLA@SBCGLOBAL.NET

EXHIBIT A

## CERTIFICATE OF SERVICE

On the _____ day of November, 2007, a true and correct copy of the foregoing Motion for Substitution of Attorney was delivered to:

**Felicia Manno Alesia**
United States Attorney's Office
219 South Dearborn Street
Chicago, IL 60604

/s/ James O. Stola_____

JAMES O. STOLA

ATTORNEY NO. 51775
LAW OFFICE OF JAMES O. STOLA
3701 WEST FULLERTON AVENUE
CHICAGO, IL 60647
(773)342-1170
FAX: (773)342-1185
E-MAIL: JSTOLA@SBCGLOBAL.NET



RECEIVED
SEP 2 5 2007
CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF IOWA

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Criminal No. 4:07-CR-177 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | SUPERSEDING |
| SUKHDEV "SAM" SINGH and | ) | INDICTMENT |
| SURINDER "SAM" MULTANI, | ) | T. 18 U.S.C. § 371 |
| | ) | T. 18 U.S.C. § 1341 |
| Defendants. | ) | T. 18 U.S.C. § 1343 |

THE GRAND JURY CHARGES:

### COUNT ONE
### (18 U.S.C. § 371  - Conspiracy)

### A.  INTRODUCTION

At all times material to this Indictment:

1.    Defendant SUKHDEV "SAM" SINGH owned and operated businesses operating
under the names of RPS Petroleum and U.S. Petro, Inc .

2.    Defendant SURINDER "SAM" MULTANI owned and operated businesses under
the names of "Abacus Finance" and "Cal Park Marathon".

3.    The Small Business Administration ("SBA") was an agency of the United States
established by Congress, through the Small Business Act of 1953 (15 U.S.C. § 631, et seq.), to
provide financial, technical and management assistance to qualified small businesses.

4.    The SBA "7(a) Loan Guaranty Program" of the Small Business Act, Title 15,
United States Code, Section 635(a), authorized the SBA to provide financial assistance to

EXHIBIT B

eligible, credit-worthy start-up and existing small businesses through loan guarantees to participating lenders.

5.     Business Loan Center, Inc. (hereinafter "BLC") was a private lender with an office in New York, New York, which participated in the SBA loan guaranty program.

6.     RPS Petroleum, Inc. (hereinafter "RPS") was a corporation formed in the state of Iowa with the principal office address in Naperville, Illinois, with SUKHDEV SINGH listed as an officer of the corporation.

7.     U.S. Petro, Inc. (hereinafter "U.S. Petro") was a corporation formed in the state of Iowa, listing SUKHDEV SINGH, Davenport, Iowa as the incorporator.

8.     AG Food and Gas Mart II, Inc. (hereinafter "AG II") was a corporation formed in the state of Iowa with the principal place of business listed as Indianola, Iowa, and listing Amarjit Singh, Bondurant, Iowa, as president of the corporation. AG II purchased convenience stores located in Harlan and Sioux City, Iowa.

9.     AG Food and Gas Mart III, Inc. (hereinafter "AG III") was a corporation formed in the state of Iowa with the principal place of business listed as Indianola, Iowa, and listing Amarjit Singh, Bondurant, Iowa, as president of the corporation. AG III purchased convenience stores located in Des Moines, Iowa.

10.     MKKS, LLC (hereinafter "MKKS") was a limited liability company organized under the laws of the state of Iowa, with the principal place of business listed as Cedar Falls, Iowa, and listing Mohammad Anwar and Davinder Khokhar as the initial members of the limited liability company. MKKS purchased convenience stores located in Des Moines, Pleasant Hill, Urbandale, and Waterloo, Iowa.

2

## B.  THE CONSPIRACY

From in or about June 2000, and continuing through in or about September 2004, in the Southern District of Iowa, and elsewhere, Defendants SUKHDEV "SAM" SINGH and SURINDER "SAM" MULTANI did knowingly combine, conspire, confederate and agree with others known and unknown to the grand jury to commit the following offenses against the United States:

1.      To knowingly devise and intend to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, and to knowingly transmit and cause to be transmitted certain items by mail for the purpose of executing the scheme and artifice to defraud, in violation of 18 U.S.C. § 1341; and

2.      To knowingly devise and intend to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, and to knowingly transmit and cause to be transmitted certain signs, signals and radio for the purpose of executing the scheme and artifice to defraud, in violation of 18 U.S.C. § 1343.

## C.  THE MANNER AND MEANS OF THE CONSPIRACY

It was a part of the conspiracy that:

1.      Defendants SUKHDEV "SAM" SINGH and SURINDER "SAM" MULTANI and their coconspirators and agents would and did cause the purchase of convenience stores and their contents at inflated prices.

3

4

2.     Defendants SUKHDEV "SAM" SINGH and SURINDER "SAM" MULTANI and their coconspirators and agents would and did locate and enlist buyers for these properties who could not qualify for financing to purchase these properties.

3.     Defendants SUKHDEV "SAM" SINGH and SURINDER "SAM" MULTANI and their coconspirators and agents would and did cause "shell companies" to be formed, and did use extended family members to act as a "front" for the purchase and operation of businesses.

4.     Defendants SUKHDEV "SAM" SINGH and SURINDER "SAM" MULTANI and their coconspirators and agents would and did cause fraudulent loans applications (including SBA Form 4) and supporting documentation to be submitted to lenders, including the Business Loan Center and the SBA.

5.     Defendants SUKHDEV "SAM" SINGH and SURINDER "SAM" MULTANI and their coconspirators and agents would and did manage and operate the scheme under a variety of business names including, but not limited to RPS and U.S. Petro.

6.     Defendants SUKHDEV "SAM" SINGH and SURINDER "SAM" MULTANI and their coconspirators and agents would and did provide false documents to lenders in support of buyers' applications for loans to purchase the convenience stores to make it appear that these individuals had made capital contributions or down payments towards the purchase from their own funds and had more assets or financial net worth than actually existed.

7.     Defendants SUKHDEV "SAM" SINGH and SURINDER "SAM" MULTANI and their coconspirators and agents would and did provide documents to lenders in support of buyers' applications for loans that misrepresented the prospective owner or operator of the convenience stores.

8.     Defendants SUKHDEV "SAM" SINGH and SURINDER "SAM" MULTANI and their coconspirators and agents did cause fuel contracts to be altered and submitted to BLC and the SBA.

9.     Defendants SUKHDEV "SAM" SINGH and SURINDER "SAM" MULTANI and their coconspirators and agents would and did cause lenders to fund loans that allowed borrowers to purchase the convenience stores.

10.     Defendants SUKHDEV "SAM" SINGH and SURINDER "SAM" MULTANI and their coconspirators and agents would and did endorse checks that were the direct and indirect proceeds of the fraudulently obtained loans and deposit them into bank accounts controlled by Defendants SUKHDEV "SAM" SINGH and SURINDER "SAM" MULTANI and their coconspirators and agents.

11.     Defendants SUKHDEV "SAM" SINGH and SURINDER "SAM" MULTANI and their coconspirators and agents did deposit fees and commissions earned on loans into bank accounts controlled by Defendants SUKHDEV "SAM" SINGH and SURINDER "SAM" MULTANI and their coconspirators and agents .

12.     Throughout the course of the scheme, Defendants SUKHDEV "SAM" SINGH and SURINDER "SAM" MULTANI and their coconspirators and agents would and did defraud SBA and BLC, Inc. and fraudulently obtained from these lenders more than four million Dollars ($4,000,000).

13.     Defendants SUKHDEV "SAM" SINGH and SURINDER "SAM" MULTANI and their coconspirators and agents did cause individuals to be deceived as to the ownership of real

property and the responsibility for real estate taxes, and also cause real estate taxes to be unpaid, resulting in property taxes being in default.

14.     Defendants SUKHDEV "SAM" SINGH and SURINDER "SAM" MULTANI and their coconspirators and agents did cause individuals to be deceived as to the ownership of real property and responsibility for loan payments, and thereby caused loan payments to be unpaid.

### D.  OVERT ACTS

In furtherance of the conspiracy, and to effect the objects thereof, Defendants SUKHDEV "SAM" SINGH and SURINDER "SAM" MULTANI and their coconspirators and agents committed and caused to be committed the following overt acts, among others, on or about the following dates in the Southern District of Iowa and elsewhere:

1.     In or about May and June, 2002, Defendants SUKHDEV "SAM" SINGH and SURINDER "SAM" MULTANI and their coconspirators and agents caused checks, wire transfers, and cashier's checks totaling $320,000 to be provided to Molo Oil, and $250,000 to be provided to Lawyers Title Ins. Co. in connection with the applications for loans to purchase the AG II, AG III and MKKS convenience stores.

2.     On or about May 31, 2002, Defendant SUKHDEV "SAM" SINGH and his coconspirators and agents caused Articles of Incorporation to be filed with the Iowa Secretary of State in order to form corporations in the name of AG II and AG III.

3.     In or about August 2002, Defendants SUKHDEV "SAM" SINGH and SURINDER "SAM" MULTANI and their coconspirators and agents caused an individual to sign a personal financial statement which falsely stated that the individual had $498,000 cash on hand.

4.      In or about August 2002, Defendants SUKHDEV "SAM" SINGH and

SURINDER "SAM" MULTANI and their coconspirators and agents caused an individual to sign

a personal financial statement that contained false statements about the assets that this individual

actually possessed, including a false statement indicating notes receivable of $552,000.

5.      On or about August 5, 2002, Defendants SUKHDEV "SAM" SINGH and

SURINDER "SAM" MULTANI and their coconspirators and agents caused a false personal

financial statement dated August 5, 2002, to be submitted to BLC in connection with an

application for a loan to purchase convenience stores known as the AG II and AG III stores.

6.      On or about August 5, 2002, Defendants SUKHDEV "SAM" SINGH and

SURINDER "SAM" MULTANI and their coconspirators and agents caused an individual to sign

a false Statement of Personal History (SBA 912) to be presented to BLC in connection with an

application for the loan to AG II and AG III for the purchase of convenience stores in Iowa.

7.      On or about September 18, 2002, Defendants SUKHDEV "SAM" SINGH and

SURINDER "SAM" MULTANI and their coconspirators and agents caused to be transmitted by

facsimile from Abacus Finance and its agents to BLC a copy of fraudulent promissory notes in

the amounts of $102,000, $200,000, and $250,000.

8.      On or about September 23, 2002, Defendants SUKHDEV "SAM" SINGH and

SURINDER "SAM" MULTANI and their coconspirators and agents caused fraudulent bank

statements reflecting account balances totaling $553,158 to be submitted to BLC in support of

the loan application being made in the name of AG II.

9.      On or about October 7, 2002, Defendants SUKHDEV "SAM" SINGH and SURINDER "SAM" MULTANI and their coconspirators and agents caused fraudulent bank account statements to be submitted to BLC, in support of the loan application being made in the name of AG III.

10.     On or about October 7, 2002, Defendants SUKHDEV "SAM" SINGH and SURINDER "SAM" MULTANI and their coconspirators and agents caused BLC to wire $2,075,000 from BLC to the bank account of Lawyer's Title Company to fund the loan for the purchase of the AG III convenience stores in Iowa.

11.     On or about October 30, 2002, Defendants SUKHDEV "SAM" SINGH and SURINDER "SAM" MULTANI and their coconspirators and agents caused BLC to wire $1,200,000 from BLC to the bank account of Lawyer's Title Company in order to fund the loan for the purchase of the AG II convenience stores in Iowa.

12.     On or about November 8, 2002, Defendants SUKHDEV "SAM" SINGH and SURINDER "SAM" MULTANI and their coconspirators and agents caused a check to be issued payable to Cal Park Marathon in the amount of $227,000 as a commission for the loans involving the purchase of the AG II , AG III, and MKKS convenience stores.

13.     On or about November 8, 2002, Defendants SUKHDEV "SAM" SINGH and SURINDER "SAM" MULTANI and their coconspirators and agents caused the check payable to Cal Park Marathon in the amount of $227,000 to be endorsed and made payable to Abacus Finance for payment of commissions on the closing of the loans involving the AG II, AG III, and MKKS convenience stores.

This is in violation of Title 18, United States Code, Sections 371.

8

## COUNTS TWO THROUGH SEVEN
### (18 U.S.C. § 1343 - Wire Fraud)

### A.  INTRODUCTION

1.     The Grand Jury realleges paragraphs numbered 1 through 10 of the Introduction to Count One of this Indictment as if fully set forth herein.

### B.  The Scheme and Artifice to Defraud

From in or about June 2000, and continuing through in or about September 2004, in the Southern District of Iowa, and elsewhere, Defendants SUKHDEV "SAM" SINGH and SURINDER "SAM" MULTANI and their agents aided and abetted by others known and unknown to the grand jury did knowingly execute and attempt to execute a scheme and artifice to defraud, and for obtaining money and property owned by and under the custody and control of another by means of materially false and fraudulent pretenses, representations, and promises, including the concealment of material facts.

### C.  THE MANNER AND MEANS

It was a part of the scheme and artifice to defraud that:

1.     Defendants SUKHDEV "SAM" SINGH and SURINDER "SAM" MULTANI and their agents would and did cause the purchase of convenience stores and their contents at inflated prices.

2.     Defendants SUKHDEV "SAM" SINGH and SURINDER "SAM" MULTANI and their agents would and did locate and enlist buyers for these properties who could not qualify for financing to purchase these properties.

3.      Defendants SUKHDEV "SAM" SINGH and SURINDER "SAM" MULTANI and their agents would and did cause fraudulent loans applications and supporting documentation to be submitted to the SBA, BLC, and other lenders.

4.      Defendants SUKHDEV "SAM" SINGH and SURINDER "SAM" MULTANI and their agents would and did manage and operate the scheme under a variety of business names including, but not limited to RPS and U.S. Petro.

5.      Defendants SUKHDEV "SAM" SINGH and SURINDER "SAM" MULTANI and their agents would and did provide false documents to lenders in support of buyers' applications for loans to purchase the convenience stores to make it appear that these individuals had made capital contributions or down payments towards the purchase from their own funds and had more assets or financial net worth than actually existed.

6.      Defendants SUKHDEV "SAM" SINGH and SURINDER "SAM" MULTANI and their agents would and did provide documents to lenders in support of buyers' applications for loans that misrepresented the prospective owner or operator of the convenience stores.

7.      Defendants SUKHDEV "SAM" SINGH and SURINDER "SAM" MULTANI and their agents would and did cause financial institutions and other lenders to fund loans to purchase the convenience stores.

8.      Defendants SUKHDEV "SAM" SINGH and SURINDER "SAM" MULTANI and their agents would and did endorse checks that were the proceeds of the fraudulently obtained loans and deposit them into bank accounts controlled by Defendants SUKHDEV "SAM" SINGH and SURINDER "SAM" MULTANI.

9.    It was further part of the scheme and artifice to defraud that the Defendants SUKHDEV "SAM" SINGH and SURINDER "SAM" MULTANI would and did sign and cause to be signed at a real estate closing at LandAmerica Title Company documents including HUD-1 forms in connection with the purchase of convenience stores using proceeds of loans to AG II, AG III, and MKKS.

10.    Throughout the course of the scheme, Defendants SUKHDEV "SAM" SINGH and SURINDER "SAM" MULTANI and their agents would and did defraud SBA and BLC, and fraudulently obtained from these lenders more than four million dollars ($4,000,000).

## D.  EXECUTION OF THE SCHEME AND ARTIFICE

In the Southern District of Iowa and elsewhere, Defendants SUKHDEV "SAM" SINGH and SURINDER "SAM" MULTANI aided and abetted by others known and unknown to the grand jury for the purposes of executing the aforesaid scheme and artifice to defraud and intending to do so, and for obtaining money and property owned by and under the custody and control of a financial lender by means of materially false and fraudulent pretenses, representations and promises did commit or cause to be committed the following acts:

Count 2:    On or about August 9, 2002, defendant SUKHDEV "SAM" SINGH, aided and abetted by others, did cause altered retail dealer motor fuel purchase contracts to be sent by facsimile to BLC relating to the AG II loan.

Count 3:    On or about August 9, 2002, defendant SUKHDEV "SAM" SINGH, aided and abetted by others, caused altered retail dealer motor fuel purchase contracts relating to the purchase of the convenience stores in the name of AG III to be sent by facsimile to BLC.

Count 4:    On or about September 18, 2002, defendant SUKHDEV "SAM" SINGH, aided and abetted by others, did cause false promissory notes in the amounts of $102,000, $200,000, and $250,000, relating to the AG II loan, to be sent by facsimile to BLC.

Count 5:    On or about August 18, 2002, defendant SUKHDEV "SAM" SINGH, aided and abetted by others, caused false monthly bank statements relating to business checking accounts at Blackhawk State Bank and Metrobank, relating to the AG II loan, to be sent by facsimile to BLC .

Count 6:    On or about October 7, 2002, Defendants SUKHDEV "SAM" SINGH and SURINDER "SAM" MULTANI, aided and abetted by others, did cause a commitment letter addressed to Amarjit Singh, Bondurant, Iowa, relating to approval of the $2,075,000 AG III loan, to be sent by facsimile to BLC.

Count 7:    On or about October 31, 2002, Defendants SUKHDEV "SAM" SINGH and SURINDER "SAM" MULTANI, aided and abetted by others, caused correspondence addressed to Amarjit Singh, Bondurant, Iowa, setting forth the conditions for the loan for the AG II properties, to be sent by facsimile to BLC.

This is in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNTS EIGHT THROUGH ELEVEN
### (18 U.S.C. § 1341  - Mail Fraud)

### A.  INTRODUCTION

1.    The Grand Jury realleges paragraphs numbered 1 through 10 of the Introduction to Count One of this Indictment as if fully set forth herein.

## B.  THE SCHEME AND ARTIFICE TO DEFRAUD

From in or about June 2000, and continuing through in or about September 2004, in the Southern District of Iowa and elsewhere, Defendants SUKHDEV "SAM" SINGH and SURINDER "SAM" MULTANI, aided and abetted by others known and unknown to the grand jury, did knowingly execute and attempt to execute a scheme and artifice to defraud, and for obtaining money and property owned by and under the custody and control of another by means of materially false and fraudulent pretenses, representations, and promises, including the concealment of material facts.

## C.  THE MANNER AND MEANS

It was a part of the scheme and artifice to defraud that:

1.    Defendants SUKHDEV "SAM" SINGH and SURINDER "SAM" MULTANI and their agents would and did cause the purchase of convenience stores and their contents at inflated prices.

2.    Defendants SUKHDEV "SAM" SINGH and SURINDER "SAM" MULTANI and their agents would and did locate and enlist buyers for these properties who could not qualify for financing to purchase these properties.

3.    Defendants SUKHDEV "SAM" SINGH and SURINDER "SAM" MULTANI and their agents would and did cause fraudulent loans applications and supporting documentation to be submitted to the SBA, BLC, and other lenders.

4.    Defendants SUKHDEV "SAM" SINGH and SURINDER "SAM" MULTANI and their agents would and did manage and operate the scheme under a variety of business names including, but not limited to RPS and U.S. Petro.

13

5.    Defendants SUKHDEV "SAM" SINGH and SURINDER "SAM" MULTANI and their agents would and did provide false documents to lenders in support of buyers' applications for loans to purchase the convenience stores to make it appear that these individuals had made capital contributions or down payments towards the purchase from their own funds and had more assets or financial net worth than actually existed.

6.    Defendants SUKHDEV "SAM" SINGH and SURINDER "SAM" MULTANI and their agents would and did provide documents to lenders in support of buyers' applications for loans that misrepresented the prospective owner or operator of the convenience stores.

7.    Defendants SUKHDEV "SAM" SINGH and SURINDER "SAM" MULTANI and their agents would and did cause financial institutions and other lenders to fund loans to purchase the convenience stores.

8.    Defendants SUKHDEV "SAM" SINGH and SURINDER "SAM" MULTANI and their agents would and did endorse checks that were the proceeds of the fraudulently obtained loans and deposit them into bank accounts controlled by Defendants SUKHDEV "SAM" SINGH and SURINDER "SAM" MULTANI.

9.    It was further part of the scheme and artifice to defraud that at a real estate closing at LandAmerica Title Company the defendant would and did cause to be signed documents, including HUD-1 forms, that related to the AG II, AG III, and MKKS loans used to purchase the convenience stores.

10.    Throughout the course of the scheme, Defendants SUKHDEV "SAM" SINGH and SURINDER "SAM" MULTANI and their agents would and did defraud SBA and BLC, and fraudulently obtained from these lenders more than four million dollars ($4,000,000).

## D. EXECUTION OF THE SCHEME AND ARTIFICE

In the Southern District of Iowa and elsewhere, Defendants SUKHDEV "SAM" SINGH and SURINDER "SAM" MULTANI, aided and abetted by others known and unknown to the grand jury for the purposes of executing the aforesaid scheme and artifice to defraud and intending to do so, and for obtaining money and property owned by and under the custody and control of a financial lender by means of materially false and fraudulent pretenses, representations and promises did commit or cause to be committed the following acts:

Count 8:     On or about October 3, 2002, Defendants SUKHDEV "SAM" SINGH and SURINDER "SAM" MULTANI, aided and abetted by others, did cause correspondence, deeds, and other documents to be mailed by UPS overnight delivery from LandAmerica National Commercial Services to First Nebraska Title, Omaha, Nebraska, for the purpose of recording documents with the county recorder in Polk County, Shelby County, Blackhawk County, and Woodbury County, Iowa.

Count 9:     On or about October 14, 2002, Defendants SUKHDEV "SAM" SINGH and SURINDER "SAM" MULTANI, aided and abetted by others, did cause false promissory notes to be mailed by Federal Express to the Business Loan Center in New York, New York, relating to the loan for the purchase of the AG II properties.

Count 10:     On or about November 5, 2002, Defendants SUKHDEV "SAM" SINGH and SURINDER "SAM" MULTANI, aided and abetted by others, did cause a mortgage between AG III and Molo Oil to be recorded with the Polk County Recorder's Office, and returned by mail to Dubuque, Iowa.

Count 11:    On or about November 5, 2002, Defendants SUKHDEV "SAM" SINGH and SURINDER "SAM" MULTANI, aided and abetted by others, did cause a mortgage between MKKS and Molo Oil to be recorded with the Polk County Recorder's Office, and returned by mail to Dubuque, Iowa.

This is violation of Title 18, United States Code Sections 1341 and 2.

**A TRUE BILL.**

/s/
FOREPERSON

MATTHEW G. WHITAKER
United States Attorney

By:  *Kevin E. VanderSchel*
KEVIN E. VANDERSCHEL
Assistant United States Attorney

16

KC

KC **F I L E D**

OCT 0 4 2007

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA    )

v.    )

SURINDER MULTANI    )
    also known as "Sam Multani"    )

**0 7CR    655**

Violations: Title 18, United States
Code, Sections 1005 and 1344

JUDGE PALLMEYER

MAGISTRATE JUDGE COX

**COUNT ONE**

The SPECIAL AUGUST 2006-2 GRAND JURY charges:

1.    At times material to this indictment:

    a.    The Small Business Administration ("SBA") was an agency of the United States established by Congress, through the Small Business Act of 1953 (15 U.S.C. § 631, et seq.), to provide financial, technical and management assistance to qualified small businesses.

    b.    The SBA "7(a) Loan Guaranty Program" of the Small Business Act, Title 15, United States Code, Section 635(a), authorized the SBA to provide financial assistance to eligible, credit-worthy start-up and existing small businesses through loan guarantees to participating lenders.

    c.    Defendant SURINDER MULTANI owned and operated a corporation under the name of SSJG Petroleum, Inc. SSJG Petroleum was incorporated in Illinois on or about December 28, 1999, and was located at 2015 South Arlington Heights Road, Suite 120, Arlington Heights, Illinois 60005. MULTANI incorporated SSJG Petroleum, Inc. for the

purpose of applying for and receiving a small business loan guaranteed by the SBA to purchase gas stations in Iowa.

        d.     Beginning on or about June 6, 2000, MULTANI submitted a loan application to Allied Capital SBLC Corporation (Allied Capital). Allied Capital, located in Detroit, Michigan, Washington, D.C., and elsewhere, was a private lender in the business of funding and servicing loans, including loans guaranteed by the Small Business Administration.

        e.     To obtain an SBA loan for SSJG Petroleum, Inc., MULTANI was required to contribute approximately $470,000 in the form of an "equity injection" of his own funds into the purchase of the Iowa gas stations. To evidence the equity injection, SBA required that MULTANI (1) provide documentation verifying his ability to contribute approximately $470,000 prior to obtaining the loan; and (2) tender the $470,000 at the time of the loan's closing.

        f.     Centier Bank, located in Portage, Indiana, and elsewhere, was a financial institution with deposits insured by the Federal Deposit Insurance Corporation ("FDIC"). MULTANI held bank accounts at Centier Bank.

        g.     On or about June 21, 2000, MULTANI caused a fictitious and false bank account verification letter to be sent from Centier Bank to Allied Capital stating that MULTANI had approximately $470,000 in his accounts at Centier Bank, when the defendant knew that he had approximately $150,000 in those accounts at that time.

2

h.     On or about June 22, 2000, MULTANI opened an additional Centier Bank account for SSJG Petroleum, Inc.

i.     On or about June 22, 2000, MULTANI caused a representative of Centier Bank to generate seven cashier's checks totaling $450,000, when MULTANI did not have adequate funds in his Centier bank accounts to cover the cashier's checks.

j.     On or about June 22, 2000, MULTANI presented these cashier's checks at the SBA-guaranteed loan closing for SSJG Petroleum, Inc., caused copies of these checks to be made for Allied Capital's file, and retained the cashier's checks so that they would not be negotiated. After the loan closing, on or about June 22, 2000, MULTANI returned the cashier's checks to Centier Bank.

k.     On or about June 22, 2000, MULTANI resided in Arlington Heights, in the Northern District of Illinois, Eastern Division. On or about June 22, 2000, MULTANI traveled to Indiana to attend the closing of the SSJG Petroleum, Inc. loan.

2.     Beginning on or about December 28, 1999, and continuing through on or about June 22, 2000, at Arlington Heights, in the Northern District of Illinois, Eastern Division,

SURINDER MULTANI, also known as Sam Multani,

defendant herein, with intent to defraud the United States and the Small Business Administration, participated, shared in and received approximately $1.35 million in money through an SBA guaranteed loan from Allied Capital for the purchase of gas stations by SSJG Petroleum, Inc.;

3

In violation of Title 18, United States Code, Section 1005.

4

## COUNT TWO

The SPECIAL AUGUST 2006-2 GRAND JURY further charges:

1.    Fifth Third Bank, located in Rolling Meadows, Illinois, and elsewhere, was a financial institution with deposits insured by the Federal Deposit Insurance Corporation ("FDIC").

2.    Beginning on or about May 20, 2004, and continuing through on or about July 6, 2004, at Rolling Meadows and Arlington Heights, in the Northern District of Illinois, Eastern Division,

SURINDER MULTANI, also known as Sam Multani,

defendant herein, knowingly devised and participated in a scheme to defraud a financial institution and to obtain money and funds owned by and under the custody and control of Fifth Third Bank, by means of materially false and fraudulent pretenses, and representations, which scheme is further described in the following paragraphs.

3.    It was part of the scheme of the defendant SURINDER MULTANI to defraud Fifth Third Bank, by submitting to Fifth Third Bank fictitious Form 1040 U.S. Individual Income Tax Returns for the years 2002 and 2003 in order to qualify for a $1.2 million home equity loan, when in fact such tax returns had never been filed with the Internal Revenue Service.

4.    It was further part of the scheme that MULTANI submitted or caused to be submitted to Fifth Third Bank a letter purportedly from Centier Bank that contained fictitious

5

and fraudulently inflated information concerning MULTANI's bank account balances.

5. As a result of the scheme described above, defendant SURINDER MULTANI qualified for a home equity loan from Fifth Third Bank and received approximately $1.2 million.

6. It was further part of the scheme that defendant did misrepresent, conceal and hide, and cause to be misrepresented, concealed and hidden the purpose and the acts done in furtherance of the scheme.

7. Beginning on or about May 20, 2004, and continuing through on or about July 6, 2004, at Rolling Meadows and Arlington Heights, in the Northern District of Illinois, Eastern Division,

SURINDER MULTANI, also known as Sam Multani,

defendant herein, knowingly executed the above-described scheme to defraud and obtain money, by submitting fictitious and fraudulent tax returns and false bank account balance information to Fifth Third Bank in order to obtain a home equity loan in the amount of approximately $1.2 million;

In violation of Title 18, United States Code, Section 1344.

6

## FORFEITURE ALLEGATION ONE

The SPECIAL AUGUST 2006-2 GRAND JURY further charges:

1. The allegation in Count One of this indictment is hereby realleged and incorporated herein by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2. As a result of his violation of Title 18, United States Code, Section 1005, as alleged in Count One,

SURINDER MULTANI,

defendant herein, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any and all right, title, and interest he may have in any property constituting, and derived from, proceeds he obtained directly and indirectly as the result of such violation.

3. The interests and property of defendant SURINDER MULTANI subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), include all money and other property that was the subject of; constituted and was derived from the proceeds of; and was obtained, directly or indirectly as a result of those violations, including but not limited to approximately $1,227,742.33.

4. If any of the forfeitable property described above, as a result of any act or omission by defendant SURINDER MULTANI:

    (a)    cannot be located upon the exercise of due diligence;

7

    (b)     has been transferred or sold to, or deposited with, a third party;

    (c)     has been placed beyond the jurisdiction of the court;

    (d)     has been substantially diminished in value; or

    (e)     has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c);

All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and 28 U.S.C. § 2461(c).

8

## FORFEITURE ALLEGATION TWO

The SPECIAL AUGUST 2006-2 GRAND JURY further charges:

1.     The allegation in Count Two of this indictment is hereby realleged and incorporated herein by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 982(a)(2).

2.     As a result of his violation of Title 18, United States Code, Section 1344, as alleged in Count Two,

SURINDER MULTANI,

defendant herein, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2), any and all right, title, and interest he may have in any property constituting, and derived from, proceeds he obtained directly and indirectly as the result of such violation.

3.     The interests and property of defendant SURINDER MULTANI subject to forfeiture pursuant to Title 18, United States Code, Section 982(a)(2), include all money and other property that was the subject of, constituted and was derived from the proceeds of, and was obtained, directly or indirectly as a result of those violations, including but not limited to approximately $1,199,745.12.

4.     If any of the forfeitable property described above, as a result of any act or omission by defendant SURINDER MULTANI:

(a)     cannot be located upon the exercise of due diligence;

9

(b)     has been transferred or sold to, or deposited with, a third party;

(c)     has been placed beyond the jurisdiction of the court;

(d)     has been substantially diminished in value; or

(e)     has been commingled with other property which cannot be divided
without difficulty,

the United States of America shall be entitled to forfeiture of substitute property under the

provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 18,

United States Code, Section 982(b)(1);

All pursuant to Title 18, United States Code, Section 982(a)(2).

A TRUE BILL:

_____

FOREPERSON

_____

UNITED STATES ATTORNEY

10

A.O 98 (Rev. 8/85) Appearance Bond

# United States District Court

## NORTHERN DISTRICT OF ILLINOIS

FILED

UNITED STATES OF AMERICA

OCT 1 6 2007

v.

*Surinder Multani*
Defendant

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**APPEARANCE BOND**

CASE NUMBER: *07 CR 655 - 1*

*Rec # 16341946*

**Non–surety:** I, the undersigned defendant acknowledge that I and my . . .
**Surety:** We, the undersigned, jointly and severally acknowledge that we and our . . .
personal representatives, jointly and severally, are bound to pay to the United States of America the sum of
$ *250,000.00* , and there has been deposited in the Registry of the Court the sum of
$ *10,000.00* in cash or *And Cosigned By Wife* (describe other security.)
*Satenbrect K. Multani*

The conditions of this bond are that the defendant *Surinder Multani*
(name)

is to appear before this court and at such other places as the defendant may be required to appear, in accordance with
any and all orders and directions relating to the defendant's appearance in this case, including appearance for violation
of a condition of defendant's release as may be ordered or notified by this court or any other United States district court
to which the defendant may be held to answer or the cause transferred. The defendant is to abide by any judgment
entered in such a matter by surrendering to serve any sentence imposed and obeying any order or direction in
connection with such judgment.

It is agreed and understood that this is a continuing bond (including any proceeding on appeal or review)
which shall continue until such time as the undersigned are exonerated.

If the defendant appears as ordered or notified and otherwise obeys and performs the foregoing conditions of this
bond, then this bond is to be void, but if the defendant fails to obey or perform any of these conditions, payment of the
amount of this bond shall be due forthwith. Forfeiture of this bond for any breach of its conditions may be declared by any
United States district court having cognizance of the above entitled matter at the time of such breach and if the bond if
forfeited and if the forfeiture is not set aside or remitted, judgment may be entered upon motion in such United States
district court against each debtor jointly and severally for the amount above stated, together with interest and costs, and
execution may be issued and payment secured as provided by the Federal Rules of Criminal Procedure and any other
laws of the United States.

This bond is signed on *October 16, 2007* at **CHICAGO ILLINOIS, 219 S. DEARBORN**

Approved: _____
Judicial Officer

EXHIBIT C